**No. 2024-2118**

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

WILLIS ELECTRIC CO., LTD.,

*Plaintiff-Appellee*,

*v.*

POLYGROUP LTD. (MACAO COMMERCIAL OFFSHORE), POLYGROUP MACAU LIMITED BVI, POLYTREE (HK) CO. LTD., POLYGROUP TRADING LTD.,

*Defendants-Appellants.*

On Appeal from the United States District Court for the District of Minnesota, No. 0:15-cv-03443-JNE, Senior Judge Joan N. Ericksen.

**PLAINTIFF-APPELLEE WILLIS ELECTRIC CO., LTD.'S OPPOSED MOTION FOR A 28-DAY EXTENSION OF TIME TO FILE RESPONSE BRIEF**

Pursuant to Federal Rule of Appellate Procedure 26(b) and Federal Circuit Rule 26(b), Plaintiff-Appellee Willis Electric Co., Ltd. ("Willis Electric") respectfully moves for a 28-day extension of the time to file its response brief in this appeal.

Willis Electric's response brief is currently due on October 30, 2024. If Willis Electric's request is granted, Willis Electric's response brief would be due on November 27, 2024. Willis Electric has not previously sought an extension of time to file its response brief, and does not expect to seek any further extension beyond November 27, 2024.

As set forth in the accompanying declaration of counsel ("Fleming Decl."), there is good cause for the requested extension. The additional time is requested to accommodate the professional obligations of Willis Electric's counsel and to give counsel adequate time to prepare the response brief in light of those obligations. Willis Electric's counsel's professional obligations include, among other things: filing Appellee WPP PLC's brief in *Rodriguez v. Imperial Brands PLC et al.*, No. 24-11487 (11th Cir.), due on October 16, 2024; filing Cross-Appellant's reply brief in *GoTV Streaming, LLC v. Netflix, Inc.*, Nos. 2024-1669, -1744 (Fed. Cir.), due on October 21, 2024; filing Appellant's reply brief in *Netflix, Inc. v. DivX, LLC*, No. 2024-1541 (Fed. Cir.), due on November 1, 2024; presenting oral argument in *United Services Automobile Association v. PNC Bank N.A.*, Nos. 2023-1639, -1866 (Fed. Cir.) and *United Services Automobile Association v. PNC Bank N.A.*, No. 2023-1778 (Fed. Cir.), both calendared on November 6, 2024; and filing Appellees' response brief in *3D Surfaces, LLC v. Intel Corporation*, Nos. 2024-1909, -1910 (Fed. Cir.), due on November 13, 2024.

Counsel for Defendants-Appellants Polygroup Ltd. (Macao Commercial Offshore), Polygroup Macau Limited BVI, Polytree (HK) Co. Ltd., and Polygroup Trading Ltd. ("Polygroup") has informed undersigned counsel that Polygroup opposes this motion. Polygroup's counsel stated that Polygroup would prefer that Willis Electric obtain no extension at all, but is willing to agree to a 14-day extension

as a professional courtesy. Polygroup's stated reason for opposing a 28-day extension was that Polygroup is incurring the cost of a bond to secure the judgment entered against it.

Willis Electric respectfully notes that, despite its assertion that time is now of the essence, Polygroup took no steps to accelerate its own filings. After the district court entered its order denying Polygroup's post-judgment motions on June 24, 2024, Polygroup waited 22 days before noticing its appeal on July 16, 2024. Appx4705 (Dist. Ct. Dkt. 1045) (Fleming Decl. Ex. A). After the appeal was docketed on July 22, Polygroup did not file its opening brief in this Court until 60 days later, on September 20, 2024. Polygroup accordingly took 88 days to prepare and file its opening brief on appeal after the district court denied its post-judgment motions. Polygroup cannot plausibly claim undue prejudice from allowing Willis Electric a total of 68 days to prepare its own filing—fully 20 days fewer than Polygroup took for its own brief.

Because Polygroup will likely raise the issue in its response to this motion, Willis Electric takes this opportunity to explain why the district court required Polygroup to post a bond as a condition of granting Polygroup's request for a stay of execution of judgment. None of the named Polygroup defendants is based in the United States, and none owns property in the United States. Appx1979:5-10 (Dist. Ct. Dkt. 950 at 979:5-10) (Fleming Decl. Ex. B). When Polygroup asked the district

court to stay execution of the judgment, it did not undertake to pay the judgment in the event of affirmance, nor did it offer any other kind of security for the full judgment amount (the most it offered was 10%). Appx4675 (Dist. Ct. Dkt. 1019 at 7) (Fleming Decl. Ex. C). Polygroup also offered no information whatsoever regarding the defendant entities' overall financial condition or ability to pay. The district court accordingly found as follows:

> As a foreign entity with no U.S. bank accounts, executing the judgment against Polygroup is likely to involve significant discovery, garnishment procedures, and turnover orders, among other complex proceedings. Second, Polygroup provided no information about the estimated duration of the appeal process, which is relevant to assessing the risk of insolvency during that time. Third, while Polygroup asserts that the bond premium is burdensome, it has not provided any evidence regarding its overall financial condition or ability to pay the judgment. Polygroup's CFO stated that the company can obtain a bond for the full judgment amount, which undercuts the argument that the cost is prohibitive. Fourth, given the lack of evidence about Polygroup's finances, the Court cannot conclude that its ability to pay is so plain that the cost of the bond would be a waste of money. Finally, Polygroup has not identified any other creditors or argued that posting a bond would jeopardize their interests.

Appx4703 (Dist. Ct. Dkt. 1033 at 4) (Fleming Decl. Ex. D). Polygroup's opening brief on appeal does not challenge any of these findings, despite addressing the issue of bond costs. Polygroup Opening Br. 67-68.

For these reasons, Willis Electric respectfully submits that there is good cause for a modest 28-day extension in the due date for Willis Electric's responsive brief on appeal. Polygroup's choice to take 88 days to prepare and file its own opening

brief, as well as its failure to challenge the district court's reasoning for conditioning a stay of execution of judgment on Polygroup's posting of a bond, shows that Polygroup's stated reason for opposing the extension request is insubstantial.

Willis Electric respectfully requests that the Court grant this motion for a 28-day extension of time to and including November 27, 2024.

Dated: October 3, 2024

Respectfully submitted,

/s/ Mark C. Fleming
MARK C. FLEMING
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

*Counsel for Plaintiff-Appellee Willis Electric Co., Ltd.*

# CERTIFICATE OF INTEREST

Counsel for Plaintiff-Appellee Willis Electric Co., Ltd. certifies the following:

**1. Represented Entities**. Fed. Cir. R. 47.4(a)(1). Provide the full names of all entities represented by undersigned counsel in this case.

Willis Electric Co., Ltd.

**2. Real Party in Interest**. Fed. Cir. R. 47.4(a)(2). Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.

None.

**3. Parent Corporations and Stockholders**. Fed. Cir. R. 47.4(a)(3). Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

None.

**4. Legal Representatives**. List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

ROBINS KAPLAN LLP: Ronald J. Schutz, Prateek Neil Viswanathan, Jessica Lee Gutierrez, Austin Brooks Miller

GREENBERG TRAURIG, LLP: Ann Elizabeth Motl, Thomas R. Pack

CHRITENSEN, FONDER, DARDI & HERBERT PLLC: Douglas J. Christensen

FOX ROTHSCHILD LLP: Lukas Dustin Jonathan Toft, Mark P. Schneebeck

FREDRIKSON & BYRON: Sarah A. Horstmann

SAURO & ALTON PLLC: Larina A. Alton

DEWITT LLP: Dwight G. Rabuse

MASLON LLP: Terrance C. Newby, R. Christopher Sur

**5. Related Cases**. Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☒ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). Please do not duplicate information. This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

None.

Dated: October 3, 2024

/s/ Mark C. Fleming
MARK C. FLEMING
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526 6000

**No. 2024-2118**

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

WILLIS ELECTRIC CO., LTD.,

*Plaintiff-Appellee*,

*v.*

POLYGROUP LTD. (MACAO COMMERCIAL OFFSHORE), POLYGROUP MACAU LIMITED BVI, POLYTREE (HK) CO. LTD., POLYGROUP TRADING LTD.,

*Defendants-Appellants.*

On Appeal from the United States District Court for the District of Minnesota, No. 0:15-cv-03443-JNE, Senior Judge Joan N. Ericksen.

**DECLARATION OF MARK C. FLEMING IN SUPPORT OF PLAINTIFF-APPELLEE WILLIS ELECTRIC CO., LTD.'S OPPOSED MOTION FOR A 28-DAY EXTENSION OF TIME TO FILE RESPONSE BRIEF**

1. I am a partner at Wilmer Cutler Pickering Hale and Dorr LLP, and I am principal counsel for Plaintiff-Appellee Willis Electric Co., Ltd. ("Willis Electric") in this appeal. I am submitting this declaration in support of Willis Electric's motion for a 28-day extension of the time for filing its response brief.

2. Willis Electric's response brief is currently due on October 30, 2024. Willis Electric respectfully requests that the briefing schedule be revised such that the deadline is extended by 28 days. If Willis Electric's request is granted, its response brief would be due on November 27, 2024. Willis Electric has not previously sought an extension of time to file its response brief.

3. The additional time is requested to accommodate the professional obligations of Willis Electric's counsel and to give counsel adequate time to prepare the response brief. My professional obligations include, among other things: filing Appellee WPP PLC's brief in *Rodriguez v. Imperial Brands PLC et al.*, No. 24-11487 (11th Cir.), due on October 16, 2024; filing Cross-Appellant's reply brief in *GoTV Streaming, LLC v. Netflix, Inc.*, Nos. 2024-1669, -1744 (Fed. Cir.), due on October 21, 2024; filing Appellant's reply brief in *Netflix, Inc. v. DivX, LLC*, No. 2024-1541 (Fed. Cir.), due on November 1, 2024; presenting oral argument in *United Services Automobile Association v. PNC Bank N.A.*, Nos. 2023-1639, -1866 (Fed. Cir.) and *United Services Automobile Association v. PNC Bank N.A.*, No. 2023-1778 (Fed. Cir.), both calendared on November 6, 2024; and filing Appellees' response brief in *3D Surfaces, LLC v. Intel Corporation*, Nos. 2024-1909, -1910 (Fed. Cir.), due on November 13, 2024.

4. I certify pursuant to Federal Circuit Rule 27(a)(2) that I contacted counsel for Defendants-Appellants Polygroup Ltd. (Macao Commercial Offshore), Polygroup Macau Limited BVI, Polytree (HK) Co. Ltd., and Polygroup Trading Ltd. ("Polygroup") regarding the substance of this motion. Counsel stated that Polygroup would prefer that Willis Electric obtain no extension at all, but was willing to agree to a 14-day extension as a professional courtesy. Polygroup's stated reason for

opposing a 28-day extension was that it is incurring the cost of a bond to secure the judgment entered against it.

5. Attached as Exhibit A hereto is a true and accurate copy of Polygroup's Notice of Appeal (Dist. Ct. Dkt. 1045), marked by Polygroup as Appx4705-4707 in this appeal.

6. Attached as Exhibit B hereto is a true and accurate copy of excerpts of the direct examination at trial of Eric Steinmeyer, CEO of Polygroup North America (Dist. Ct. Dkt. 950), marked by Polygroup as Appx1971-1979 in this appeal.

7. Attached as Exhibit C hereto is a true and accurate copy of Polygroup's Memorandum of Law in Support of Their Motion to Extend the Stay of Execution on Judgment (Dist. Ct. Dkt. 1019), marked by Polygroup as Appx4668-4677 in this appeal.

8. Attached as Exhibit D hereto is a true and accurate copy of the district court's Order granting Polygroup's motion to stay execution of the judgment, conditioned upon Polygroup posting a supersedeas bond (Dist. Ct. Dkt. 1033), marked by Polygroup as Appx4700-4704 in this appeal.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: October 3, 2024

Respectfully submitted,

/s/ Mark C. Fleming
MARK C. FLEMING
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

*Counsel for Plaintiff-Appellee Willis Electric Co., Ltd.*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because:

1. The filing has been prepared using a proportionally spaced typeface and includes 939 words.

2. The brief has been prepared using Microsoft Word for Office 365 in 14-point Times New Roman font. As permitted by Fed. R. App. P. 32(g), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

/s/ Mark C. Fleming
MARK C. FLEMING
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

October 3, 2024

# EXHIBITS

# TABLE OF CONTENTS


| Exhibit No. | Description |
| --- | --- |
| Exhibit A | Polygroup's Notice of Appeal, Dkt. No. 1045 (July 16, 2024), marked as Appx4705-4707 |
| Exhibit B | Excerpts of the trial transcript of the direct examination of Eric Steinmeyer, CEO of Polygroup North America, taken January 11, 2024 Dkt. No. 950 (Jan. 18, 2024), marked as Appx1971-1979 |
| Exhibit C | Polygroup's Memorandum of Law in Support of Their Motion to Extend the Stay of Execution on Judgment, Dkt. No. 1019 (Apr. 10, 2024), marked as Appx4668-4677 |
| Exhibit D | District court's Order granting Polygroup's Motion to Stay Execution of the Judgment, conditioned upon Polygroup posting a supersedeas bond, Dkt. No. 1033 (Apr. 17, 2024), marked as Appx4700-4704 |

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Willis Electric Co., Ltd.,<br><br>Plaintiff,<br><br>v.<br><br>Polygroup Limited (Macao Commercial Offshore), Polygroup Macau Limited (BVI), Polytree (H.K.) Co. Ltd., Polygroup Trading Limited,<br><br>Defendants. | Case No. 15-cv-3443 JNE/DTS |

**DEFENDANTS' NOTICE OF APPEAL TO THE U.S. COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

Notice is hereby given that Polygroup Limited (Macao Commercial Offshore), Polygroup Macau Limited (BVI), Polytree (H.K.) Co. Ltd., and Polygroup Trading Limited (collectively, the "Defendants") hereby appeal the above-named case to the United States Court of Appeals for the Federal Circuit from the Third Amended Judgment entered April 12, 2024 (Dkt. No. 1029), and the Order denying Defendants' Renewed Motion for Judgment as a Matter of Law, a New Trial, or Remittitur entered on June 24, 2024 (Dkt. No. 1041).

Respectfully submitted,

Dated: July 16, 2024

**FINNEGAN, HENDERSON, FARABOW, GARRET & DUNNER, LLP**

By: *s/ J. Michael Jakes*
J. Michael Jakes (*pro hac vice*)
Jason Lee Romrell (*pro hac vice*)
901 New York Avenue, N.W.
Washington, DC 20001
Phone: (202) 408-4000
mike.jakes@finnegan.com
jason.romrell@finnegan.com

AND

**MERCHANT & GOULD P.C.**
Rachel Zimmerman Scobie (0314171)
Elisabeth S. Muirhead (0399590)
Gabrielle L. Kiefer (0402364)
Marra M. Clay (0403837)
150 South Fifth Street, Suite 2200
Minneapolis, MN 55402
Phone: (612) 332-5300
Fax: (612) 332-9081
rscobie@merchantgould.com
emuirhead@merchantgould.com
gkiefer@merchantgould.com
mclay@merchantgould.com

AND

John T. Winemiller (*pro hac vice*)
800 S. Gay Street, Suite 2150
Knoxville, TN 37929
Phone: (865) 380-5977
Fax: (612) 332-9081
jwinemiller@merchantgould.com

AND

James W. Beard (*pro hac vice*)
1801 California Street, Suite 3300
Denver, CO 80202
Phone: (303) 357-1189
Fax: (612) 332-9081
jbeard@merchantgould.com

AND

**POLYGROUP HOLDINGS LIMITED**
Eric Szweda (*pro hac vice*)
Unit 606, Fairmont House
8 Cotton Tree Drive
Hong Kong
Hong Kong Special Administrative Region
85291937764
Email: eric.szweda@polygroup.com

***Attorneys for Polygroup Limited (Macao Commercial Offshore), Polygroup Macau Limited (BVI), Polytree (H.K.) Co. Ltd., and Polygroup Trading Limited***

# EXHIBIT B

UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

---

| | | |
|---|---|---|
| Willis Electric Co., Ltd., | ) | File No. 15-CV-3443 (JNE/DTS) |
| Plaintiff, | ) | |
| vs. | ) | Minneapolis, Minnesota |
| | ) | January 11, 2024 |
| Polygroup Limited (Macao Commercial Offshore), | ) | Courtroom 12W |
| | ) | 9:08 a.m. |
| Polygroup Macau Limited (BVI), | ) | |
| Polytree(H.K.)Co. Ltd., | ) | VOLUME IV |
| Polygroup Trading Limited, | ) | |
| Defendants. | ) | |

---

BEFORE THE HONORABLE JOAN N. ERICKSEN and a JURY

UNITED STATES DISTRICT COURT JUDGE

**(JURY TRIAL - VOLUME IV)**

MARIA V. WEINBECK, RMR-FCRR
Official Court Reporter
1005 U.S. Courthouse
300 South Fourth Street
Minneapolis, Minnesota 55415

Proceedings reported by court reporter; transcript produced by computer.

know and we'll do that.

But don't feel the least bit -- I mean, people have all kinds of things they have to do. You've counted on these hours. It's just purely a question. I leave it up to you. Don't feel -- I mean, it's just purely an option. I'm just asking the question. Okay. We're in recess.

(Short recess at 3:47 p.m.)

(4:08 p.m.) (Jury in)

THE COURT: Please be seated.

And, Ms. Scobie, call your next witness, please.

MS. SCOBIE: Your Honor, Polygroup calls Mr. Eric Steinmeyer.

MR. WINEMILLER: Your Honor, may one of my colleagues pass out folders?

THE COURT: Yes.

MR. WINEMILLER: Thank you.

THE COURT: Okay. Mr. Winemiller.

MR. WINEMILLER: Thank you, Your Honor.

**Eric Steinmeyer**

Whereupon, having been duly sworn upon his oath, testified as follows:

**DIRECT EXAMINATION**

BY MR. WINEMILLER:

Q. Good afternoon, Mr. Steinmeyer.

A. Good afternoon.
Q. What do you currently do for work?
A. I am currently the chief executive officer for Polygroup North America.
Q. Some background first. Where did you attend college and high school?
A. I grew up in southern California. Went to high school there, and then I went to Cornell University in New York. Graduated in 1988.
Q. What jobs did you have before joining Polygroup?
A. My first job after I graduated, my first job was, I moved to Omaha, Nebraska, and was working for a company called Continental Grain Company. After that -- I was there a few years, and then I returned to California and ran my own business for a few years.
And then in 1994, I join a company called INTEX.
Q. What is INTEX?
A. INTEX is a manufacturer and designer of above-ground swimming pools, pool toys. There are some sporting goods products like air mattresses.
Q. What did you do for INTEX?
A. I had a number of finance-related and administrative positions with them.
Q. Did you have any other roles with INTEX?
A. In 1998 I moved with them to Hong Kong, and my role

there was assistant general manager and assistant to the president.

Q. And what were your responsibilities in those two positions?

A. I managed their non US operations, so that included sales, administration and I guess I would say miscellaneous legal matters.

Q. When did you leave INTEX?

A. I left in 2007, fall of 2007.

Q. Where did you go?

A. I joined Polygroup at that time.

Q. And what was your position when you joined Polygroup?

A. My original title was director of global operations, and a few years later the title changed just to director. We took off the sort of suffixes there.

Q. And what were your responsibilities as a director?

A. At the time, I was responsible for non U.S. sales so that primarily in Europe. I was also responsible for a number of administrative functions, miscellaneous legal matters and some ad hoc projects.

Q. Have you been with Polygroup continuously since 2007?

A. No. I left the company in early 2014 and went to work for a startup company in Hong Kong, and then I returned to Polygroup in late 2018.

Q. What was that startup company?

A. I was chief operating officer for a company that we were trying to commercialize a new type of LED lighting technology that had been developed by some of the partners.
Q. When you returned to Polygroup in 2018, what was your role?
A. When I returned, my title was senior vice president. My responsibilities were similar to before except I no longer had the sales responsibility.
Q. Were you based in Hong Kong?
A. I was in Hong Kong, yes.
Q. How long did you stay in that role?
A. I stayed in that role until late 2021.
Q. And what happened in late 2021?
A. In late 2021, I relocated back to the United States.
Q. And why?
A. It was personal reasons. Both my parents had become quite ill, and in fact my father had passed away, recently passed away, and I wanted to be closer to my mother.
And I had, you know, discussed this with Lewis Cheng and Paul Cheng and the rest of the management team, and they were very supportive in terms of trying to help me find a way to get back to the U.S.
Our U.S. company, Polygroup North America, had grown quite a bit in the preceding years. They didn't have a formal CEO person at that time, and it was decided that I

would take up that role when I returned to the U.S. That was in November of 2021.

Q. And how did your role change when you took this new position?

A. Well, now I was responsible for all of our U.S. operations. So supervising our U.S. based employees, operations for them, and as well as all the administrative functions for the company.

Q. How many employee does Polygroup North America have?

A. Today I think we have 51 employees. We employ people in Arkansas, Texas, Georgia, Massachusetts, California, Michigan.

I'm sure there are some others that I'm not remembering, but --

Q. Does Polygroup North America own properties in the U.S.?

A. Yes. We own an office in Bentonville, Arkansas. We also own a warehouse in El Paso, Texas. We also rent some offices in Atlanta and Boise, Idaho.

Q. I need to ask you some questions about corporate structure of the defendants in this case, and it's not the most exciting, but we'll try to get through it as quickly as we can.

Who are the named defendants in this case?

A. Polytree H.K. Limited, Polygroup Limited MCO, Polygroup Trading Limited, and Polygroup Macao Limited.

Q. You told us earlier that you were CEO of Polygroup North America. Is Polygroup North America a named defendant in this suit?
A. I don't believe so, no.
Q. What does Polygroup North America do?
A. We provide sales, marketing and customer service, like after-sales customer service, to group trading companies I guess we call them.
Q. And so these follow -up questions, does Polygroup North America currently provide any of those services to Polygroup Trading Limited?
A. Yes, we do. Yes.
Q. Does Polygroup North America currently provide these services to Polygroup Limited MCO?
A. We used to, but no longer.
Q. Does Polygroup North America currently provide these services to Polytree HK?
A. In some years ago, I think they did, but no longer.
Q. Does Polygroup North America currently provide these services to Polygroup Macao Limited?
A. No, they never have provided those services.
Q. What do these four named defendants do with respect to artificial Christmas trees?
A. They, they are what we call the trading company that is selling product to customers around the world, with the

exception of Polygroup Macau Limited. That company is not trading company.
Q. So the three that are trading companies -- let's start with this: What is a trading company?
A. A trading company, it's basically a company that is sourcing product from different factories and then reselling those products to customers, in our case around the world.
Q. Let's break these down. When did Polytree HK as a trading company -- or excuse me. When did Polytree HK act as the trade trading company with respect to the accused trees in this case?
A. It would have been in the very beginning part of this case and then ceasing shortly thereafter. They were the primary trading company when I first joined the company in 2007, but then they more or less ceased their operations in later in the 2010s.
Q. And what does Polytree HK do today?
A. They're only a holding company.
Q. When did Polygroup Limited MCO act as a trading company with respect to the accused trees?
A. It would have been around 2013 up until 2017, give or take. There was some transition period in there.
Q. And what has Polygroup Limited MCO done since that time?
A. They still have some customers, but no longer service any customers in the United States.

Q. When did Polygroup Trading Limited act as a trading company with respect to the accused trees?
A. I guess it would have started around 2017, thereabouts, until maybe 2022, 2023, somewhere in there. Recently.
Q. What does the fourth named defendant Polygroup Macau Limited do?
A. They're a holding company, so they own -- they're the shareholder of Polygroup Limited MCO, and they also own some intellectual property.
Q. You said the trading companies bought trees from group factories. Where were those factories located?
A. The -- they buy trees from factories today in China. We also have a factory today in Indonesia and one in Mexico as well.
Q. When a trading company makes a sale to a customer, where does that transaction take place?
A. It's simple, but it doesn't sound simple. The transaction takes place in Asia. That's the shortest way to put it.
Q. And where does ownership of the trees transfer?
A. Ownership would transfer when the product is delivered to the customer's freight company in China or in Indonesia, for instance.
Q. And where does the financial transaction occur?
A. The financial transaction takes place also in Asia or

Hong Kong or in Macao.
Q. So once the trees are delivered to a port and loaded on the ship, who owns them?
A. The customer does.
Q. Are any of the four named defendants based in the United States?
A. No, none of them.
Q. Do any of the four named defendants own property in the United States?
A. No, none of them.
Q. Do any of the four named defendants own companies that operate in the United States?
A. No, none of them.
Q. Do any of the four named defendants have employees in the United States?
A. No, they don't.
Q. Have any on the four named defendants ever had employees in the United States?
A. No, not to my knowledge.
Q. Did any of the four named defendants own Polygroup North America?
A. No, they don't.
Q. Mr. Steinmeyer, yesterday we heard Ms. Riley testify that Polygroup doesn't track costs in its ordinary course of business, so they were unable to produce information on

THE COURT: Okay. The future will reveal itself in due course.

Good night. We're in recess.

(Court adjourned at 5:07 p.m.).

* * * * *

**REPORTER'S CERTIFICATE**

I, MARIA V. WEINBECK, RMR, FCRR, certify that the foregoing is a true and accurate transcript of my stenographic notes, and is a full, true, and complete transcript from the proceedings produced to the best of my ability.

Certified by: *s/ Maria V. Weinbeck*
Maria V. Weinbeck, RMR-FCRR

# EXHIBIT C

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Willis Electric Co., Ltd.,<br><br>Plaintiff,<br><br>v.<br><br>Polygroup Limited (Macao Commercial Offshore), Polygroup Macau Limited (BVI), Polytree (H.K.) Co. Ltd., Polygroup Trading Limited,<br><br>Defendants. | Case No. 15-cv-3443 JNE/DTS |

**<u>DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO EXTEND THE STAY OF EXECUTION ON JUDGMENT</u>**

## I. INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 62, Defendants Polygroup Limited (Macao Commercial Offshore); Polygroup Macau Limited (BVI); Polytree (H.K.) Co. Ltd.; and Polygroup Trading Limited (collectively "Defendants") seek the Court's approval to extend the stay of proceedings to enforce the judgment, at least until the parties' post-trial motions have been resolved, without requiring a supersedeas bond. The Court has broad discretion to approve a stay of enforcement without requiring a bond in appropriate circumstances, including where post-trial motions challenging the judgment have been filed. Moreover, given the exorbitant transaction costs associated with a bond in the full amount of the current judgment, Defendants respectfully request that if, at some point, the Court determines some form of security is required to maintain the stay, a partial bond, letter of credit, or deposit with the Court equivalent to 10% of the total judgment ($7,147,845) be approved.

## II. LEGAL STANDARD

After judgment is entered in a case, execution on the judgment and proceedings to enforce it are automatically stayed for 30 days unless otherwise ordered by the Court. Fed. R. Civ. P. 62(a). While this stay does not automatically extend through decision on post-trial motions, the Court can extend the stay of execution on the judgment—and any proceedings to enforce it—pursuant to Federal Rule of Civil Procedure 62(b). Wright & Miller, *Federal Practice and Procedure* § 2902 (2023) ("further stays are both available and usual"); *id.* § 2903 ("[I]f a posttrial motion is made, the court is given discretion in

Rule 62(b) to stay execution or enforcement of the judgment pending disposition of the motion.”).

Although it may appear from the language of Rule 62 that a supersedeas bond is a necessary step to obtaining a stay, the predominant view is that Rule 62 provides the Court with discretion over such matters. *See Hurley v. Atl. City Police Dep't*, 944 F. Supp. 371, 374 (D.N.J. 1996) (granting stay and collecting cases); *see also Adams v. Toyota Motor Corp.*, No. 10-2802 (ADM/JSM), 2015 WL 3742898, at *19 (D. Minn. June 15, 2015), *aff'd in part and rev'd in part on other grounds* 867 F.3d 903 (8th Cir. 2017) (staying without supersedeas bond); *and Miami Int'l Realty Co. v. Paynter*, 807 F.2d 871, 873 (10th Cir. 1986) (affirming district court's stay without a full supersedeas bond); *Barfield v. Sho-Me Power Elec. Coop.*, No. 2:11-cv-04321, 2015 WL 4159988, at *2 (W.D. Mo. July 9, 2015) (“What constitutes ‘appropriate terms’ is a matter left to the trial court's discretion, and a court may grant a stay without a bond or with a partial bond.”) (internal quotations omitted).

Accordingly, it is not uncommon for a court to grant a stay without bond pending disposition of post-trial motions. *See e.g.*, *Kelley v. BMO Harris Bank N.A.*, No. 19-cv-1756, 2022 WL 17496033, at *2 (D. Minn. Dec. 8, 2022) (staying execution on judgment without bond until 30 days after the Court rules on the parties' post-trial motions); *see also Crabar/GBF, Inc. v. Wright*, No. 8:16-CV-537, 2023 WL 3791397, at *1-2 (D. Neb. June 2, 2023) (staying execution on judgment until 30 days after disposition of Rule 50 and 59 motions); *Infogroup, Inc. v. Database USA.com LLC*, No. 8:14-CV-49, 2018 WL 6605868, at *2 (D. Neb. Dec. 17, 2018).

The Court also has discretion to require only a partial bond, or an alternative form of security, to support a stay through post-trial motions or appeal. *See Fed. Prescription Serv., Inc. v. Am. Pharm. Ass'n*, 636 F.2d 755, 758-59 (D.C. Cir. 1980) (collecting cases) ("Rule [62] in no way necessarily implies that filing a bond is the only way to obtain a stay. It speaks only to stays granted as a matter of right, it does not speak to stays granted by the court in accordance with its discretion."); *see also, e.g.*, *Ligurotis v. Whyte*, 951 F.2d 818, 821 (7th Cir. 1992) ("[A] letter of credit may serve as the equivalent of a supersedeas bond."); *and cf. Kelley*, 2022 WL 17496033, at *1 (staying through post-trial briefings and noting "Rule 62 is silent as to the amount or other qualities of a bond that will be necessary to obtain court approval").

## III. ANALYSIS

In this case, Defendants respectfully request that the Court stay enforcement of judgment without requiring the posting of a supersedeas bond at least through disposition of the parties' post-trial motions. To the extent the Court requires, at any point, some form of security to maintain the stay through post-trial motions or appeal, a partial bond, letter of credit, or deposit with the Court equivalent to 10% of the total judgment ($7,147,845) should be deemed sufficient.

### A. The Stay Should Be Maintained, Without Bond, at Least Until the Court Has Ruled on the Parties' Post-Trial Motions.

Defendants request that the Court approve a stay without bond at least until the Court rules on the parties' pending post-trial motions. It is not uncommon for courts to do so. *See e.g.*, *Crabar/GBF, Inc.*, 2023 WL 3791397, at *1-2; *Kelley*, 2022 WL 17496033,

at *2 ("[T]he Court exercises its discretion to waive the bond or security requirement for the purpose of this limited stay."); *Infogroup, Inc.*, 2018 WL 6605868 at *2. One reason for this is the fact that a stay pending resolution of post-trial motions tends to be of fairly short duration. *See Kaneka Corp. v. SKC Kolon PI, Inc.*, No. CV 11-3397, 2017 WL 11643347, at *3-4 (C.D. Cal. June 30, 2017) (staying execution without a supersedeas bond and crediting "the minimal resulting risk attributable to the brief delay in the execution of the judgment that may be caused by resolution of Defendants' post-trial motions"). Moreover, unlike taxable costs recoverable on appeal, it is less certain that a party would have recourse for the costs of obtaining a bond pending post-trial motions in the event those motions were successful in altering the judgment. *Compare* Fed. R. Civ. P. 54(d) *and* 28 U.S.C. § 1920, *with* Fed. R. App. P. 39(e)(3). *See also, e.g.*, *Republic Tobacco Co. v. N. Atl. Trading Co.*, 481 F.3d 442, 447 (7th Cir. 2007) ("Section 1920 of Title 28 of the United States Code lists the costs taxable under [Fed. R. Civ. P.] 54(d), and it does not mention costs associated with securing a judgment pending the resolution of post-trial motions.").

Here, Defendants have filed a motion for judgment as a matter of law or a new trial on invalidity, willfulness, and infringement, and for remittitur or a new trial on damages. (Dkt. 1011.) Defendants' motion presents several meritorious challenges to the legitimacy of the jury verdict underlying the current judgment. A stay without bond pending determination on post-trial motions would prevent Defendants from having to bear unnecessary and significant transactional costs associated with obtaining a bond as a foreign entity, as explained *infra* Section III.B., in the event the damages awarded by the

jury are vacated or remitted. A stay of enforcement without bond at least pending resolution of post-trial motions should be granted.

### B. To the Extent the Court Requires Some Form of Security to Maintain the Stay, Now or Through Appeal, a Partial Bond or Alternative Should Be Allowed.

Should the Court determine, at any point, that some form of security is necessary to support maintaining the stay, Defendants request that the Court approve a partial bond, letter of credit, or deposit with the Court in the amount of 10% of the total judgment ($7,147,845).

Even where a court deems a bond or alternative security necessary to support maintaining a stay of enforcement of judgment, it may allow a party to post only a partial bond or alternative security. *E.g.*, *Steady State Imaging, LLC v. Gen. Elec. Co.*, No. 17-1048 (JRT/TNL), 2023 WL 4203162, at *10 (D. Minn. June 27, 2023) (allowing partial supersedeas bond); *see also Miami Int'l Realty Co.*, 807 F.2d at 873-74 (allowing patrial alternative security in the form of insurance coverage). Indeed, it is not uncommon for courts to find partial bonds, including partial bonds for less than 10% of the total judgment, sufficient to support a stay of enforcement of judgment. *E.g.*, *Tate & Lyle Ams. LLC v. Glatt Air Techniques Inc.*, No. 13-2037, 2016 WL 9710008, at *1-2 (C.D. Ill. Aug. 24, 2016) (finding partial bond equivalent to 10% of the total judgment to be adequate); *C. Albert Sauter Co., Inc. v. Richard S. Sauter Co., Inc.*, 368 F. Supp. 501, 520-21 (E.D. Pa. 1973) (finding a $100,000 partial bond, among other requirements, to be adequate collateral to support stay of enforcement pending appeal of $1.2 million judgment); *cf. FINOVA Capital Corp. v. Richard A. Arledge, Inc.*, No. 02-1277-PHX-

RCB, 2008 WL 828504, at *5 (D. Ariz. Mar. 26, 2008) (approving bond of $228,138 to support stay pending appeal of $1.66 million judgment); *Int'l Distrib. Ctrs., Inc. v. Walsh Trucking Co., Inc.*, 62 B.R. 723, 732 (S.D.N.Y. 1986).

Defendants have spent significant time exploring different bond options, and their investigation confirms the cost of a bond in the full amount of the judgment here would be wasteful and unfairly burdensome. (Declaration of Joe Lee ("Lee Decl.") ¶ 4.) Because Defendants do not conduct business in the United States, to secure a bond, in any amount, from an American surety company, such as Chubb Group, they would first have to secure a letter of credit from a bank with domestic presence. (*Id.*) As such, Defendants would have to pay a per annum fee to the bank, along with a per annum fee associated with the bond itself. (*Id.*)

The result is that Defendants would be required to pay three times the fees required to secure a bond as compared to what a domestic company would have to pay. (*See id.* ¶¶ 4-5 (detailing the per annum fee quotes Defendants have received from a banking institution with which they have a preexisting relationship and a reputable surety company).) Specifically, based on the per annum rates Defendants have been quoted, and assuming a two-year period for any appeal, the cost to Defendants in fees alone if required to post a bond for the full amount of the judgment would be $2,145,600. (*Id.* ¶ 5.) Given the extra layers and costs Defendants face as a foreign company, a bond or other security for the full amount of the judgment here would be a particularly wasteful expense, regardless of Federal Rule of Appellate Procedure 39(e)'s provision that such

costs "are taxable in the district court for the benefit of the party entitled to costs[.]" *See* Fed. R. App. P. 39(e)(3).

Requiring only a partial bond or alternative security would help temper the unfairly high and punitive transaction costs faced by Defendants as a result of their location outside the United States. (*E.g.*, Lee Decl. ¶ 6 (cost to post bond of $7.15 million for two years is only $214,500).) Accordingly, if the Court determines, at any point, that some form of security is necessary to support maintaining the stay, a partial bond, letter of credit, or deposit with the Court in the amount of 10% of the total judgment ($7,147,845) should be deemed sufficient.

## IV. CONCLUSION

For the reasons set forth herein, Defendants respectfully request that the Court grant its motion to extend the stay of execution on judgment, without requiring a supersedeas bond, at least through resolution of post-trial motions. To the extent the Court at some point requires Defendants to post security to maintain the stay, Defendants respectfully request that a partial bond, letter of credit, or deposit with the Court equivalent to 10% of the total judgment ($7,147,845) be deemed sufficient.

Respectfully submitted,

Dated: April 10, 2024

**MERCHANT & GOULD P.C.**

*By: s/Rachel Zimmerman Scobie*
Rachel Zimmerman Scobie (0314171)
Elisabeth S. Muirhead (0399590)
Gabrielle L. Kiefer (0402364)
Marra M. Clay (0403837)
150 South Fifth Street, Suite 2200
Minneapolis, MN 55402
Phone: (612) 332-5300
Fax: (612) 332-9081
rscobie@merchantgould.com
emuirhead@merchantgould.com
gkiefer@merchantgould.com
mclay@merchantgould.com

AND

John T. Winemiller (*pro hac vice*)
800 S. Gay Street, Suite 2150
Knoxville, TN 37929
Phone: (865) 380-5977
Fax: (612) 332-9081
jwinemiller@merchantgould.com

AND

James W. Beard (*pro hac vice*)
1801 California Street, Suite 3300
Denver, CO 80202
Phone: (303) 357-1189
Fax: (612) 332-9081
jbeard@merchantgould.com

AND

**POLYGROUP HOLDINGS LIMITED**
Eric Szweda (*pro hac vice*)
Unit 606, Fairmont House
8 Cotton Tree Drive
Hong Kong

Hong Kong Special Administrative Region
85291937764
Email: eric.szweda@polygroup.com

AND

**FINNEGAN, HENDERSON, FARABOW, GARRET & DUNNER**
J. Michael Jakes (*pro hac vice*)
Jason Lee Romrell (*pro hac vice*)
901 New York Avenue, N.W.
Washington, DC 20001
Phone: (202) 408-4045
mike.jakes@finnegan.com
jason.romrell@finnegan.com

***Attorneys for Polygroup Limited (Macao Commercial Offshore), Polygroup Macau Limited (BVI), Polytree (H.K.) Co. Ltd., and Polygroup Trading Limited***

# EXHIBIT D

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Willis Electric Co., Ltd.,<br><br>Plaintiff,<br><br>v.<br><br>Polygroup Limited et al,<br><br>Defendants. | Case No. 15-cv-3443 (JNE/DTS)<br><br>**ORDER** |

This matter comes before the Court on Defendants Polygroup Limited (Macao Commercial Offshore), Polygroup Macau Limited (BVI), Polytree (H.K.) Co. Ltd., and Polygroup Trading Limited's (collectively, "Defendants" or "Polygroup") motion to stay execution of the judgment without posting a supersedeas bond, or alternatively, with a partial bond equivalent to 10% of the judgment. (Dkt. 1018.) Plaintiff Willis Electric Co., Ltd. ("Willis Electric") opposes the motion, arguing that Defendants should be required to post a bond for the full amount of the judgment plus 10% for post-judgment interest, costs, and damages for delay. For the reasons addressed below, the Court grants Defendants' motion to stay execution of the judgment, conditioned upon Defendants posting a supersedeas bond as specified in this order.

**BACKGROUND**

Willis Electric filed this patent infringement action in 2015 alleging that Polygroup infringed various claims of several patents, including U.S. Patent No. 8,454,186. Polygroup asserted defenses of non-infringement and invalidity of these patents. After

motion practice and inter partes review proceedings challenging the validity of the asserted patents, *see*, *e.g.*, *Polygroup Ltd. MCO v. Willis Elec. Co., Ltd.*, 2021-1401, 2021-1402, 2022 WL 1183332 (Fed. Cir. Apr. 20, 2022), the sole claim tried to the jury was claim 15 of the ’186 patent.

The jury trial commenced on January 8, 2024 before this Court. On January 17, 2024, the jury returned a unanimous verdict finding that Polygroup willfully infringed claim 15 of the ’186 patent. The jury awarded $42,494,772 in damages.

On March 11, 2024, the Court entered judgment against Polygroup for $71,478,449.76, which included the jury’s damages award plus pre-judgment interest. On April 10, 2024, Polygroup filed a motion to extend the stay of execution on the judgment without posting a supersedeas bond or, alternatively, with a partial bond equivalent to 10% of the judgment. Willis Electric filed its opposition to Polygroup’s motion on April 15, 2024, arguing that Polygroup should be required to post a bond for the full amount of the judgment plus 10% for post-judgment interest, costs, and damages for delay.

**ANALYSIS**

The issue before the Court is whether to grant Polygroup’s motion to stay execution of the judgment without posting a supersedeas bond or, alternatively, with a partial bond equivalent to 10% of the judgment. Polygroup argues that the cost of obtaining a bond for the full judgment amount would be “exorbitant” and “wasteful,” particularly given its status as a foreign entity. In opposition, Willis Electric contends that Polygroup should be required to post a bond for the full amount of the judgment plus 10% for post-judgment

interest, costs, and damages for delay, asserting that Polygroup has not met its burden to demonstrate extraordinary circumstances justifying a waiver or reduction of the bond.

Rule 62(b) of the Federal Rules of Civil Procedure allows for a stay of execution of a judgment pending appeal if the party seeking the stay posts "a bond or other security." Fed. R. Civ. P. 62(b). The purpose of a supersedeas bond is to "secure the judgment throughout the appeal process against the possibility of the judgment debtor's insolvency." *Adams v. Toyota Motor Corp.*, No. 10-CV-2802 (ADM/JSM), 2015 WL 3742898, at *19 (D. Minn. June 15, 2015). Courts in this District generally require the bond to be set "in the full amount of the judgment plus interests, costs, and damages for delay." *Adzick v. Unum Life Ins. Co. of Am.*, No. 99-CV-808 (JRT/FLN), 2003 WL 21011345, at *1 (D. Minn. Apr. 16, 2003).

In the appropriate circumstances, however, the Court may waive the bond requirement. *New Access Commc'ns LLC v. Qwest Corp.*, 378 F. Supp. 2d 1135, 1138 (D. Minn. 2005). The burden is on the party seeking the waiver to demonstrate that such a departure is warranted by addressing the following five factors: (1) the complexity of the collection process; (2) the amount of time required to obtain a judgment after appeal; (3) the degree of confidence that the debtor has sufficient funds to pay the judgment; (4) whether the debtor's ability to pay is so plain that the cost of the bond would be a waste of money; and (5) whether the debtor is in such a precarious financial position that posting a bond would jeopardize other creditors. *Kelley v. BMO Harris Bank N.A.*, No. 19-cv-1756 (WMW), 2022 WL 17496033, at *1 (D. Minn. Dec. 8, 2022).

Here, Polygroup argues that the cost of obtaining a bond for the full judgment amount would be “exorbitant” and “wasteful,” particularly given its status as a foreign entity. However, the Court finds that Polygroup has not met its burden to demonstrate extraordinary circumstances justifying a waiver or reduction of the bond.

First, Polygroup did not address the complexity of the collection process. As a foreign entity with no U.S. bank accounts, executing the judgment against Polygroup is likely to involve significant discovery, garnishment procedures, and turnover orders, among other complex proceedings. Second, Polygroup provided no information about the estimated duration of the appeal process, which is relevant to assessing the risk of insolvency during that time. Third, while Polygroup asserts that the bond premium is burdensome, it has not provided any evidence regarding its overall financial condition or ability to pay the judgment. Polygroup’s CFO stated that the company can obtain a bond for the full judgment amount, which undercuts the argument that the cost is prohibitive. Fourth, given the lack of evidence about Polygroup’s finances, the Court cannot conclude that its ability to pay is so plain that the cost of the bond would be a waste of money. Finally, Polygroup has not identified any other creditors or argued that posting a bond would jeopardize their interests.

The Court is mindful of the additional challenges Polygroup faces as a foreign entity in securing a bond. However, these challenges do not rise to the level of extraordinary circumstances that would justify waiving the bond entirely or reducing it to a mere 10% of the judgment. The 1.5% premium Polygroup was quoted for the bond is within the normal

range for supersedeas bonds, and without more information about Polygroup's financial situation, the Court cannot conclude that this cost is unduly burdensome.

Given the substantial amount of the judgment and the importance of securing it against the possibility of Polygroup's insolvency during the appeal process, the Court finds that a bond for the full amount of the judgment plus 10% for post-judgment interest, costs, and damages for delay is necessary. *See Adzick*, 2003 WL 21011345, at *1; *see Kelley v. BMO Harris Bank N.A.*, 19-cv-1756 (WMW), 2023 WL 4740927, at *1 (D. Minn. Jul. 25, 2023).

**ORDER**

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' motion to stay execution of the judgment, (Dkt. 1018), is **GRANTED**, conditioned upon Defendants posting a supersedeas bond as specified below.

2. Under Rule 62, Fed. R. Civ. P., Defendants shall post with the Clerk of Court a supersedeas bond in the amount of $78,626,294.74, representing the judgment of $71,478,449.76 plus 10%.

3. The stay shall remain in effect until the Court resolves Defendants' post-trial motion and, if necessary, through the pendency of any appeal, provided the bond remains in place.

Dated: April 17, 2024

s/Joan N. Ericksen
Joan N. Ericksen
United States District Judge