**No. 2024-2118**

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

WILLIS ELECTRIC CO., LTD.,

*Plaintiff-Appellee*,

*v.*

POLYGROUP LTD. (MACAO COMMERCIAL OFFSHORE), POLYGROUP MACAU LIMITED BVI, POLYTREE (HK) CO. LTD., POLYGROUP TRADING LTD.,

*Defendants-Appellants.*

On Appeal from the United States District Court for the District of Minnesota, No. 0:15-cv-03443-JNE, Senior Judge Joan N. Ericksen.

## BRIEF FOR PLAINTIFF-APPELLEE WILLIS ELECTRIC CO., LTD.

PATRICK M. ARENZ
EMILY E. NILES
BRENDA L. JOLY
ROBINS KAPLAN LLP
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
(612) 349-8500

MARK C. FLEMING
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526 6000

NORA N. XU
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Avenue, NW
Washington, D.C. 20037
(202) 663-6000

*Attorneys for Plaintiff-Appellee Willis Electric Co., Ltd.*

November 27, 2024

## PATENT CLAIMS AT ISSUE

Claims 10 and 15 of U.S. Patent No. 8,454,186 are set forth below.

10. A lighted artificial tree, comprising:

a first tree portion including a first trunk portion, a first plurality of branches joined to the first trunk portion, and a first light string, the first trunk portion having a first trunk body and a trunk connector, at least a portion of the trunk connector housed within the first trunk body and electrically connected to the first light string;

a second tree portion including a second trunk portion, a second plurality of branches joined to the second trunk portion, and a second light string, the second trunk portion having a trunk body and a trunk connector, at least a portion of the trunk connector housed within the second trunk portion and electrically connected to the second light string; and

wherein the second tree portion is mechanically and electrically connectable to the first tree portion by coupling a lower end of the second trunk body to an upper end of the first trunk body along a common vertical axis at a rotational orientation of the first trunk portion relative the second trunk portion about the common vertical axis, thereby causing the trunk connector of the first trunk portion to make an electrical connection with the trunk connector of the second trunk portion within an interior of the lighted artificial tree, the electrical connection being made independent of the rotational orientation of the first trunk portion relative the second trunk portion about the common vertical axis.

15. The lighted artificial tree of claim 10, wherein the trunk connectors of the first and second tree portions form coaxial trunk connectors.

Appx149(22:34-60); Appx150(23:8-10).

# CERTIFICATE OF INTEREST

Counsel for Plaintiff-Appellee Willis Electric Co., Ltd. certifies the following:

**1. Represented Entities**. Fed. Cir. R. 47.4(a)(1). Provide the full names of all entities represented by undersigned counsel in this case.

Willis Electric Co., Ltd.

**2. Real Party in Interest**. Fed. Cir. R. 47.4(a)(2). Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.

None.

**3. Parent Corporations and Stockholders**. Fed. Cir. R. 47.4(a)(3). Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

None.

**4. Legal Representatives**. List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

ROBINS KAPLAN LLP: Ronald J. Schutz, Prateek Neil Viswanathan, Jessica Lee Gutierrez, Austin Brooks Miller

GREENBERG TRAURIG, LLP: Ann Elizabeth Motl, Thomas R. Pack

CHRISTENSEN, FONDER, DARDI & HERBERT PLLC: Douglas J. Christensen

FOX ROTHSCHILD LLP: Lukas Dustin Jonathan Toft, Mark P. Schneebeck

FREDRIKSON & BYRON: Sarah A. Horstmann

SAURO & ALTON PLLC: Larina A. Alton

DEWITT LLP: Dwight G. Rabuse

MASLON LLP: Terrance C. Newby, R. Christopher Sur

**5. Related Cases**. Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☒ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). Please do not duplicate information. This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

None.

Dated: November 27, 2024

/s/ Mark C. Fleming
MARK C. FLEMING
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526 6000

# TABLE OF CONTENTS

Page

PATENT CLAIMS AT ISSUE

CERTIFICATE OF INTEREST .................................................................i

TABLE OF AUTHORITIES ...................................................................vi

STATEMENT OF RELATED CASES ......................................................1

INTRODUCTION ...................................................................................1

STATEMENT OF ISSUES ......................................................................6

STATEMENT OF THE CASE..................................................................6

A. Willis Electric's One Plug Tree ..........................................................6

B. The '186 Patent ...................................................................................9

C. Reexamination Of The '186 Patent....................................................12

D. Polygroup's Willful Infringement Of The '186 Patent.......................13

E. IPR Proceedings ................................................................................16

F. District Court Proceedings ................................................................19

1. Claim construction ..............................................................................19

2. *Daubert* ............................................................................................20

3. Trial ....................................................................................................21

4. Post-judgment motions .......................................................................27

SUMMARY OF THE ARGUMENT ........................................................29

ARGUMENT ..........................................................................................32

I. STANDARD OF REVIEW ...................................................................32

II. POLYGROUP'S OBVIOUSNESS AND DAMAGES ARGUMENTS DISREGARD CLAIM 15'S INNOVATIVE ADVANCE..........33

III. THE DISTRICT COURT CORRECTLY DENIED POLYGROUP'S MOTION FOR JMOL OF OBVIOUSNESS..........35

A. Substantial Evidence Of Lack Of Motivation To Combine And Of Teaching Away Supports The Jury's Non-obviousness Verdict...........35

B. Polygroup's Motivation To Combine Arguments Fail...........41

C. Substantial Evidence Of Objective Indicia Of Non-obviousness Also Supports The Jury's Verdict..........45

IV. POLYGROUP HAS SHOWN NO BASIS FOR DISTURBING THE DAMAGES AWARD..........50

A. Ms. Riley Properly Valued The Patented Invention...........51

B. The District Court Acted Within Its Discretion In Finding That Willis Electric's Damages Evidence Was Sufficiently Reliable...........54

1. The judgment may be affirmed based on Ms. Riley's unchallenged *Georgia-Pacific* analysis..........54

2. The district court applied the correct legal standard...........56

3. Polygroup's arguments about claim 10 are misplaced...........57

4. Ms. Riley's income approach apportioned the incremental value of claim 15 from unpatented features...........60

a. Ms. Riley's reliance on profit margins for One Plug Trees was reliable...........60

b. Ms. Riley's profit analysis for Polygroup's Quick Set trees was reliable........................................63

5. Ms. Riley's market approach relied on comparable agreements apportioned to the patented technology's incremental value. ...........................................65

RESPONSE TO POLYGROUP'S COSTS DEMAND ........................................70

CONCLUSION ........................................................................................71

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Abbott Laboratories v. Syntron Bioresearch, Inc.*,
334 F.3d 1343 (Fed. Cir. 2003) ....................36

*ABT Systems, LLC v. Emerson Electric Co.*,
797 F.3d 1350 (Fed. Cir. 2015) ....................32

*Apple Inc. v. Samsung Electronics Co.*,
839 F.3d 1034 (Fed. Cir. 2016) ....................39, 44, 45

*Arctic Cat Inc. v. Bombardier Recreational Products Inc.*,
876 F.3d 1350 (Fed. Cir. 2017) ....................32

*Arctic Cat Inc. v. Polaris Industries, Inc.*,
795 F. App'x 827 (Fed. Cir. 2019) (nonprecedential)....................42

*AstraZeneca AB v. Apotex Corp.*,
782 F.3d 1324 (Fed. Cir. 2015) ....................55, 58, 59

*Bio-Rad Laboratories, Inc. v. 10X Genomics Inc.*,
967 F.3d 1353 (Fed. Cir. 2020) ....................67

*City of San Antonio, Texas v. Hotels.com, L.P.*,
593 U.S. 330 (2021)....................71

*Commonwealth Scientific & Industrial Research Organisation v. Cisco Systems, Inc.*,
809 F.3d 1295 (Fed. Cir. 2015) ....................56, 67

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
509 U.S. 579 (1993)....................56

*Ericsson, Inc. v. D-Link Systems, Inc.*,
773 F.3d 1201 (Fed. Cir. 2014) ....................55, 56, 60

*Exmark Manufacturing Co. v. Briggs & Stratton Power Products Group, LLC*,
879 F.3d 1332 (Fed. Cir. 2018) ....................63

*Gambro Lundia AB v. Baxter Healthcare Corp.*,
110 F.3d 1573 (Fed. Cir. 1997) ....................36

*Global Traffic Technologies LLC v. Morgan*,
620 F. App'x 895 (Fed. Cir. 2015) (nonprecedential)....................62

*Henny Penny Corp. v. Frymaster LLC*,
938 F.3d 1324 (Fed. Cir. 2019) ....................44

*i4i Ltd. Partnership v. Microsoft Corp.*,
598 F.3d 831 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011)....................57

*Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*,
688 F.3d 1342 (Fed. Cir. 2012) ....................32, 33, 45

*Lemelson v. TRW, Inc.*,
760 F.2d 1254 (Fed. Cir. 1985) ....................33

*Lindemann Maschinenfabrik GmbH v. American Hoist & Derrick Co., Harris Press & Shear Division*,
895 F.2d 1403 (Fed. Cir. 1990) ....................61

*Merck Sharp & Dohme B.V. v. Warner Chilcott Co., LLC*,
711 F. App'x 633 (Fed. Cir. 2017) (nonprecedential)....................38

*Microsoft Corp. v. i4i Ltd. Partnership*,
564 U.S. 91 (2011)....................41

*MobileMedia Ideas LLC v. Apple Inc.*,
780 F.3d 1159 (Fed. Cir. 2015) ....................42

*Omega Patents, LLC v. CalAmp Corp.*,
13 F.4th 1361 (Fed. Cir. 2021) ....................45, 67

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) (en banc) ....................19

*Plas-Pak Industries v. Sulzer Mixpac AG*,
600 F. App'x 755 (Fed. Cir. 2015) (nonprecedential)....................39

*Polygroup Ltd. MCO v. Willis Electric Co.*,
759 F. App'x 934 (Fed. Cir. 2019) (nonprecedential)....................1, 2, 16, 17, 18

*Polygroup Ltd. MCO v. Willis Electric Co.*,
780 F. App'x 880 (Fed. Cir. 2019) (nonprecedential)........................................43

*Polygroup Ltd. MCO v. Willis Electric Co.*,
Nos. 2021-1401, -1402, 2022 WL 1183332 (Fed. Cir. Apr. 20, 2022) (nonprecedential)........................................*passim*

*Princeton Biochemicals, Inc. v. Beckman Coulter, Inc.*,
411 F.3d 1332 (Fed. Cir. 2005) ........................................44

*Prolitec Inc. v. ScentAir Technologies, LLC*,
No. 20-cv-00984-WCB, 2023 WL 8697973 (D. Del. Dec. 13, 2023) ...............58

*Provisur Technologies, Inc. v. Weber, Inc.*,
119 F.4th 948 (Fed. Cir. 2024) ........................................33

*Rembrandt Wireless Technologies, LP v. Samsung Electronics Co.*,
853 F.3d 1370 (Fed. Cir. 2017) ........................................39

*Schooley v. Orkin Extermination, Co.*,
502 F.3d 759 (8th Cir. 2007) ........................................32

*SmithKline Beecham Corp. v. Apotex Corp.*,
439 F.3d 1312 (Fed. Cir. 2006) ........................................40

*Spectralytics, Inc. v. Cordis Corp.*,
649 F.3d 1336 (Fed. Cir. 2011) ........................................32, 45

*Sprint Communications Co. v. Time Warner Cable, Inc.*,
760 F. App'x 977 (Fed. Cir. 2019) (nonprecedential)................................. 54-55

*Teleflex, Inc., v. Ficosa North America Corp.*,
299 F.3d 1313 (Fed. Cir. 2002) ........................................36, 39

*Trivascular, Inc. v. Samuels*,
812 F.3d 1056 (Fed. Cir. 2016) ........................................39

*Vectura Ltd. v. GlaxoSmithKline LLC*,
981 F.3d 1030 (Fed. Cir. 2020) ........................................67

*VirnetX, Inc. v. Cisco Systems, Inc.*,
767 F.3d 1308 (Fed. Cir. 2014) ........................................57

*VLSI Technology LLC v. Intel Corp.*,
87 F.4th 1332 (Fed. Cir. 2023) ....................................................................62

*Vogt v. State Farm Life Insurance Co.*,
963 F.3d 753 (8th Cir. 2020) ........................................................................55

*WBIP, LLC v. Kohler Co.*,
829 F.3d 1317 (Fed. Cir. 2016) ..............................................................45, 46, 50

*Winner International Royalty Corp. v. Wang*,
202 F.3d 1340 (Fed. Cir. 2000) ...................................................................... 36-37

**STATUTES AND RULES**

35 U.S.C. § 282(a) ..........................................................................................33

Fed. R. Evid. 705 ...............................................................................................62

## STATEMENT OF RELATED CASES

No other appeal in or from the same district court proceedings has been before this or any other appellate court. This appeal concerns claim 15 of U.S. Patent No. 8,454,186 (the "'186 patent"). This Court previously affirmed the patentability of claim 15 of the '186 patent in an appeal of an *inter partes* review ("IPR") of the '186 patent in *Polygroup Ltd. MCO v. Willis Electric Co.*, Nos. 2018-1745, -1746, -1747, 759 F. App'x 934 (Fed. Cir. Jan. 28, 2019, modified Mar. 28, 2019) (Hughes, J., joined by Dyk & Reyna, JJ.). A subsequent appeal of the IPR of the '186 patent was previously before this Court in *Polygroup Ltd. MCO v. Willis Electric Co.*, Nos. 2021-1401, -1402, 2022 WL 1183332 (Fed. Cir. Jan. 19, 2022, modified Apr. 20, 2022) (Hughes, J., joined by Dyk, J.; opinion concurring-in-part and dissenting-in-part by Stoll, J.). Counsel for Willis Electric Co., Ltd. ("Willis Electric") is not aware of any other case pending before this or any other court that may directly affect or be affected by this Court's decision in this appeal.

## INTRODUCTION

In 2010, Willis Electric, a family-owned manufacturing business, transformed the pre-lit artificial holiday tree market when it released the One Plug Tree, which was dramatically easier to assemble than preceding models. Some prior art trees required the consumer to assemble the mechanical trunk sections and separately plug in electrical wires to power the lights. Others combined the mechanical and

electrical connections together but required the consumer to align the segments' orientation exactly to make the electrical connection. Willis Electric's tree, by contrast, had ***coaxial*** trunk connectors between its sections, which allowed the user to complete the mechanical and electrical connection at the same time ***regardless*** of the rotational orientation of the sections. Willis Electric's '186 patent covers the One Plug Tree's design, which was an immediate success with customers.

Defendants-Appellants (together, "Polygroup") are affiliates of a multibillion-dollar conglomerate that is the world's largest manufacturer of artificial holiday trees. After studying the One Plug Tree upon release, Polygroup began selling its own coaxially-coupled lighted trees, which it called "Quick Set." Polygroup continued selling the Quick Set trees even after learning of the '186 patent the day it issued. Polygroup's Quick Set trees yielded over $1 billion in revenue.

Eager to protect its revenue stream, Polygroup launched a multi-front attack on the '186 patent. Before this infringement action was even filed, the Patent Office had examined claim 15 of the '186 patent twice—once during its original examination and once in an anonymously-requested *ex parte* reexamination. And after Willis Electric sued Polygroup, Polygroup challenged claim 15 in IPRs. The Patent Trial and Appeal Board ("Board") confirmed claim 15's patentability, and this Court affirmed. *Polygroup Ltd. MCO v. Willis Elec. Co.*, 759 F. App'x 934, 944 (Fed. Cir. 2019). After an eight-day trial, a jury found that Polygroup willfully

infringed claim 15, that Polygroup again failed to prove claim 15 invalid, and that Polygroup owed Willis Electric $42.5 million as a reasonable royalty.

Polygroup does not appeal the willful infringement finding. Instead, Polygroup takes another run at trying to invalidate claim 15, while also arguing that this Court should set aside the jury's well-supported damages award. Polygroup's appellate contentions fail.

For starters, Polygroup's arguments depend on a critical error in its account of the prior rulings involving the '186 patent. Polygroup wrongly tries to minimize claim 15's innovative advance by assuming that all elements recited in independent claim 10, from which claim 15 depends, were known in the prior art. But every claim is considered its own invention, and this Court assesses a patented invention's non-obviousness and value by assessing that claim as a whole. Moreover, although this Court held claim 10 unpatentable, that ruling turned on the broadest reasonable interpretation ("BRI") under which claim 10 "permit[ted] the mechanical and electrical connections [to] be made independently"—*i.e.*, in ***separate*** steps. *Polygroup Ltd. MCO v. Willis Elec. Co.*, 2022 WL 1183332, at *5 (Fed. Cir. Apr. 20, 2022). That construction was essential to the Court's finding that the prior art "Miller" reference—in which the mechanical trunk sections were connected separately from electrical wires—taught "every limitation" of claim 10. *Id.*

In this case, however, the district court applied a narrower, *Phillips*-based construction—which Polygroup does not appeal—that required that the mechanical and electrical connections be made at the same time regardless of the trunk sections' rotational orientation. No court, and certainly not this Court, has ever held that the one-step rotationally-independent assembly—in claim 10 as narrowly interpreted by the district court, and implemented through dependent claim 15's coaxial trunk connectors—was previously known. Rather, it was the key to the invention. The trial evidence accordingly demonstrated that the claimed one-step assembly and use of coaxial trunk connectors was non-obvious and provided tremendous value.

Once the Court discards Polygroup's mistaken articulation of the effect of claim 10's unpatentability, its other arguments fail too. Substantial evidence amply supports the jury's finding that Polygroup failed to prove a motivation to modify the prior art to produce claim 15's narrow implementation. Polygroup's expert provided only conclusory testimony on this issue, while Willis Electric's expert explained in detail why a skilled artisan would not have been motivated to modify the "Loomis-GKI Tree"—which was cumulative of the prior art Loomis patent considered during prosecution—to create coaxial trunk connectors, including because the Loomis-GKI Tree taught away. Objective indicia also further validate the non-obviousness verdict.

Polygroup's damages arguments—many of which were not properly presented to the district court—fare no better. Willis Electric's expert, Michele Riley, presented multiple independent approaches to ensure proper apportionment and arrive at a reasonable royalty. In one approach (the "income" approach), Ms. Riley apportioned claim 15's incremental value by comparing profits for products with and without the patented single-step coaxial trunk connectors. Although that testimony by itself sufficiently supports the verdict, Ms. Riley further presented a "market" approach, using comparable licenses to both the '186 patent and to a patent that Polygroup's expert agreed was technologically comparable. In addition, Ms. Riley applied a thorough *Georgia-Pacific* analysis that Polygroup does not challenge on appeal. The district court did not abuse its discretion in allowing Ms. Riley to present her opinions, which are well-grounded in this Court's precedent.

This case has been pending for over nine years. Claim 15's patentability has been reviewed six times, with each decisionmaker—the patent examiner, reexamination unit, the Board as affirmed by this Court, the jury, and the district court—upholding it. Polygroup's seventh try does not warrant a different result. The jury's verdict is amply supported, and Polygroup has shown no abuse of discretion in the district court's rulings. This Court should affirm the judgment.

## STATEMENT OF ISSUES

1. Whether the district court correctly denied Polygroup's motion for judgment as a matter of law ("JMOL") of obviousness.

2. Whether the district court acted within its discretion in denying Polygroup's motion for a new damages trial.

## STATEMENT OF THE CASE

### A. Willis Electric's One Plug Tree

When Willis Electric CEO Johnny Chen started designing pre-lit artificial holiday trees, they tended to be "big, bulky, complex and difficult to assemble." Appx46; Appx1517-1518(517:16-518:8). Traditionally, pre-lit trees had lights pre-strung on attached branches, and wires powering the lights needed to be connected separately from the tree trunk sections:




Appx12965; *see* Appx1517-1518(517:18-518:8); Appx1548(548:3-11).

Mr. Chen observed that the then-available trees were difficult to assemble because of the multiple steps needed to align and mechanically connect the top, middle, and bottom tree trunk sections, and also to separately connect the power cords of the light strings. Appx1517-1518(517:18-518:8); Appx1549-1550(549:19-550:3).

In 2010, Mr. Chen designed the One Plug Tree to provide consumers with a convenient, easy-to-assemble lighted tree. The innovative design uses coaxial electrical connectors in the tree trunk portions. Unlike a standard two-prong plug, which must be oriented in a particular way to connect to a socket, coaxial connectors can create an electrical connection no matter which way they are rotated. Mr. Chen created custom-made parts to house coaxial electrical contact sets inside the ends of tree trunk portions and connect the back ends of the contact sets to light string wiring assemblies in manufacturing, thus permitting customers to complete the mechanical and electrical connection in one step—and do so without having to rotate trunk portions to a particular orientation. Appx1521-1522(521:14-522:13); Appx1734(734:17-19); *see* Appx12691; Appx1295-1297(295:15-297:8).



Appx12693. The coaxial trunk connectors enabled One Plug Trees to be easily assembled in a single step and light up in under one minute. Appx1525(525:9-13); Appx12679.

One Plug Trees were sold through retailers such as Lowe's starting in 2011, and were an immediate hit. Appx1523(523:10-21); *see* Appx46. The coaxial trunk connector design that provided for easy one-step assembly received extensive praise and became widely adopted in the holiday tree industry. Appx1395-1396(395:7-396:8). One buyer for big retailers testified that the One Plug Tree's easy assembly made it "a game changer within the artificial pre-lit tree business" and "the biggest

movement in pre-lit trees … since the tree went from a non-lit to a pre-lit." Appx2230(1230:15-20); Appx2238(1238:11-21). Lowe's merchandise director praised "how quickly and easily it was … put together," as consumers did not need to align the trunk sections. Appx1496-1497(496:23-497:25) ("[I]t was a wow. It just excited us."); Appx1659-1660(659:19-660:24); *see* Appx1493-1494(493:25-494:12). Competitors including Donner & Blitzen, Winners, Santa's Best, Grandin Road, LEDup, and Puleo eventually adopted the One Plug Tree's coaxial trunk connector design. Appx1406-1407(406:17-407:18); Appx2641(1641:9-19); Appx2642-2643(1642:1-1643:1); Appx4944; Appx12958-12960.

### B. The '186 Patent

On September 23, 2010, Willis Electric filed a provisional patent application on the One Plug Tree's design. Appx46; Appx123; Appx1184-1192(184:11-192:17); Appx5010-5045. A nonprovisional application followed on May 20, 2011, and issued as the '186 patent on June 4, 2013. Appx46; Appx1184-1186(184:11-186:5); Appx123. The Patent Office considered over 80 patent and patent application references, including U.S. Patent No. 8,053,042 (the "Loomis patent"), which Willis Electric disclosed during prosecution. Appx124; Appx1193-1195(193:14-195:4); Appx2394(1394:21-24).

The '186 patent is "directed to lighted artificial trees having separable, modular tree portions" that are "mechanically and electrically connectable" "at any

rotational orientation about a vertical axis," thus simplifying assembly. Appx139(1:15-18); Appx146(15:1-6, 15:45-59). The tree trunk portions "house connector assemblies containing electrical wiring and electrical connectors that provide a source of electricity for light strings." *Polygroup*, 2022 WL 1183332, at *1 (citing Appx144-145(11:4-7, 11:57-67, 14:65-67)). The connector assemblies "are securely positioned within their respective trunk sections" and designed to "permit the electrical connection of the connectors at any rotational orientation about a vertical axis." Appx146(15:1-6, 15:45-59). The design provides for "simplified structures … for mechanically coupling tree portions along the trunk without the burden of multiple steps such as rotational alignment[.]" Appx145(14:20-24).

Claim 15's key innovation—and the heart of the One Plug Tree's design—is the coaxial trunk connectors that allow for mechanical and electrical connection at the same time, regardless of the rotational orientation of the trunk sections. *See* Appx1187-1189(187:4-189:7) ("original drawing" sent by Mr. Chen to prosecution counsel showed "coaxial connectors and wires inside of the trunk"); Appx1521-1522(521:14-522:6); Appx2696(1696:12-16). The '186 patent depicts the coaxial trunk connector design:




Appx12863 (annotating Appx129-130(Figs.5-6); Appx133(Fig.15b)).

Claims 10 and 15 of the ’186 patent recite:

10. A lighted artificial tree, comprising:

a first tree portion including a first trunk portion, a first plurality of branches joined to the first trunk portion, and a first light string, the first trunk portion having a first trunk body and a trunk connector, at least a portion of the trunk connector housed within the first trunk body and electrically connected to the first light string;

a second tree portion including a second trunk portion, a second plurality of branches joined to the second trunk portion, and a second light string, the second trunk portion having a trunk body and a trunk connector, at least a portion of the trunk connector housed within the second trunk portion and electrically connected to the second light string; and

wherein the second tree portion is mechanically and electrically connectable to the first tree portion by coupling a lower end of the second trunk body to an upper end of the first trunk body along a common vertical axis at a rotational orientation of the first trunk portion relative the second trunk portion about the common vertical axis,

> thereby causing the trunk connector of the first trunk portion to make an electrical connection with the trunk connector of the second trunk portion within an interior of the lighted artificial tree, ***the electrical connection being made independent of the rotational orientation of the first trunk portion relative the second trunk portion about the common vertical axis***.
>
> 15. The lighted artificial tree of claim 10, wherein the trunk connectors of the first and second tree portions form ***coaxial trunk connectors***.

Appx149(22:34-60); Appx150(23:8-10).[1]

### C. Reexamination Of The ’186 Patent

After the ’186 patent issued, the Patent Office initiated reexamination based on five prior art references, following an anonymous request. Appx1204-1206(204:21-206:3); Appx2395(1395:13-17); Appx4934; Appx7674; Appx7780; Appx11445.

During the reexamination, Willis Electric again disclosed the Loomis patent, as well as German Patent No. DE8466328 (“Otto”). Appx12672; Appx12677. The Patent Office also considered U.S. Patent App. No. 2007/0230174 A1 (“Hicks”), which—like the Loomis patent—disclosed standard two- or three-prong NEMA[2] plugs fixed inside trunk sections. Appx12672; Appx1206-1208(206:4-208:2); Appx2374-2376(1374:25-1376:16); Appx2381-2382(1381:5-1382:10); Appx2386-

---

[1] Emphases are added unless otherwise indicated.

[2] “NEMA” refers to the National Electrical Manufacturers Association, which sets standards used for electrical connectors. *See* Appx2293(1293:19-25); Appx2314(1314:17-23); Appx4773.

2389(1386:19-1389:2); Appx2395(1395:18-25); Appx2404(1404:14-23); Appx2406(1406:3-6); Appx12663-12671. The Patent Office confirmed the patent's patentability. Appx151-152.

### D. Polygroup's Willful Infringement Of The '186 Patent

As Willis Electric was developing the One Plug Tree, Polygroup was selling artificial holiday trees with power cords located outside the tree trunk. Appx1727(727:5-16). A Polygroup executive described its "R&D [a]s weak" because Polygroup "ha[d] not innovated anything in recent years." Appx12699; Appx1657-1658(657:2-658:10).

In late 2010, a Willis Electric distributor showed a One Plug Tree prototype to buyers from Costco, who were "very excited" about the technology. Appx1523(523:10-17); Appx1526-1527(526:17-527:16); Appx12684-12685. Costco then asked Polygroup for a tree with internal electrical connections. Appx1947(947:8-19); Appx1991(991:5-17); Appx2144(1144:5-7); Appx4769-4770. Polygroup began working on an internally-powered tree design. Appx1991-1995(991:5-995:8).

In October 2011, shortly after Willis Electric released the One Plug Tree, Polygroup obtained one from Lowe's for Polygroup's executive team to "inspect[]" and "stud[y]." Appx1713(713:11-24); Appx1730(730:1-7); Appx1733-1734(733:11-734:16); Appx12695-12697. While waiting for the One Plug Tree to

arrive at Polygroup's facility, a key Polygroup executive remarked: "We will receive Willis' tree next week. We should review their design before starting our moulds." Appx5003-5005. Polygroup also learned about Willis Electric's patents at this time, because the One Plug Tree bore a "patent pending" hangtag. Appx1527-1528(527:19-528:20); Appx12690. Polygroup's executives discussed a photo of the hangtag. Appx1739(739:2-4); Appx2007-2010(1007:25-1010:14); Appx2076(1076:2-4); Appx5001-5002; Appx12695-12697.

Polygroup proceeded to copy the One Plug Tree's coaxial trunk connector design. Appx1531-1532(531:1-532:24). In 2012, Polygroup began selling the Quick Set tree, which incorporated the One Plug Tree's coaxial trunk connector design and thus allowed for a mechanical and electrical connection simultaneously, regardless of the rotational orientation of the tree trunk sections—a feature Polygroup considered "a big improvement over" then-available designs. Appx1732-1733(732:20-733:10); Appx1299(299:16-22); Appx1614(614:2-4).

Polygroup continued to monitor Willis Electric's patents and products closely. Appx1739-1740(739:11-740:7); Appx2074-2076(1074:24-1076:1); Appx12766-12768. Polygroup admitted learning of the '186 patent's application shortly after it published in March 2012, and of the '186 patent within days of issuance in June 2013. Appx1740-1743(740:8-743:25); Appx2076(1076:19-21). After the '186 patent issued, Willis Electric immediately placed the patent number on One Plug

Tree trunks and boxes and on its company website. Appx1528-1530(528:21-530:25); Appx12692; Appx12694.

Polygroup's lead engineer for Quick Set trees expressed concern that they infringed Willis Electric's patents, but Polygroup avoided written communications on the subject to avoid creating discoverable evidence. Appx1956-1957(956:4-957:12); *see* Appx1724(724:10-17). Shortly after the '186 patent issued, Polygroup attempted to design around Willis Electric's patents. Appx1744-1745(744:10-745:8); Appx15223. Polygroup's attempted redesign "move[d] the connectors from the inside" of the trunk sections to the outside for the express purpose of "avoid[ing] collision with a competitor's patent." Appx12703-12705; Appx1405(405:1-14). Polygroup's executives chose not to sell the redesign, as it was "bulky," "cost[ly]," and inferior. Appx1959(959:13-21); Appx15223.

Willis Electric notified Polygroup of its infringement in July 2014 and asked Polygroup to stop selling infringing trees; Polygroup did not respond. Appx1202-1204(202:22-204:18); Appx1718-1721(718:1-721:4); Appx1746(746:5-11); Appx2814(1814:10-17); Appx12708-12765. Willis Electric filed this lawsuit in August 2015, asserting infringement of six patents. Appx46-47; Appx4000. Polygroup continued to sell infringing Quick Set trees until 2019, when it finally changed the Quick Set design at its counsel's suggestion. Appx1960-1963(960:11-963:4); Appx15221; Appx15223; Appx15246; Appx1747(747:12-14).

### E. IPR Proceedings

Polygroup filed two IPR petitions in 2014 after Willis Electric notified Polygroup of its infringement, and then filed fourteen more petitions in 2016 after Willis Electric filed this lawsuit. Appx15095; Appx15134-15141; Appx1210-1211(210:2-211:11). Four petitions—three of which were instituted and consolidated—challenged the '186 patent. Appx2396-2397(1396:19-1397:3). The district court stayed this action pending IPRs. Appx47.

In the IPRs involving the '186 patent, Polygroup relied on combinations that included U.S. Patent No. 4,020,201 ("Miller") and Otto. Appx2397(1397:4-15); *Polygroup*, 759 F. App'x at 937-938. Like the Loomis patent, Miller "disclose[d] an artificial tree with hollow trunk members that house electrical wiring for a light system." 759 F. App'x at 937-938. "Miller use[d] a traditional plug and socket electrical connector within its hollow trunk to form an electrical connection between light strings." *Id*. at 938.

Polygroup referenced the Loomis patent in its petitions, but determined that there were "much better art" alternatives and thus did not use it as the primary reference. Appx1764-1767(764:1-767:6); Appx12834. Polygroup also submitted a declaration from Jason Loomis, the sole inventor of the Loomis patent and a longstanding paid consultant to Polygroup, stating that the Loomis-GKI Tree—which Polygroup ultimately asserted at trial in this case—"embod[ies] th[e]

technology (of the [Loomis] Patent)." Appx15126-15129(¶¶12, 15); Appx1848-1849(848:25-849:12); Appx1851(851:1-10); Appx2397(1397:4-15).[3]

In a first final written decision, the Board upheld all challenged claims of the '186 patent, including because a skilled artisan would not have been motivated to combine the prior art references to produce Willis Electric's patented invention. The Board also found "a remarkable amount of [secondary considerations] evidence suggesting the non-obviousness of the claimed invention" and found a nexus between that evidence and the claimed invention. Appx15044-15061. This Court affirmed-in-part, vacated-in-part, and reversed-in-part, but as relevant here, it affirmed the Board's finding that claim 15 was not unpatentable. *Polygroup*, 759 F. App'x at 936, 944; Appx1211(211:12-18). In particular, the Court concluded that the Board's finding of a lack of motivation to combine was supported by substantial evidence. 759 F. App'x at 936, 942.

For the remaining challenged claims of the '186 patent—including claim 10—the Court determined that the Board erred by not considering Polygroup's argument that Miller alone taught every claim element. *Polygroup*, 759 F. App'x at 942-943.

---

[3] When Polygroup later challenged Willis Electric's proposed substitute claims for the '186 patent over the Loomis patent, the Board rejected Polygroup's argument. Appx15176-15179. Polygroup did not appeal that decision.

The Court vacated and remanded the Board's obviousness determinations for those claims. *Id.* at 943.

On remand, the Board found several claims unpatentable in view of Miller alone, but upheld the patentability of other claims, including claim 10. *Polygroup*, 2022 WL 1183332, at *1-2. The Board reached this conclusion by holding that claim 10 required that the "mechanical and electrical connection" are provided "in a single step (*e.g.*, when the mechanical connection is made, an electrical connection is made)." *Id.* at *4.

Polygroup appealed again, and a divided panel of this Court disagreed with the Board's construction of claim 10. *Polygroup*, 2022 WL 1183332, at *5. Applying the BRI analysis applicable in IPRs filed before November 13, 2018, the panel majority construed claim 10 "to permit the mechanical and electrical connections be made ***independently***"—*i.e.*, by connecting the trunk portions mechanically in a first step, and separately making the electrical connection in a second step. *Id.* at *4-5. Under that construction, the panel majority concluded that Miller—which disclosed connecting standard NEMA plugs separately from mechanically connecting the trunk portions—taught claim 10. *Id.* at *2-3, *5; Appx15165. The panel majority did not consider, much less decide, whether Miller or any other reference invalidated claim 10 under the Board's construction, which required that the electrical and mechanical connections be made in a single step.

Judge Stoll concurred-in-part and dissented-in-part. Judge Stoll would have affirmed the Board's construction of claim 10 (and other claims), because "the plain language of those claims … requires simultaneous electrical and mechanical connection." *Polygroup*, 2022 WL 1183332, at *6. Under that construction, Judge Stoll would have affirmed the Board's finding of patentability of claim 10, among others. *Id.*

### F. District Court Proceedings

#### 1. Claim construction

The district court construed claim 15 under the *Phillips* standard, as opposed to the BRI standard applied in the IPRs. Appx62-63; Appx4144 (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc)). Because claim 15 depends from claim 10, the court was required to construe disputed limitations of claim 10 as well.

The court construed the final limitation of claim 10, which recites: "the electrical connection being made independent of the rotational orientation of the first trunk portion relative the second trunk portion about the common vertical axis," as "an electrical connection that can be made at any available arrangement of the first tree/trunk portion relative to the second tree/trunk portion about a common vertical axis between the tree-trunk portions." Appx4150-4155. The court determined that "an electrical connection can be made 'independent of' the rotational orientation of

the trunk portions if, regardless of which of multiple rotational orientations is used to mechanically connect the tree trunk portions, an electrical connection is made." Appx63; Appx4153. Thus, unlike the BRI construction applied in the IPRs, the district court construed this limitation to "require[] an electrical connection and a mechanical connection to occur ***in a single step***." Appx63. Polygroup has not appealed this construction.

The court construed claim 15's added requirement that the trunk connectors of the first and second tree portions form "coaxial trunk connectors" to require "connectors capable of making an electrical connection between trunk sections and that include a set of electrical contacts that permit the electrical connection to be made about a common vertical axis of the trunk sections." Appx4155-4159. Polygroup has not appealed this construction either.

**2. *Daubert***

Polygroup moved to exclude the reasonable-royalty opinions of Willis Electric's damages expert Michele Riley. Appx58; Appx64-67. The court denied Polygroup's motion, finding that Ms. Riley followed established methodologies for determining a reasonable royalty based on the patented invention's incremental value using independent quantitative approaches to determine a reasonable royalty range and a qualitative approach to arrive at a reasonable royalty rate using the *Georgia-Pacific* factors. Appx66-67. The court determined that Polygroup's

disagreement with Ms. Riley's analysis presented factual issues that "can be addressed through cross-examination and the presentation of contrary evidence." Appx67.

### 3. Trial

To streamline the case, Willis Electric narrowed the asserted patents and claims to only claim 15 of the '186 patent, which is directed to the core fundamental invention embodied by the One Plug Tree. Appx4626; *supra* pp. 10-11. The district court held an eight-day jury trial on infringement, willfulness, obviousness, and damages. Appx160-161; Appx197-202; Appx289-292. The verdict of willful infringement is unchallenged on appeal.

Polygroup's primary obviousness reference was the Loomis-GKI Tree, a commercial embodiment of the Loomis patent that the Patent Office considered during prosecution, reexamination, and IPRs of Willis Electric's '186 patent. Appx46 ("GKI Tree" "embod[ies] the technology described in the Loomis Patent"); Appx2371(1371:4-7); Appx2619-2621(1619:4-1621:13); Appx15126-15129(¶¶12, 15). Mr. Loomis designed the Loomis-GKI Tree for, and licensed the Loomis patent to, the GKI/Bethlehem Lighting Company. Appx46; Appx1780-1781(780:18-781:21); Appx15123-15125(¶¶5, 9-10); Appx1839(839:7-13).

The Loomis-GKI Tree's inventive feature was a "notch-and-dimple" alignment feature for connecting the trunk sections. Appx2633-2634(1633:8-

1634:5); Appx2635-2636(1635:13-1636:18). The Loomis patent's Figure 2 shows notch 50 and dimple 38, as well as the two-prong NEMA-style plug 54 and socket 42 connectors:



FIG. 2

Appx4791(Fig.2); Appx2635(1635:13-24). When dimple 38 (*i.e.*, "detent") of one trunk section is "align[ed] with and slidably engage[d] with" notch 50 of the other trunk section, "the plug prongs" of plug 54 should "slide straight into" socket 42. Appx4794(6:31-50); *see* Appx2402(1402:1-3). If the notch and dimple are not "properly aligned," the plug and socket cannot be connected. Appx4794(6:44-50); Appx4793(3:57-63).

The Loomis-GKI Tree (shown below) embodies these features, with the top trunk section having the notch and the bottom trunk section having the dimple.

Appx1227(227:8-12); Appx1814(814:8-13). As the Loomis patent stated, the Loomis-GKI Tree required that the top trunk section's notch line up with the bottom trunk section's dimple to make an electrical connection. Appx1563-1564(563:22-564:17); Appx1797(797:14-24). If the notch and dimple were not lined up, the plug's prongs could not connect with the socket, so no electrical connection could be made. Appx2325-2326(1325:23-1326:13).



DX733



DX429

Appx4833 (showing Appx4771; Appx4767).

The Loomis-GKI Tree used standard plug-and-socket connectors like those shown in the Loomis patent. Appx46; Appx1796-1797(796:14-797:13). In the right-hand figures below, the plug is shown inside the top trunk section and the socket inside the bottom trunk section.




Appx4832-4834 (showing Appx4768; Appx4766; Appx4765; Appx5009); *see* Appx5007; Appx4772.

Both parties' experts agreed that the Loomis-GKI Tree did not meet all of claim 15's limitations. Appx2311-2312(1311:15-1312:17); Appx2389-2390(1389:23-1390:1); Appx2408-2409(1408:18-1409:13); Appx2633(1633:2-7); Appx4937. In particular, the Loomis-GKI Tree was "designed specifically to be a fixed orientation design," in which the trunk sections could "only couple and come down in one position" and thus "had no connection being made independent [of] rotation[]," as claim 10's last limitation requires. Appx2632(1632:9-17); Appx2633(1633:2-22); *see* Appx2355(1355:20-24); Appx1396-1397(396:22-397:8).

Polygroup's expert, Dr. John Martens, proposed modifying the Loomis-GKI Tree by substituting coaxial connectors for its plug-and-socket connector. He tried to find coaxial connectors in either a skilled artisan's knowledge, or alternatively Otto. Appx2312-2313(1312:18-1313:9); Appx2326(1326:15-24); Appx2328-

2329(1328:9-1329:14). Otto, a 1985 German patent, is directed to an artificial tree with old-fashioned electric candle lights on the branches. Appx4734; Appx2304-2306(1304:13-1306:18). Otto disclosed a coaxial design for plugging branches into the tree for powering the branches' candle lights. Appx2304-2305(1304:24-1305:10); Appx2634-2635(1634:11-1635:12); Appx4938; Appx4736(3:19-29). The Patent Office had considered both Otto and the Loomis patent. *Supra* pp. 9, 12-13, 16-17; Appx2629-2630(1629:7-1630:2); Appx2378-2379(1378:22-1379:5).

Willis Electric's expert, Dr. James Dickens, explained that a skilled artisan would not have been motivated to modify the Loomis-GKI Tree with coaxial connectors, and provided unrebutted testimony that the prior art taught away from the modification. Appx2635-2637(1635:13-1637:12). Notably, the proposed modification required removing the Loomis-GKI Tree's inventive notch-and-dimple alignment feature and creating new moldings. Appx2635-2636(1635:13-1636:18); Appx4939. Polygroup did not challenge the reliability of Dr. Dickens's motivation to combine opinions in a *Daubert* motion or through trial objection.

The jury heard evidence regarding objective indicia, including commercial success and industry praise for the One Plug Tree and copying by others. *E.g.*, Appx1524-1527(524:7-527:16); Appx2637-2643(1637:13-1643:20); Appx4943-4944; *supra* pp. 8-9, 13-15. Dr. Dickens testified that the One Plug Tree embodies claim 15's invention, which Dr. Martens did not dispute. *Infra* p. 46. Dr. Dickens

and several other witnesses explained that the coaxial trunk connector design allows for ease-of-assembly and convenience benefits. *Infra* pp. 46-47.

The jury also heard Ms. Riley's testimony that Polygroup would pay Willis Electric a reasonable royalty of $53,118,465 based on a per-unit rate of $5 per infringing tree. Ms. Riley arrived at that rate through: (1) an "income approach" in which she "isolat[ed] the profit premium that Willis Electric and Polygroup obtained for artificial trees with the patented features in comparison to similar trees without the patented features"; (2) a "market approach" in which she relied on a comparable license that included the '186 patent and other comparable licenses that included the technically comparable Loomis patent; and (3) "extensive consider[ation] [of] the *Georgia-Pacific* factors." Appx66-67; *see* Appx1643-1669(643:11-669:12). By contrast, Polygroup's damages case was built around a sham agreement entered into after this litigation began, under which Polygroup paid another company to license a patent that Polygroup already owned. *See* Appx2159(1159:10-23); Appx2540(1540:12-1541:4).[4]

[4] Specifically, Polygroup gratuitously agreed to pay a minimal ongoing royalty to Mr. Loomis's company for a patent that Polygroup already owned and that Mr. Loomis's company had already exclusively licensed to Boston Warehouse for a significantly higher royalty. Appx2159(1159:10-23); Appx2540-2541(1540:12-1541:4).

The jury was instructed on obviousness, including motivation to combine, teaching away, and secondary considerations, and on damages, including the apportionment requirement. Appx176-189. Polygroup has not asserted any legal error in the jury instructions.

The jury unanimously found that Polygroup willfully infringed claim 15, that Polygroup did not prove claim 15 obvious, and that Willis Electric should recover $42,494,772, which was less than the royalty identified by Ms. Riley. Appx197-202. The district court increased the award to include prejudgment interest (which Polygroup has not challenged), Appx3, but declined to enhance damages, Appx4658.

#### 4. Post-judgment motions

The district court denied Polygroup's motions for JMOL or a new trial. Appx2. The district court concluded that substantial evidence supported the jury's non-obviousness verdict and damages award. Appx31-32.

The district court determined the "key issue" for obviousness was whether a skilled artisan would have been motivated to modify the Loomis-GKI tree with coaxial connectors. Appx5. The court found "that substantial evidence support[ed] the jury's presumed factual finding that a skilled artisan would not have been motivated to combine the prior art in the manner claimed." Appx6.[5]

---

[5] The district court did not rely on objective indicia in denying JMOL. Appx9.

The court found that Dr. Dickens's testimony was "more persuasive" on this "key issue." Appx5. "The jury could reasonably have credited Dr. Dickens's explanation of why adapting [the Loomis-GKI Tree] to use coaxial connectors would not have been as simple or obvious as Polygroup suggests." Appx5-6. The court referenced Dr. Dickens's testimony regarding the lack of motivation to eliminate the Loomis-GKI Tree's alignment feature and redesign its connector housings to replace the Loomis-GKI Tree's plug-and-socket connectors with coaxial connectors. Appx5. The court also noted that Polygroup "offer[ed] little concrete evidence to support" its "conclusory argument" that the modification would have been obvious. Appx5-6.

The district court also denied Polygroup's motion for JMOL or a new trial on damages. Appx31. The court determined that "Ms. Riley's income- and market-based approaches reflect[ed] a serious effort to apportion the value of the patented technology" and "properly focused on the profits attributable to the One Plug feature that embodies the patented coaxial connector technology." Appx23-24.

Polygroup also requested a new trial based on certain statements of Willis Electric's counsel. Appx28-29. The district court determined that Polygroup did not object to these arguments at trial, such that Polygroup "waive[d] such an objection." Appx29. Polygroup's failure to object or seek a curative instruction suggested it "did not view the comments as sufficiently prejudicial in context to

warrant a new trial." *Id*. Further, the court had "instructed the jury at the outset of trial that counsel's statements were not evidence and again in the final instructions that the jury must not be influenced by any improper considerations or biases." Appx29-30. Thus, those comments could not have "ultimately affect[ed] the validity of the verdict." Appx29-31. Although Polygroup gestures (at 18, 26-27, 31) toward its waived objections, it offers no developed argument on them.[6]

## SUMMARY OF THE ARGUMENT

1. Polygroup wrongly attempts to confine claim 15's advance to the coaxial trunk connectors, while ignoring the innovative feature of making a mechanical and electrical connection ***at the same time regardless of the trunk sections' rotational orientation***. That innovation is plain from a comparison of this Court's prior decision, which held independent claim 10 unpatentable under a BRI construction covering implementations where the mechanical and electrical connections were ***separate***, and the district court's unappealed *Phillips* construction, which requires that the mechanical and electrical connections be made ***simultaneously*** and regardless of rotational orientation. Accordingly, the jury was correct to assess claim 15's non-obviousness and value based on the inventive ability

[6] Contrary to Polygroup's assertion (at 26), Willis Electric did not close the trial with: "Don't let them invade U.S. patent law." Although the trial transcript was not corrected, Willis Electric's counsel said "evade," as the context makes clear. *See* Appx2824(1824:20-21). Had Polygroup objected, the statement could have been clarified.

to make mechanical and electrical connections together in one step, regardless of the trunk sections' rotational orientation.

2. Substantial evidence supports the jury's finding that Polygroup failed to prove obviousness by clear and convincing evidence—particularly given the evidence of lack of motivation to combine, teaching away, and objective indicia of non-obviousness. Dr. Dickens explained that Polygroup's proposed modification would require removing the inventive notch-and-dimple features from the Loomis-GKI Tree, removing the plug-and-socket connectors and replacing them with coaxial electrical contact sets, and removing and redesigning the moldings to create suitably-sized assemblies for the new trunk connectors. Uncontroverted evidence also showed that the prior art taught away from Polygroup's proposed modification, which would have required removing the Loomis-GKI Tree's inventive feature. Further, Dr. Dickens, Ms. Riley, and several fact witnesses testified to the commercial success, copying and industry adoption, industry praise, and licensing of claim 15's invention, which the One Plug Tree embodied.

Polygroup wrongly argues that an industry trend toward LED lights provided the motivation for using coaxial connectors and wrongly accuses the district court's decision denying JMOL of adopting a "bodily incorporation" theory. But the record demonstrated there were "nearly an infinite number" of DC-type plugs for LED lighting, and the district court did not adopt a "bodily incorporation" theory—and it

would not matter anyway, because Willis Electric did not argue bodily incorporation. Substantial evidence supports the jury's verdict on the bases presented to it.

3. The district court did not abuse its discretion by allowing Ms. Riley to testify to her damages theory. Ms. Riley followed established methodologies for determining a reasonable royalty based on claim 15's incremental value using independent quantitative approaches, as well as a qualitative approach—which Polygroup does not challenge on appeal—to arrive at a reasonable royalty rate using the *Georgia-Pacific* factors. Many of Polygroup's challenges to Ms. Riley's methodology were not presented in its pretrial *Daubert* motion or through any trial objection, and the district court thus could not have abused its discretion by allowing Ms. Riley's testimony and refusing to grant a new trial after the fact.

Moreover, Ms. Riley's "income approach" and "market approach" each properly apportioned to the incremental value attributable to the patented invention. For her income approach, Ms. Riley engaged in a detailed analysis isolating the value of the patented invention in Willis Electric's One Plug Trees and Polygroup's Quick Set trees by comparing profit margins (actual and expected) for trees with and without the patented feature. For her market approach, Ms. Riley relied on a comparable 2015 license between Willis Electric and H.S. Craft covering the '186 patent and other comparable licenses that covered the Loomis patent, which even

Polygroup's expert acknowledged was technologically comparable to the '186 patent.

Polygroup has shown no basis for disturbing the well-supported judgment in this long-running case. This Court should affirm.

## ARGUMENT

### I. STANDARD OF REVIEW

This Court reviews a denial of JMOL and new trial under the law of the regional circuit. *ABT Sys., LLC v. Emerson Elec. Co.*, 797 F.3d 1350, 1354 (Fed. Cir. 2015). The Eighth Circuit reviews a JMOL ruling de novo. *Id.* JMOL "is only appropriate where the evidence adduced at trial is entirely insufficient to support the verdict." *Schooley v. Orkin Extermination, Co.*, 502 F.3d 759, 764 (8th Cir. 2007).

On a motion for JMOL following a general verdict on obviousness, the Court "presume[s] that the jury resolved the underlying factual disputes in favor of the verdict [] and leave[s] those presumed findings undisturbed if they are supported by substantial evidence." *Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1356-1357 (Fed. Cir. 2012). Motivation to combine and teaching away are "factual determinations to which deference must be given." *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1359-1361 (Fed. Cir. 2017); *Spectralytics, Inc. v. Cordis Corp.*, 649 F.3d 1336, 1343 (Fed. Cir. 2011). The Court

examines the legal conclusion on obviousness de novo "to see whether it is correct in light of the presumed jury fact findings." *Kinetic Concepts*, 688 F.3d at 1357.

"The Eighth Circuit reviews a denial of a motion for a new trial on damages for abuse of discretion." *Provisur Techs., Inc. v. Weber, Inc.*, 119 F.4th 948, 956 (Fed. Cir. 2024). "Evidentiary rulings, including the admissibility of damages expert evidence, are also reviewed for abuse of discretion." *Id.*

## II. POLYGROUP'S OBVIOUSNESS AND DAMAGES ARGUMENTS DISREGARD CLAIM 15'S INNOVATIVE ADVANCE.

Polygroup's obviousness and damages arguments contain the same core error: Polygroup wrongly attempts to confine claim 15's innovative advance by trying to keep claim 10's elements out of the Court's view. *See, e.g.*, Br. 1-3, 29-30, 38, 45-46, 50-51, 56, 63. But "the scope of each individual claim must be examined on its own merits, apart from that of other claims, even in the same patent." *Lemelson v. TRW, Inc.*, 760 F.2d 1254, 1267 (Fed. Cir. 1985); *see* 35 U.S.C. § 282(a) ("Each claim of a patent … shall be presumed valid independently of the validity of other claims; dependent … claims shall be presumed valid even though dependent upon an invalid claim.").

Although this Court held claim 10 unpatentable, that unpatentability determination rested on a BRI construction that permitted "the mechanical and electrical connections [to] be made independently"—*i.e.*, in separate steps. *Polygroup*, 2022 WL 1183332, at *5; *supra* pp. 18-19. By contrast, the district court

"applied *Phillips* when construing the disputed claim terms" and determined that "Willis Electric's patented invention requires an electrical connection and a mechanical connection to occur in a single step." Appx63; *supra* pp. 19-20. This Court did not hold that the prior art taught the "independent of the rotational orientation" limitation under the district court's narrower construction. Claim 15's advance over the prior art was thus a tree requiring the use of coaxial trunk connectors, in which mechanical and electrical connection occur ***at the same time regardless of the trunk sections' rotational orientation***.

To be clear, this Court has never suggested that the prior art taught the "independent of the rotational orientation" limitation under the district court's construction requiring mechanical and electrical connections to be made simultaneously. Indeed, this Court could not have so found in the IPR appeal, as Miller plainly did not disclose such an implementation. *Supra* p. 18. Thus, contrary to Polygroup's assertion (at 50), no court has found that "the 'unpatented features'" included "***an electrical connection between trunk portions is made 'independent of the rotational orientation***,'" as claim 10's last limitation was construed by the district court. *Supra* pp. 19-20.[7]

---

[7] The Board and Judge Stoll in dissent both found that, if construed to require that mechanical and electrical connections be made simultaneously in one step, claim 10 would not be invalid. *Polygroup*, 2022 WL 1183332, at *5-6 (Stoll, J.,

This Court should reject Polygroup's attempt to collaterally estop Willis Electric with a ruling this Court has never made, namely Polygroup's assumption that the prior art disclosed a one-step rotationally-independent assembly, as construed by the district court under *Phillips*.

## III. The District Court Correctly Denied Polygroup's Motion For JMOL Of Obviousness

### A. Substantial Evidence Of Lack Of Motivation To Combine And Of Teaching Away Supports The Jury's Non-obviousness Verdict.

Polygroup's obviousness case relied on a combination of the Loomis-GKI Tree and Otto or a skilled artisan's knowledge. The jury was entitled to find the Loomis-GKI Tree does not meet claim 10's "independent of the rotational orientation" limitation, because it required one particular rotational orientation for "both the mechanical connection and the electrical connection" to be made; other orientations where the electrical prongs did not align with the socket would not make an electrical connection. Appx2311-2312(1311:15-1312:17); Appx2408-2409(1408:18-1409:13); *supra* pp. 22-24. As Dr. Dickens explained, the Loomis-GKI Tree's plug-and-socket connectors also did not meet claim 15's requirement for

concurring-in-part and dissenting-in-part); Appx15165. The panel majority had no occasion to address this issue.

coaxial trunk connectors. Appx2632-2634(1632:9-1634:10); Appx2696(1696:12-16); Appx2705-2706(1705:22-1706:5); Appx4937; *supra* pp. 20, 22-24.[8]

As the district court found, Dr. Dickens "cogently explained" why Polygroup's proposed modification would not have been obvious due to a lack of motivation to combine and the prior art's teaching away. Appx5-8. The court correctly determined that "substantial evidence support[ed] the jury's presumed factual findings" based on Dr. Dickens's testimony. *See* Appx6; *see also Teleflex, Inc., v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1334 (Fed. Cir. 2002) (expert testimony regarding "lack of motivation to combine … constitutes substantial evidence of nonobviousness"); *Abbott Labs. v. Syntron Bioresearch, Inc.*, 334 F.3d 1343, 1357 (Fed. Cir. 2003) (similar); *Gambro Lundia AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1579 (Fed. Cir. 1997) ("The absence of such a [motivation] to combine is dispositive in an obviousness determination."); *Winner Int'l Royalty Corp. v. Wang*,

[8] Polygroup asserts in a footnote that Dr. Dickens "admitted" the Loomis-GKI Tree disclosed claim 10's "independent of the rotational orientation" limitation, Br. 38 n.3 (citing Appx2689-2690(1689:11-1690:1), but that is incorrect. The district court construed that limitation to require that the electrical connection can be made "regardless of which of ***multiple rotational orientations*** is used to mechanically connect the tree trunk portions." *Supra* pp. 19-20. In the cited testimony, Dr. Dickens explained that the Loomis-GKI Tree, having a fixed orientation design, only has "one available orientation," Appx2689-2690(1689:11-1690:1), and thus cannot meet the "independent of the rotational orientation" limitation. Appx2632(1632:9-17); Appx2355(1355:20-24). Polygroup's expert Dr. Martens agreed that the Loomis-GKI Tree did not disclose that limitation. Appx2409(1409:4-10).

202 F.3d 1340, 1349-1350 (Fed. Cir. 2000) (evidence of teaching away "alone can defeat [an] obviousness claim").

***No motivation to combine.*** Dr. Dickens explained why there was a lack of motivation to combine and why Polygroup's attempt to reconstruct the patented invention depended on impermissible hindsight. Appx2630-2632(1630:24-1632:8). A skilled artisan would have needed numerous steps to design and manufacture a coaxial trunk connector that would work for the Loomis-GKI Tree. Appx2635-2637(1635:13-1637:12); Appx4939. Polygroup's proposed combination would have required removing the inventive notch-and-dimple features and the plug-and-socket connectors from the Loomis-GKI Tree. Appx2635(1635:13-24); Appx4939. The artisan would have also needed to remove the molding for holding the plug-and-socket connectors within the trunk sections and redesign the moldings for the new connectors. Appx2635(1635:13-24); Appx4939; *see* Appx1522-1523(522:17-523:9).[9] The Loomis-GKI Tree's plug-and-socket connectors would need to be replaced with coaxial electrical contact sets outfitted with custom-made molded assembly parts specially designed and fitted to trunk portions and wiring assemblies

[9] Contrary to Polygroup's assertion (at 43-44), Dr. Dickens did not agree that a skilled artisan could have readily redesigned the Loomis-GKI Tree's molding. Dr. Dickens stated only as a general matter, "[m]olding processes have been around for a long time" and "available to companies," and that 3-D printing "was in the early stages" but not "readily available." Appx2655(1655:6-18).

to create coaxial trunk connectors. Appx2635(1635:13-24); Appx4939; *see* Appx1522-1523(522:17-523:9). Dr. Dickens thus explained why Dr. Martens's obviousness analysis was synonymous with "trying to fill holes" in the prior art rather than providing "a logical reason why" the prior art would be combined. Appx2636-2637(1636:21-1637:12). Dr. Martens had used the '186 patent's disclosure "as a roadmap to piece together various elements" of the prior art to "lead[] to a conclusion of obviousness," which is impermissible hindsight. *Merck Sharp & Dohme B.V. v. Warner Chilcott Co., LLC*, 711 F. App'x 633, 636 (Fed. Cir. 2017).

As the district court determined, "[t]he jury could reasonably have credited Dr. Dickens's explanation of why" the proposed modification would not have been a simple matter of replacing the Loomis-GKI Tree's plug-and-socket connectors with coaxial connectors, as Polygroup suggested. Appx5-6. Instead, as noted above (pp. 37-38), the modification required removing the inventive notch-and-dimple features, removing the plug-and-socket connectors and replacing them with coaxial electrical contact sets, and removing and redesigning the molding to create suitably-sized assemblies for coaxial trunk connectors within the trunk sections. The district court also correctly determined that Polygroup and Dr. Martens failed to address the "specific design challenges posed by" those modifications. Appx5-6. Dr. Dickens's testimony "concerning lack of motivation to combine and the use of hindsight by

[Dr. Martens]," thus "constitutes substantial evidence of nonobviousness." *Teleflex*, 299 F.3d at 1334.

***Teaching away.*** Dr. Dickens also testified that the Loomis-GKI Tree taught away from Polygroup's proposed modification. Appx2631(1631:22-23); Appx2635-2637(1635:13-1637:6). Teaching away and lack of motivation to combine are "doctrinally distinct" and "two discrete bases" for supporting non-obviousness. *Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*, 853 F.3d 1370, 1379 (Fed. Cir. 2017); *see Apple Inc. v. Samsung Elecs. Co.*, 839 F.3d 1034, 1051 n.15 (Fed. Cir. 2016).

The "inventive" feature of the Loomis-GKI Tree was its notch-and-dimple feature, which provided a "unique way" for providing fixed orientation that was "easier and safer" than then-available designs. Appx2633-2634(1633:8-1634:5); Appx2635-2636(1635:13-1636:18). As Dr. Dickens explained, the proposed modification would have removed that very feature and "destroy[ed] the basic objective of" the Loomis-GKI Tree. *See* Appx2633-2634(1633:8-1634:5); Appx2635-2636(1635:13-1636:18); Appx4939; *Trivascular, Inc. v. Samuels*, 812 F.3d 1056, 1068-1069 (Fed. Cir. 2016) (prior art reference "taught away" from removing feature that was "primary objective of the reference"); *Plas-Pak Indus. v. Sulzer Mixpac AG*, 600 F. App'x 755, 759 (Fed. Cir. 2015) (change to reference's "principle of operation is unlikely to motivate a person of ordinary skill to pursue"

modification). Dr. Martens did not controvert Dr. Dickens's teaching-away testimony, and Polygroup's appeal brief does not address it. Polygroup has thus forfeited any challenge on this issue. *See SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2006) ("[A]rguments not raised in the opening brief are waived.").

* * *

The jury was additionally entitled to consider the fact that the Loomis-GKI Tree was cumulative of the Loomis patent that the Patent Office considered numerous times, and that the Patent Office also previously considered Otto. *Supra* pp. 9, 12-13, 16-17, 21; *see* Appx15126-15131(¶¶12, 15, 17); Appx46 ("GKI Tree" "embod[ies] the technology described in the Loomis Patent"); Appx2400-2401(1400:23-1401:25); Appx2619-2620(1619:11-1621:13); Appx2628(1628:5-18); Appx4932. Although Polygroup insists that the Loomis-GKI Tree is not cumulative of the Loomis patent (Br. 49), it does so only by ignoring details that are clearly disclosed in the Loomis patent—as Polygroup's expert admitted—including a NEMA two-prong plug, branches, and lighting. Appx2402-2404(1402:3-1404:3); Appx4790-4791(Figs.1-2); Appx4794(6:1-10, 6:44-50); *see* Appx2620-2621(1620:16-1621:13); Appx2626-2628(1626:23-1628:18).

Therefore, as the district court instructed the jury (in an instruction Polygroup does not appeal), because the prior art Polygroup presented was "not materially

different" from what the Patent Office previously considered, Polygroup was required to prove obviousness by clear and convincing evidence without the jury weighing the prior art "more heavily." *See* Appx181; *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 111 (2011). Here, the district court correctly determined that substantial evidence supported the jury's finding that Polygroup did not meet its burden.

### B. Polygroup's Motivation To Combine Arguments Fail.

Polygroup raises three arguments regarding motivation to combine, but none suffices to overturn the jury's verdict.

***First***, Polygroup attempts (at 37-38) to minimize claim 15's invention based on this Court's prior unpatentability determination under the BRI of claim 10, which permitted the mechanical and electrical connections to be made in separate steps. *Polygroup*, 2022 WL 1183332, at *5. As explained above (pp. 33-35), this Court did not decide that claim 10 would have been unpatentable under the district court's *Phillips* construction. Therefore, contrary to Polygroup's arguments, claim 15's advance under the district court's unappealed construction is a tree requiring use of coaxial trunk connectors, in which mechanical and electrical connection occur in one step regardless of the trunk sections' rotational orientation.

***Second***, Polygroup argues (at 32, 39-40) that its proposed modification to the Loomis-GKI Tree was "obvious to try" and would have been "a well-known and

predictable substitution," given Polygroup's assertion that the industry was moving toward LED lights instead of incandescent lights. But as Dr. Dickens testified, a skilled artisan could use "nearly an infinite number of" DC-type plugs for LED lighting. Appx2672(1672:7-12); Appx2667-2668(1667:25-1668:7). Thus, the jury had ample basis to conclude that coaxial trunk connectors would not have been "obvious to try" with LED lighting, especially when paired with Dr. Dickens's testimony that the prior art taught away from modifying the Loomis-GKI Tree to substitute a coaxial trunk connector that allowed for mechanical and electrical connection at the same time regardless of the trunk sections' rotational orientation. *Supra* pp. 39-40. The jury was free to credit Dr. Dickens's testimony over Dr. Martens's on this factual dispute. *See MobileMedia Ideas LLC v. Apple Inc.*, 780 F.3d 1159, 1168 (Fed. Cir. 2015) ("[T]he jury is permitted to make credibility determinations[.]").

The jury's crediting of Dr. Dickens's testimony is all the more reasonable because Dr. Martens provided only "conclusory" testimony on motivation to combine and no testimony at all on teaching away. Appx6; *see Arctic Cat Inc. v. Polaris Indus., Inc.*, 795 F. App'x 827, 833-834 (Fed. Cir. 2019) (substantial evidence supported finding of no motivation to combine where challenger "failed to explain how the drawbacks of the modifications would be overcome"). As the district court observed, Dr. Martens failed to "address the impact of removing the

Loomis-GKI tree alignment's feature or provide any detailed explanation of how the connector housings could have been modified." Appx6. The jury was thus "not required to accept" Polygroup's and Dr. Martens's "conclusory argument[s]" and "less detailed assertions," "particularly in light of Dr. Dickens' more specific [and more persuasive] testimony to the contrary." Appx5-6; Appx8.

***Third***, Polygroup attacks a straw man by mischaracterizing (at 2, 28, 32, 41-44) the district court's denial of JMOL as applying the wrong legal standard. Contrary to Polygroup's arguments, the district court did not invoke "bodily incorporation," nor did Dr. Dickens take such a position with respect to the prior art references. As discussed above (pp. 36-39), Dr. Dickens explained why a skilled artisan would not have been motivated to modify Loomis-GKI Trees to use coaxial trunk connectors permitting mechanical and electrical connection at the same time regardless of the trunk sections' rotational orientation and that the Loomis-GKI Tree taught away from Polygroup's proposed modification. Polygroup's reliance on this Court's decision regarding a different patent is thus misplaced because Dr. Dickens and the district court applied the same obviousness standard that this Court applied. *See Polygroup Ltd. MCO v. Willis Elec. Co.*, 780 F. App'x 880, 883-884 (Fed. Cir. 2019). Indeed, Polygroup never challenged Dr. Dickens's opinions in a *Daubert* motion or argued in its post-trial motions that Dr. Dickens somehow applied an improper "bodily incorporation" analysis. *Supra* p. 25.

Polygroup points to the district court's summary of Dr. Dickens's testimony that "adapting the GKI tree's specific design to use coaxial connectors would not have been as straightforward as Polygroup suggests, due to the need to eliminate the existing alignment feature and extensively redesign the connector housings." Br. 40 (quoting Appx8); *see* Br. 42, 44 (quoting Appx6). But the court was simply explaining that Polygroup's proposed modification relied on impermissible hindsight, because modifying the Loomis-GKI Tree would have "introduce[d] additional complexity and inefficiencies"—such as removing the inventive notch-and-dimple features and redesigning the moldings—that would have dissuaded a skilled artisan. *Henny Penny Corp. v. Frymaster LLC*, 938 F.3d 1324, 1329-1332 (Fed. Cir. 2019); *supra* pp. 37-39.

Besides, this Court reviews "whether there was substantial evidence for the jury's findings, ***on the entirety of the record***," and is not limited to the evidence cited in the JMOL order. *Apple*, 839 F.3d at 1052. "This court must also consider all the evidence before the jury," because substantial evidence means "'such relevant evidence from ***the record taken as a whole*** as might be accepted by a reasonable mind as adequate to support the finding under review.'" *Princeton Biochemicals, Inc. v. Beckman Coulter, Inc.*, 411 F.3d 1332, 1336 (Fed. Cir. 2005). Polygroup does not challenge the correctness of the jury instructions. Appx176-177. Because "a 'jury is presumed to follow jury instructions,'" the Court therefore "must assume

the jury verdict rested on a proper theory" of obviousness. *Omega Patents, LLC v. CalAmp Corp*., 13 F.4th 1361, 1372 (Fed. Cir. 2021). Accordingly, the jury's verdict of non-obviousness should be upheld, because the jury was properly instructed on obviousness and entitled to credit the substantial evidence supporting the lack of motivation to combine and teaching away.

### C. Substantial Evidence Of Objective Indicia Of Non-obviousness Also Supports The Jury's Verdict

Substantial evidence of commercial success, industry praise, copying, and licensing—all specifically tied to claim 15's invention—also supports the verdict. Objective indicia "play an important role as a guard against the statutorily proscribed hindsight reasoning in the obviousness analysis." *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1328 (Fed. Cir. 2016).

Here, the general verdict means that the jury is presumed to have "found that the evidence was sufficient to establish" the objective indicia and nexus to the patented invention. *Apple*, 839 F.3d at 1053; *WBIP*, 829 F.3d at 1332; *Kinetic Concepts*, 688 F.3d at 1359-1360. Polygroup references the district court's statements regarding nexus and a supposedly "close case." Appx7-9. But in reviewing a JMOL order, this Court defers to the jury verdict, not to the district court's characterizations in its opinion. *See Spectralytics*, 649 F.3d at 1342 (Court "first presum[es] that the jury resolved the underlying factual disputes in favor of the verdict winner and leave[s] those presumed findings undisturbed if they are

supported by substantial evidence.”). “Close case[s]” are for juries to decide, and any perceived “closeness” aside, the jury’s presumed findings are amply supported, for at least three reasons.

***First***, the evidence was “sufficient to establish the presumption of nexus for the objective considerations at issue” because Willis Electric presented undisputed evidence that its One Plug Tree embodies claim 15’s patented invention. *WBIP*, 829 F.3d at 1330; *see* Appx1278-1280(278:21-279:5, 280:9-18); Appx1292-1297(292:17-297:8); Appx2638(1638:3-8).

***Second***, and in any event, Willis Electric’s evidence of commercial success, copying and industry adoption, industry praise, and licensing was specifically tied to the patented invention embodied by the One Plug Tree. Dr. Dickens and other witnesses demonstrated the nexus between the objective indicia evidence and the “coaxial [trunk connector] design” “that allows [for] [] rotation and … th[e] ability to connect at any orientation.” *E.g.*, Appx2641-2643(1641:20-1643:20); Appx4941. Dr. Dickens also explained that, due to claim 15’s “coaxial connector design,” the One Plug Tree “permits an electrical connection in multiple orientations,” *i.e.*, “independent of the rotational orientation,” without needing to “rotationally align” the trunk sections. Appx149(22:58); Appx1395-1396(395:7-396:8); Appx12948. This unique design allows for “[f]aster” and “easier tree assembly” compared to available “alternative designs.” Appx1395(395:7-22); Appx12948; *see*

Appx1411(411:9-13); Appx2230(1230:8-20) (One Plug Tree "offer[s] an extreme amount of convenience to the consumer" due to not having "to locate the female and the male plug"). Mr. Chen and his prosecution counsel confirmed the "important part" of the invention was the "coaxial connectors" placed "inside the tree trunk" that allowed for "join[ing] the sections without having to line anything up," which made the One Plug Tree "easier to put together." Appx1191(191:3-13); Appx1521-1522(521:14-522:6) (Mr. Chen chose "coaxial connection" design so that "build[ing] a tree" would "be super convenient [and easy] for the customer" due to not needing to "make alignment[s]"); *see* Appx1497(497:10-13).

***Commercial Success***. The One Plug Tree's commercial success was due to its ease-of-use resulting from the coaxial trunk connectors, which allowed consumers to assemble the tree in less time with less "wiring and connecting" work. Appx2238-2239(1238:11-1239:7) (buyer for artificial tree retailers testifying that One Plug Tree's technology "drove sales by making" tree assembly easier); Appx1498-1499(498:21-499:6) (Lowe's merchandise director testifying that One Plug Tree's ease-of-assembly "drives consumer demand" and "generate[s] sales"); Appx2641-2642(1641:20-1642:10). Polygroup's own consumer survey showed that consumers viewed the infringing Quick Set feature as attractive and were willing to pay significantly more for it. Appx2145-2146(1145:2-1146:17); Appx12829; Appx12802; Appx1661-1662(661:16-662:5).

Trees with the One Plug feature earned 20-30% higher profit margins than trees without it, which was "entirely attributable to … the One Plug feature." Appx2260-2261(1260:25-1261:14). One Plug Trees sold at higher prices than similar trees lacking coaxial trunk connectors, and One Plug Tree sales increased over time and replaced non-One Plug Tree sales, evidencing the patented invention's popularity and success. Appx1644(644:5-15); Appx1658-1659(658:21-659:7); Appx12833; Appx12979; Appx12988. Polygroup's Quick Set trees likewise outsold non-Quick Set trees. Appx1659(659:8-18); Appx12989.

***Copying and Industry Adoption.*** Numerous competitors adopted the One Plug Tree's coaxial trunk connector design. *Supra* pp. 8-9. Polygroup itself deliberately copied it and has not appealed the willful infringement finding. Appx1376-1377(376:19-377:3); Appx2642-2643(1642:11-1643:1).

***Industry Praise.*** Industry praise was tied to the One Plug Tree's ease-of-assembly resulting from the patented invention. The industry lauded the One Plug Tree's "ability to connect at any orientation" and "rotatab[ility] in any orientation using th[e] coaxial connector." Appx1524-1527(524:7-527:16); Appx2639-2640(1639:10-1640:24); Appx2642-2643(1642:1-1643:1); Appx4943. Retailers praised the One Plug Tree's ease-of-use and how consumers did not need to align the trunk sections, calling it a "game changer." *Supra* pp. 8-9.

***Licensing*.** The licensing evidence was also tied to the patented invention. Lowe's asked for exclusivity in selling the One Plug Tree technology. Appx1500(500:2-15); Appx1526(526:8-16). Botanex and H.S. Craft took licenses. Appx1534-1537(534:12-537:21); Appx1540-1541(540:9-541:6); Appx1653(653:2-12).

***Third***, contrary to Polygroup's argument (at 45), the evidence showed that One Plug Trees are coextensive with claim 15. Polygroup again insists (at 45-46) that "every aspect of claim 15 except coaxial trunk connectors[] has been conclusively held unpatentable over the prior art," but Polygroup again ignores that claim 15's advance was a tree in which mechanical and electrical connection occur in one step regardless of the trunk sections' rotational orientation, using coaxial trunk connectors. *Supra* pp. 33-35. No court, and certainly not this Court, has held that "electrical connection 'made independent of the rotational orientation'" was known in the prior art. Likewise, Polygroup selectively cites testimony (at 46) to assert that the objective evidence only relates to internal power—but ignores other testimony tying the objective evidence to claim 15's invention. *Supra* pp. 46-49; Appx2641-2643(1641:20-1643:20); Appx1395-1396(395:7-396:8).[10] Moreover,

---

[10] Even some of Polygroup's cited testimony ties the objective evidence to claim 15's invention. *E.g.*, Appx2640(1640:8-24) (industry praise for "how easy [One Plug Tree] was to set up and assemble"); Appx4943 (similar); Appx2642-

this Court has rejected the proposition that "objective considerations are irrelevant" if "they are tied to" features disclosed in the prior art. *WBIP*, 829 F.3d at 1330-1331 ("proof of nexus is not limited to only when objective evidence is tied to the supposedly 'new' feature(s)," and "fact that an isolated feature may be present in the prior art may not render irrelevant objective evidence of non-obviousness of that feature in the claimed combination").

Because substantial evidence supports the jury verdict, the Court should affirm the judgment of non-obviousness.

## IV. Polygroup Has Shown No Basis For Disturbing The Damages Award

Both parties offered damages theories that relied on the *Georgia-Pacific* factors and a "hypothetical negotiation" on June 4, 2013—the date of Polygroup's first infringement. Appx1639-1640(639:18-640:5); Appx2495-2496(1495:21-1496:4). The jury heard expert testimony from both sides and awarded a reasonable royalty of $42.5 million, which fell between Willis Electric's and Polygroup's numbers. Ms. Riley's damages opinions were reliable, and the district court did not abuse its discretion in denying Polygroup's new trial motion.

2643(1642:11-1643:1) (industry adoption of One Plug Tree's feature allowing for rotation "in any orientation using that coaxial connector").

### A. Ms. Riley Properly Valued The Patented Invention.

As the district court recognized (Appx66-67), Ms. Riley followed established methodologies for determining a reasonable royalty based on the patented invention's incremental value. She used two independent quantitative approaches to determine a reasonable-royalty range, and an unchallenged qualitative approach to arrive at a reasonable-royalty rate using the *Georgia-Pacific* factors. *Id.* In particular, Ms. Riley applied both an income approach and a market approach to derive a starting range of $2-$20 per infringing tree. Appx1655(655:9-14).

Polygroup did not dispute that Willis Electric's One Plug Trees with coaxial trunk connectors embody claim 15's fundamental invention. Appx1190-1192(190:18-192:3); Appx1278-1279(278:21-279:5); Appx1296-1297(296:8-297:8); Appx12693; Appx1394-1396(394:25-396:8); Appx1521-1522(521:14-522:16); Appx4374-4393(¶¶232-277); *see* Appx1569-1570(569:19-570:8); Appx1625-1626(625:23-626:7); Appx2261(1261:8-14); Appx2265(1265:10-22). Under her income approach, Ms. Riley isolated the patented feature's value in commercial embodiments by comparing the profit margins on One Plug Trees with the profit margins on similar trees without the patented coaxial trunk connectors—a comparison that showed that Willis Electric earned significantly more from the patented trees than from trees lacking the patented feature of coaxial trunk connectors allowing for one-step assembly. Appx1644-1645(644:5-645:25);

Appx12833; Appx4338(¶¶141-142); Appx4342-4346(¶¶147-158); Appx4348(¶162); Appx4468; Appx4472-4499; *see* Appx1679(679:9-12). Likewise, Ms. Riley compared Polygroup's Quick Set trees with coaxial trunk connectors against similar Polygroup trees without coaxial trunk connectors, which showed that Polygroup's incremental profit premium from the patented invention was $4.30 per tree. Appx1647-1652(647:11-652:7); Appx4780-4781; Appx12832; Appx4339-4341(¶¶143-146); Appx4347-4348(¶161); Appx4500-4602.

Although the income approach sufficed by itself to support Ms. Riley's opinions and the jury's award, Ms. Riley also applied a market approach, in which she examined five comparable licenses to identify the patented invention's value. Appx1652-1655(652:23-655:8); Appx4348-4351(¶¶164-173); Appx4353-4357(¶¶178-185); Appx4358-4362(¶¶189-196); Appx4367-4369(¶¶212-214); Appx4603-4609. Ms. Riley identified a comparable 2015 license between Willis Electric and H.S. Craft that provided a $2 per-tree royalty for H.S. Craft to use the '186 patent for its trees sold under the GE brand. Appx1653(653:7-20); Appx4349-4351(¶¶166-173); *see* Appx4775-4777. The record showed that the $2 per-unit rate was lower than the rate that Willis Electric and Polygroup would have agreed to, including because Polygroup's ongoing willful infringement was depressing Willis Electric's profit margins at the time, and Polygroup's IPR challenges created uncertainty about the '186 patent's validity. Appx1541-1542(541:3-542:16);

Appx4775-4777; Appx4350-4351(¶¶169-173); *see* Appx1532-1533(532:25-533:19).

Ms. Riley also identified as comparable a 2008 license between GKI and Loominocity with a 5% rate, a 2016 license between GKI's successor Boston Warehouse and Loominocity with a 5% rate, a 2015 license between Polygroup and Loominocity with a 5% rate, and a 2016 license between Polygroup and Seasons Four with a 5% rate. Appx1653-1654(653:21-654:15); Appx12984; Appx4353-4357(¶¶178-185); Appx4358-4362(¶¶189-196); *see* Appx4782-4786; Appx4787-4788; Appx4796-4813; Appx1837-1845(837:4-845:12); Appx1873-1874(873:11-874:2); Appx2532(1532:8-25); Appx2534-2536(1534:11-1536:13); Appx2537(1537:6-22). Ms. Riley explained that applying those 5% royalty rates to Polygroup's average selling price of $100 per Quick Set tree yielded a $5 per-unit royalty rate. Appx1654-1655(654:16-655:1).

As the district court explained, "in addition to [her] quantitative-apportionment and market-approach analyses," Ms. Riley "extensively consider[ed] the *Georgia-Pacific* factors." Appx67; *see* Appx4369-4401(¶¶217-299); Appx1655-1669(655:9-669:12). Among the factors that Ms. Riley considered were Willis Electric's and Polygroup's relationship as direct competitors, the patented feature's commercial success and popularity (including as documented by survey evidence and Polygroup's internal business records), the advantages of using the

patented feature, and the success of Willis Electric's embodiment of the invention. *Supra* pp. 46-49; Appx1655-1669(655:9-669:12); Appx4369-4401(¶¶217-299); Appx12698-12701; Appx12689; Appx12830-12831; Appx12769-12770; Appx12986-12997; *see* Appx2145-2146(1145:2-1146:17); Appx12802; Appx12808-12829. Ms. Riley relied on the *Georgia-Pacific* factors to arrive at a $5 per-tree royalty, which she multiplied by the royalty base of 10,263,693 infringing trees—a figure Polygroup does not dispute on appeal—for a total reasonable royalty of $53,118,465. Appx1669-1670(669:15-670:4). The jury awarded $42.5 million, or 20% less than Ms. Riley's opinions supported. Appx201.

### B. The District Court Acted Within Its Discretion In Finding That Willis Electric's Damages Evidence Was Sufficiently Reliable.

#### 1. The judgment may be affirmed based on Ms. Riley's unchallenged *Georgia-Pacific* analysis.

Polygroup does not deny that the jury was properly instructed or that its damages award was supported by substantial evidence. Instead, Polygroup confines its appellate argument (at 50-51) to the assertion that the district court abused its discretion by failing to exclude Ms. Riley's testimony and refusing to grant Polygroup's motion for a new trial. But Polygroup does not dispute that Ms. Riley's *Georgia-Pacific* analysis ***alone*** supported her damages opinions and provided a reliable basis for Ms. Riley to apportion damages to claim 15's incremental value. *See Sprint Commc'ns Co. v. Time Warner Cable, Inc.*, 760 F. App'x 977, 983 (Fed.

Cir. 2019) ("apportionment can be achieved … through the jury's determination of an appropriate royalty by applying" *Georgia-Pacific*); *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1338 (Fed. Cir. 2015) ("*Georgia-Pacific* reasonable royalty analysis takes account of the importance of the inventive contribution in determining the royalty rate[.]"). Accordingly, this Court can affirm based on Ms. Riley's unchallenged *Georgia-Pacific* analysis, and Polygroup has shown no cognizable prejudice from admission of her alternative theories. *See Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1228 n.4 (Fed. Cir. 2014) (Court "need not consider the propriety of … apportionment analysis" where methodology not challenged).

In any event, many of Polygroup's appellate arguments were not presented in its *Daubert* motion or through any trial objection, and thus are properly considered forfeited. *See Vogt v. State Farm Life Ins. Co.*, 963 F.3d 753, 769 (8th Cir. 2020) (where party "failed to file a *Daubert* motion or object at trial, it has waived any argument regarding the admissibility of the expert damages models"). Forfeiture aside, the district court cannot have abused its discretion by allowing Ms. Riley to testify, or by refusing to order a new trial, over objections Polygroup never raised before or at trial. And regardless, none of Polygroup's appellate arguments shows any reason for a new trial now.

### 2. The district court applied the correct legal standard.

Polygroup argues (at 63-66) that the district court did not apply "the correct legal standard for admitting expert testimony." That is incorrect. The district court acknowledged that it "must ensure that testimony admitted under Rule 702 'is not only relevant but reliable.'" Appx49 (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)). Consistent with this Court's precedent, the district court stated that "'[t]he essential requirement'" for ensuring reliable apportionment "'is that the ultimate reasonable royalty award must be based on the incremental value that the patented invention adds to the end product.'" Appx64 (quoting *Ericsson*, 773 F.3d at 1226); *see Commonwealth Sci. & Indus. Rsch. Org. v. Cisco Sys., Inc.*, 809 F.3d 1295, 1301 (Fed. Cir. 2015). As noted above, the district court determined that Ms. Riley followed established methodologies for determining a reasonable royalty based on the patented invention's incremental value using two independent quantitative approaches to determine a reasonable royalty range and an unchallenged qualitative approach to arrive at a reasonable royalty rate using the *Georgia-Pacific* factors. Appx66-67.

Polygroup (at 64) wrongly characterizes the district court as expressing "doubts" as to Ms. Riley's reliability. In fact, the court referred to some factual questions as presenting issues that "can be addressed through cross-examination and the presentation of contrary evidence," and explained that "apportionment involves

'some degree of approximation and uncertainty.'" Appx66-67 (quoting *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1328 (Fed. Cir. 2014)). But those factual questions were for the jury; they did not undermine the reliability or admissibility of Ms. Riley's methodology. *See i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 854 (Fed. Cir. 2010) ("[Q]uarrel with the facts … used go to the weight, not admissibility, of [expert's] opinion."), *aff'd*, 564 U.S. 91 (2011).

### 3. Polygroup's arguments about claim 10 are misplaced.

Polygroup repeatedly attacks Ms. Riley for supposedly having "made no attempt to assess the value attributable to the alleged improvement in claim 15" and not differentiating between claims 10 and 15. *E.g.*, Br. 50-51, 54, 56, 63. As explained above (pp. 33-35), Polygroup wrongly restricts claim 15's invention, as claim 15's advance over the prior art is the use of coaxial trunk connectors for mechanical and electrical connection ***at the same time regardless of rotational orientation***.

Polygroup identifies no authority for its position (at 50-51, 54) that Ms. Riley had to "exclud[e] the value associated with" the claimed "electrical connection between trunk portions … made 'independent of the rotational orientation,'" as the district court construed that term. Indeed, it would have been illogical and contrary to law for Ms. Riley to have excluded the value of a rotationally-independent, one-step mechanical and electrical connection, because no court has ever found that to

have been in the prior art. Once again, Polygroup is improperly attempting to collaterally estop Willis Electric with a fictional ruling that this Court has never made, namely that the one-step rotationally-independent assembly was previously known. *Supra* pp. 33-35.

The decisions in *AstraZeneca* and *Prolitec Inc. v. ScentAir Technologies, LLC*, 2023 WL 8697973 (D. Del. Dec. 13, 2023), do not support Polygroup's position (at 50-51). In *Prolitec*, the district court held that "the damages stemming from infringement of the dependent claims are confined to the value added by those claims, excluding the value associated with the invalidated [independent] claims." 2023 WL 8697973, at *12. Ms. Riley's analysis did exactly that: she apportioned to the value of claim 15's innovation—an implementation in which mechanical and electrical connections were made ***simultaneously*** regardless of rotational orientation—above the value of the design this Court held unpatentable in the IPR appeal. Similarly, Polygroup cites *AstraZeneca* for the general proposition that a royalty must "account for the relative value of the patentee's invention in comparison to the value of the conventional elements recited in the claim, standing alone." 782 F.3d at 1338. But again, that is exactly what Ms. Riley did when she compared One Plug Trees with coaxial trunk connectors—which claim 15 covers—with non-One Plug Trees that lack coaxial trunk connectors and involve mechanical and electrical connections made in separate steps, which is what this Court held

unpatentable. *Supra* pp. 51-52. Moreover, Ms. Riley ensured proper apportionment with her *Georgia-Pacific* analysis, where she accounted for the benefits of the patented invention and compared it to the benefits of non-infringing alternatives. Appx4389-4395(¶¶268-281).

Even under Polygroup's apparent view that the invention was limited to the coaxial trunk connector (and no element from claim 10), *AstraZeneca* still supports Ms. Riley's methodology, because the coaxial trunk connector "substantially create[d] the value" of the One Plug Tree by enabling mechanical and electrical connection at the same time regardless of the rotational orientation. 782 F.3d at 1339-1340 ("formulation 'substantially create[d] the value' of the entire … product"). Indeed, the record showed that the coaxial trunk connectors enabled the ease-of-use benefits that were so popular with buyers. *E.g.*, Appx1190-1192(190:18-192:3) ("important part of [the One Plug Tree] was these coaxial connectors" allowing for connection of "sections without having to line anything up"); Appx1278-1279(278:21-279:5) (discussing video about One Plug Tree "highlight[ing] the coaxial connector down in the core of the tree parts as they go together"); Appx1394-1396(394:25-396:8) ("coaxial connector design" of One Plug Tree allowed for ease-of-use benefits); Appx1521-1522(521:14-522:16) (Mr. Chen chose coaxial trunk design "[b]ecause that would be super easy for customers"); *see* Appx4374-4393(¶¶232-277).

While Polygroup (at 51) faults Willis Electric for not using the words "apportion" or "apportionment" at trial, Polygroup cites no requirement that a party utter those specific words before a jury composed not of patent lawyers, but of laypeople. Ms. Riley explained that she was measuring the "incremental" value of the patented invention by determining "the economic benefit stemming from the use of a patent." Appx1642(642:2-22); *see* Appx1651(651:5-7); Appx1652(652:8-21). That, after all, is what apportionment requires. *Ericsson*, 773 F.3d at 1226. Moreover, the jury was instructed, without objection by Polygroup, that its "award must be apportioned so that it is based only on the value of the patented features, and no more." Appx189.

Accordingly, the court did not abuse its discretion in rejecting Polygroup's challenge.

#### 4. Ms. Riley's income approach apportioned the incremental value of claim 15 from unpatented features.

##### *a. Ms. Riley's reliance on profit margins for One Plug Trees was reliable.*

Polygroup asserts that Ms. Riley's reliance on profit margins for One Plug Trees rested on supposedly "skew[ed]" profit margins from 2012 and 2013 and did not apportion to claim 15's incremental value. Br. 52-54. Polygroup's arguments fail again.

***First***, Polygroup never objected during *Daubert*, or at any other time before or during Ms. Riley's testimony, to her reliance on 2012 and 2013 profit margins. Nor did Polygroup move to strike her testimony at any time before the jury verdict. Polygroup accordingly forfeited this objection, and the district court did not abuse its discretion in allowing Ms. Riley to testify or in denying a new trial based on Polygroup's late-breaking theory.

In any event, Ms. Riley cogently explained why she relied on 2012 and 2013 profit margins: that was the period right before the hypothetical negotiation, just before Polygroup's copying of Willis Electric's patented design "eroded the Willis profit premium that it had achieved for that early time period." Appx1646-1647(646:1-647:10); *see* Appx4342(¶148); Appx4344-4346(¶¶155-158). Polygroup cites no authority suggesting that this common-sense approach is unreliable. *See Lindemann Maschinenfabrik GmbH v. American Hoist & Derrick Co., Harris Press & Shear Div.*, 895 F.2d 1403, 1406 (Fed. Cir. 1990) ("there is room for exercise of a common-sense estimation of what the evidence shows would be a 'reasonable' award").

***Second***, Polygroup asserts (at 24, 53) that Ms. Riley did not account for certain One Plug Trees that do not use coaxial trunk connectors and thus are not covered by claim 15. Polygroup again did not raise this issue during *Daubert*, at any time before or during Ms. Riley's testimony, or in a motion to strike the testimony

before the jury verdict. Therefore, the district court cannot have abused its discretion by not excluding the testimony or by refusing to grant a new trial on this ground.

Regardless, Polygroup is wrong on the facts. Ms. Riley expressly ***excluded*** One Plug Trees lacking coaxial trunk connectors from her calculation, explaining that "[s]even tree models branded as 'One Plug' and sold by Willis in 2012 did not fully embody" claim 15 and "for purposes of [her] analysis" were "not identified as 'One Plug Products.'" Appx4486 n.9.[11] *VLSI Technology LLC v. Intel Corp.* thus does not apply; unlike here, VLSI's expert selected the wrong data in attempting to identify the claimed technology's incremental benefits. 87 F.4th 1332, 1347-1349 (Fed. Cir. 2023). Here, by contrast, Ms. Riley did exactly what Polygroup argues she should have done: she excluded from her analysis products that did not practice claim 15.

***Third***, Polygroup asserts (at 53-54) that Ms. Riley did not account for other features that unpatented trees allegedly lacked. But Ms. Riley engaged in a detailed analysis comparing the profit margins for One Plug Trees ***with*** the patented coaxial

---

[11] This Court may consider the analysis in Ms. Riley's expert report in evaluating her opinion's reliability; it is not confined to her trial testimony. *See* Fed. R. Evid. 705 ("[A]n expert may state an opinion … without first testifying to the underlying facts or data."); *Global Traffic Techs. LLC v. Morgan*, 620 F. App'x 895, 906 (Fed. Cir. 2015) (affirming decisions allowing expert to testify where "[a]ppellants do not argue that … expert departed from the methodology described in his report").

trunk connectors against margins for similar trees ***without*** the patented coaxial trunk connectors. Appx1644-1645(644:5-645:25); Appx12833; Appx4478-4499. Indeed, exhibit 10.2 to Ms. Riley's report shows that she analyzed these products to ensure that she was capturing the patented feature's value. Appx4480-4486; *see* Appx1679(679:9-12). The record also included ample support for assigning the One Plug feature's value to the patented coaxial trunk connector that allowed for simultaneous mechanical and electrical connection regardless of rotational orientation, including because internally-powered trees with fixed orientation were not acceptable alternatives. Appx1394-1410(394:25-410:18) (advantages of One Plug Tree's design compared to fixed orientation designs); Appx4389-4395(¶¶268-282) (benefits of One Plug Tree's design over fixed-orientation designs with internal connectors); Appx1661-1662(661:16-662:5) (survey evidence on One Plug feature's value). Thus, unlike the expert in *Exmark Manufacturing Co. v. Briggs & Stratton Power Products Group, LLC*, 879 F.3d 1332 (Fed. Cir. 2018), Ms. Riley apportioned the patented feature's value.

***b. Ms. Riley's profit analysis for Polygroup's Quick Set trees was reliable.***

Polygroup also challenges (at 54-57) Ms. Riley's income approach for Polygroup's Quick Set trees because she relied on price quotes that Polygroup gave its customers, averaged Polygroup's sales volumes and did not "weigh" them, and

supposedly did not consider the value of unpatented features. These arguments should also be rejected.

***First***, Polygroup failed to object to Ms. Riley's use of quotes or averaging of sales volumes in *Daubert* briefing or at any time before or during Ms. Riley's testimony. Thus, this issue is also forfeited and, in any event, cannot show an abuse of discretion in admitting Ms. Riley's testimony and denying a new trial.

Besides, Polygroup's criticism is misplaced. Ms. Riley explained that Polygroup does not track costs associated with Quick Set trees and thus did not provide any basis to calculate Polygroup's ***actual*** profit from infringing trees. Appx1643-1644(643:11-644:4); Appx1649-1652(649:7-652:7); Appx4339-4340(¶144); *see* Appx1979-1980(979:23-980:21); Appx2073(1073:4-22). She accordingly had no alternative but to rely on Polygroup's ***expected*** incremental profit for use of patented coaxial trunk connectors, which she estimated using Polygroup's average price for Quick Set trees. Appx1647-1652(649:7-652:7); Appx4780-4781; Appx12832; Appx4339-4341(¶¶143-146); Appx4347-4348(¶161). Ms. Riley can hardly be blamed for Polygroup's own failure to keep or produce records permitting a calculation of its actual profit. Polygroup cites self-serving testimony from its executive that retroactively tried to associate up-charges and costs with the Quick Set functionality, Br. 56 (citing Appx2135), but Ms. Riley

was not required to accept Polygroup's unsupported assertions that contradicted other evidence of record, and neither was the jury.

***Second***, Polygroup asserts (at 56-57) that Ms. Riley did not show that the entire profit margin for Quick Set trees was attributable to the patented feature, rather than other Quick Set features. But again, Polygroup improperly attempts to minimize the patented invention, which covered the simultaneous mechanical and electrical connection regardless of the rotational orientation, using coaxial trunk connectors. *Supra* pp. 33-35. Ms. Riley provided detailed analysis isolating that patented innovation's value and accounting for differences between Polygroup trees with and without the infringing Quick Set feature. Appx1647-1652(649:7-652:7); Appx4780-4781; Appx12832; Appx4339-4341(¶¶143-146); Appx4347-4348(¶161); Appx4510-4602.

**5. Ms. Riley's market approach relied on comparable agreements apportioned to the patented technology's incremental value.**

Polygroup argues (at 57-63) that Ms. Riley's market approach, which rested on multiple comparable licenses, did not satisfy apportionment requirements. The Court need not address this issue if it concludes, as it should, that Ms. Riley's reasonable-royalty opinions were reliable and well-supported based on her income approach. *Supra* pp. 60-65. Likewise, Polygroup ignores that Ms. Riley "extensively consider[ed] the *Georgia-Pacific* factors," Appx67, and Polygroup

does not dispute that her *Georgia-Pacific* analysis provides another basis for reliability, *supra* pp. 54-55. Polygroup notably does not argue that its critique of Ms. Riley's market approach alone warrants a new trial.

Moreover, as with Polygroup's arguments about the income approach, many of Polygroup's arguments about the market approach were not raised during *Daubert* or at trial. Thus, the district court could not have abused its discretion in admitting the testimony or denying a new trial.

And separately, Polygroup's criticisms of Ms. Riley's market approach fail on the merits.

***First***, Polygroup argues (at 58-59) that the H.S. Craft license was not sufficiently comparable, including because it included patents beyond the '186 patent. But Polygroup did not even challenge Ms. Riley's reliance on the H.S. Craft license in its *Daubert* motion. Appx4208-4218.[12]

Polygroup also ignores that Ms. Riley accounted for differences between the H.S. Craft agreement and the hypothetical negotiation. In particular, she explained that Willis Electric did not consider H.S. Craft to be a direct competitor like

---

[12] Although Polygroup raised challenges to the H.S. Craft agreement for the first time in its *Daubert* reply, even then it did not argue that the agreement was not apportioned or comparable to the hypothetical negotiation. Instead, Polygroup only argued that its rate was lower than Ms. Riley's ultimate opinion and that differences between the agreement and the hypothetical negotiation meant that the rate was too high, Appx15198-15199, which Ms. Riley fully accounted for, *infra* pp. 66-67.

Polygroup, and that the H.S. Craft license was entered into while Polygroup's pending IPRs challenged the validity (and depressed the value) of Willis Electric's patents—a factor that would not apply to the hypothetical negotiation, when both parties would treat the patent as valid and infringed. Appx4350-4351(¶¶169, 172).

This case is thus different from *Omega Patents, LLC v. CalAmp Corp.*, where the licenses covered as many as 54 patents and applications and were not based on the asserted patent's value, but on a licensing arrangement providing for a $5 per-unit royalty that did not consider the individual licensed patents. 13 F.4th 1361, 1380-1381 (Fed. Cir. 2021). More analogous are cases where comparable licenses were sufficiently apportioned, because Ms. Riley relied on a sufficiently comparable license that was based on a discounted value of the '186 patent. *Supra* pp. 52-53; *CSIRO*, 809 F.3d at 1302-1303; *Vectura Ltd. v. GlaxoSmithKline LLC*, 981 F.3d 1030, 1040-1042 (Fed. Cir. 2020); *Bio-Rad Labs., Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1376-1377 (Fed. Cir. 2020).

Polygroup also argues (at 59-60) that, even if the H.S. Craft agreement were sufficiently comparable, the agreement was only for $2 per tree and thus could not support the jury verdict. But as explained above (pp. 51-54), Ms. Riley offered a royalty range between $2 and $20 based not just on this license, but on other factors as well. And the record contained ample evidence showing why the $2 rate, which was agreed to in 2015, was too low for a license to a direct competitor like Polygroup

in 2013. *See* Appx4350-4351(¶¶169,172); Appx1541-1542(541:3-542:16); Appx4775-4777; Appx1532-1533(532:25-533:19).

Moreover, as the district court determined, "the H.S. Craft license was not the sole basis for Ms. Riley's opinion and would not have resulted in a materially different royalty even if she had assigned the '186 Patent only a fraction of the $2 rate." Appx25. Indeed, as explained above (pp. 51-54), Ms. Riley ensured proper apportionment by also applying her income approach, analyzing other comparable licenses, and applying the *Georgia-Pacific* factors.

***Second***, Polygroup criticizes (at 60-62) the other agreements that Ms. Riley considered for not including rights to the '186 patent and for purportedly not being technologically comparable. Once again, Polygroup did not raise this complaint in its *Daubert* briefing. Appx4215-4216; Appx15198-15199. Polygroup has thus forfeited this argument, and the district court cannot have abused its discretion in admitting Ms. Riley's testimony given Polygroup's failure to timely articulate this concern before or during trial.

Even considering Polygroup's arguments, the 2008 license between GKI and Loominocity and the 2016 license between Boston Warehouse and Loominocity both covered the Loomis patent, which Polygroup cannot and does not deny is technologically comparable to the '186 patent. *See* Appx1653-1654(653:21-654:15); Appx4782-4786; Appx4787-4788; Appx4796-4813; Appx1837-

1845(837:4-845:12); Appx1873-1874(873:11-874:2); Appx2532(1532:8-25); Appx2534-2536(1534:11-1536:13); Appx2537(1537:6-22); Appx4353-4357(¶¶178-185). Indeed, Polygroup's damages expert also proffered a comparable licensing opinion based on a license (albeit a sham license) that purported to grant rights to the Loomis patent. Appx2525-2526(1525:24-1526:8); *supra* p. 26 & n.4. Thus, by Polygroup's own admission, the Loominocity agreements are necessarily comparable and amply support the reliability of Ms. Riley's opinions.

Contrary to Polygroup's refrain that Ms. Riley did not account for differences between these agreements and the hypothetical negotiation (Br. 62), Ms. Riley explained that the Loomis patent licensed by these agreements would be less valuable than the '186 patent in the hypothetical negotiation, because (1) it used a fixed-orientation design with standard plugs and (2) unlike Willis Electric and Polygroup, Loominocity and GKI were not competitors, so the agreement did not cause Loominocity to lose sales and profits, Appx4355-4357(¶¶182-185). Ms. Riley's report also provided ample explanation of her analysis of the comparability of the Polygroup-Loomis agreements, Appx4359-4362(¶¶190-196); Appx1687(687:3-8), which were cumulative in any event of the other agreements on which she relied.

Ultimately, Polygroup's complaints (at 61-62) about Ms. Riley's comparable licensing analysis do not go to her methodology, but instead relate to factual

arguments about her conclusions. Thus, as the district court concluded, Polygroup at most presented factual disagreements that could have been addressed through cross-examination. Appx26. Having elected to roll the dice before the jury, without raising many of its complaints until after receiving a verdict it did not like, Polygroup cannot now assert an abuse of discretion.

## RESPONSE TO POLYGROUP'S COSTS DEMAND

If the Court affirms the judgment, as it should, then there is no basis to award costs to Polygroup. But even were the Court to rule otherwise, there is no reason to order Willis Electric to cover the costs of a bond that, as the district court found and Polygroup has not meaningfully disputed, was necessary for many reasons. Appx4703.

None of the Polygroup defendants is based in the United States or owns property here. Appx1979(979:5-10). When Polygroup asked the district court to stay execution of the judgment (on the same day the automatic stay expired), it did not agree to pay the judgment in the event of affirmance, nor did it offer any other kind of security for the full judgment amount (the most it offered was 10%). Appx4675. Polygroup also offered no information about the defendant entities' financial condition or ability to pay. The court accordingly made detailed findings that execution of the judgment "is likely to involve significant discovery,

garnishment procedures, and turnover orders, among other complex proceedings." Appx4703.

Therefore, Polygroup's assertion (at 68) that the bond "was a wasted expense that benefited neither party" is incorrect; a bond was the only way to allow Polygroup to defer payment while protecting Willis Electric from expensive and cumbersome international execution proceedings. Willis Electric should not be penalized for reasonably refusing to consent to a stay of execution of judgment without any sufficient security at all, where Polygroup offered no assurances that it could, or would, pay an affirmed judgment. *See City of San Antonio, Texas v. Hotels.com, L.P.*, 593 U.S. 330, 338 (2021) ("Rule 39 gives discretion over the allocation of appellate costs to the courts of appeals."). Of course, this issue is moot in the event of affirmance.

## CONCLUSION

The district court's judgment should be affirmed.

Respectfully submitted,

/s/ Mark C. Fleming

MARK C. FLEMING
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526 6000

NORA N. XU
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Avenue, NW
Washington, D.C. 20037
(202) 663-6000

*Attorneys for Plaintiff-Appellee Willis Electric Co., Ltd.*

PATRICK M. ARENZ
EMILY E. NILES
BRENDA L. JOLY
ROBINS KAPLAN LLP
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
(612) 349-8500

November 27, 2024

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because:

1. The filing has been prepared using a proportionally-spaced typeface and includes 13,975 words.

2. The filing has been prepared using Microsoft Word for Office 365 in 14-point Times New Roman font. As permitted by Fed. R. App. P. 32(g), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

/s/ Mark C. Fleming
MARK C. FLEMING
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526 6000

November 27, 2024