**No. 2024-2118**

IN THE
# UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

WILLIS ELECTRIC CO., LTD.,

*Plaintiff-Appellee*

v.

POLYGROUP LTD. (MACAO COMMERCIAL OFFSHORE),
POLYGROUP MACAU LIMITED BVI, POLYTREE (HK) CO. LTD.,
POLYGROUP TRADING LTD.,

*Defendants-Appellants*

**Appeal from the United States District Court for the District of Minnesota, Judge Joan N. Ericksen, No. 0:15-cv-03443-JNE-DTS**

## REPLY BRIEF FOR DEFENDANTS-APPELLANTS

Rachel Zimmerman Scobie
MERCHANT & GOULD P.C.
150 South Fifth Street
Suite 2200
Minneapolis, MN 55402
(612) 332-5300

J. Michael Jakes
Jason L. Romrell
Ryan V. McDonnell
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001-4413
(202) 408-4000

*Counsel for Defendants-Appellants*

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Number:** | 2024-2118 |
| **Short Case Caption:** | Willis Electric Co., Ltd. v. Polygroup Ltd. (Macao Commercial Offshore) |
| **Filing Party/Entity:** | Polygroup Limited (Macao Commercial Offshore), Polygroup Macau Limited (BVI), Polytree (H.K.) Co. Ltd., and Polygroup Trading Limited |

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.
2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.
3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.
4. Please do not duplicate entries within Section 5.
5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: December 18, 2024

Signature: /s/ J. Michael Jakes

Name: J. Michael Jakes

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☒ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| Polygroup Limited (Macao Commercial Offshore) | | Polygroup Holdings Limited |
| Polygroup Macau Limited (BVI) | | Polygroup Asia Pacific Limited |
| Polytree (H.K.) Co. Ltd. | | |
| Polygroup Trading Limited | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this **court** for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☒ Additional pages attached

| | | |
|---|---|---|
| MERCHANT & GOULD P.C.: | John T. Winemiller | Thomas J. Leach, III |
| Elisabeth Muirhead | Marra Mancina Clay | Rachel C. Hughey (formerly) |
| Gabrielle Kiefer | Paige S. Stradley | James Warren Beard |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☒ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☒ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

4. Legal Representatives (continued)

| | | |
|---|---|---|
| TROUTMAN PEPPER HAMILTON SANDERS LLP: | Douglas D. Salyers | Puja Patel Lea |
| Christopher J. Forstner | Laura Anne Kuykendall | Robert Armistead Angle |
| Dabney J. Carr, IV | Lindsay Mitchell Henner (formerly) | |

| | | |
|---|---|---|
| POLYGROUP HOLDINGS LIMITED: | Eric Szweda | |

# TABLE OF CONTENTS

INTRODUCTION ....................................................................................... 1

ARGUMENT ........................................................................................... 2

I. Willis's Obviousness and Damages Arguments Depend on Features in Unpatentable Claim 10 ........................................................... 2

II. The District Court Legally Erred in Denying JMOL that Claim 15 of the '186 Patent Would Have Been Obvious ........................................... 6

A. Bodily Incorporation Cannot Override the Motivation Toward Using Coaxial Connectors in Pre-Lit Artificial Trees ............................... 7

B. The Loomis GKI Tree's Use of a Two-Prong Plug Is Not Teaching Away as a Matter of Law .......................................................... 12

C. Willis's Alleged Evidence of Secondary Considerations Is Not Entitled to a Presumption of Nexus ............................................. 15

III. The District Court Abused Its Discretion in Denying Polygroup's Motion for a New Trial ........................................................... 21

A. *Georgia-Pacific* Does Not Excuse Ms. Riley's Failure to Apportion ....... 21

B. Polygroup Did Not Forfeit Its Damages Arguments ............................... 23

C. The District Court Failed Its Gatekeeping Obligation Under Fed. R. Evid. 702 ................................................................................ 24

D. Ms. Riley Was Required to Apportion the Incremental Value Attributable to Claim 15 Only, Excluding the Value Attributable to Unpatentable Claim 10 ............................................................... 25

E. Ms. Riley's Income Approach Failed to Apportion Claim 15's Incremental Value from Unpatented Features ......................................... 28

1. Ms. Riley Failed to Apportion One Plug Profits Attributable to Claim 15's Incremental Value ....................................................... 28

2. Ms. Riley Failed to Apportion Quick Set Profits Attributable to Claim 15's Incremental Value ....................................................... 30

F. No Agreement Underlying Ms. Riley's Market Approach Provides "Built-In" Apportionment Down to Claim 15's Incremental Value..........31

CONCLUSION..........33

COSTS..........33

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apple Inc. v. Wi-LAN Inc.*,
25 F.4th 960 (Fed. Cir. 2022) ....................................................................31

*AstraZeneca AB v. Apotex Corp.*,
782 F.3d 1324 (Fed. Cir. 2015) ...................................................26, 27, 28

*Axonics, Inc. v. Medtronic, Inc.*,
73 F.4th 950 (Fed. Cir. 2023) ....................................................................11

*Bank of Am., N.A. v. JB Hanna, LLC*,
766 F.3d 841 (8th Cir. 2014) .....................................................................24

*In re Copaxone Consol. Cases*,
906 F.3d 1013 (Fed. Cir. 2018) ...................................................................7

*Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*,
851 F.2d 1387 (Fed. Cir. 1988) .................................................................15

*Ericsson, Inc. v. D-Link Sys., Inc.*,
773 F.3d 1201 (Fed. Cir. 2014) ...................................................21, 25, 26

*Finjan, Inc. v. Secure Computing Corp.*,
626 F.3d 1197 (Fed. Cir. 2010) .................................................................24

*Fox Factory, Inc. v. SRAM, LLC*,
944 F.3d 1366 (Fed. Cir. 2019) ...........................................................15, 16

*In re Fulton*,
391 F.3d 1195 (Fed. Cir. 2004) .................................................................13

*Garretson v. Clark*,
111 U.S. 120 (1884)...................................................................................22

*Geo. M. Martin Co. v. All. Mach. Sys. Int'l LLC*,
618 F.3d 1294 (Fed. Cir. 2010) .................................................................19

*Global Traffic Technologies LLC v. Morgan*,
620 F. App'x 895 (Fed. Cir. 2015) (nonprecedential).....................................27

*Intercont'l Great Brands LLC v. Kellogg N. Am. Co.*,
869 F.3d 1336 (Fed. Cir. 2017) ....................12

*Iron Grip Barbell Co. v. USA Sports, Inc.*,
392 F.3d 1317 (Fed. Cir. 2004) ....................19

*KSR Int'l Co. v. Teleflex, Inc.*,
550 U.S. 398 (2007)....................9

*Lemelson v. TRW, Inc.*,
760 F.2d 1254 (Fed. Cir. 1985) ....................5

*Medtronic, Inc. v. Teleflex Innovations S.À.R.L.*,
68 F.4th 1298 (Fed. Cir. 2023) ....................23

*Meiresonne v. Google, Inc.*,
849 F.3d 1379 (Fed. Cir. 2017) ....................13

*In re Mouttet*,
686 F.3d 1322 (Fed. Cir. 2012) ....................10

*Omega Pats., LLC v. CalAmp Corp.*,
13 F.4th 1361 (Fed. Cir. 2021) ....................25, 31, 32

*Ormco Corp. v. Align Tech., Inc.*,
498 F.3d 1307 (Fed. Cir. 2007) ....................5

*Para-Ordnance Mfg., Inc. v. SGS Imps. Int'l, Inc.*,
73 F.3d 1085 (Fed. Cir. 1995) ....................13

*Polygroup Ltd. MCO v. Willis Elec. Co.*,
Nos. 2021-1401, -1402, 2022 WL 1183332 (Fed. Cir. Apr. 20, 2022) (nonprecedential)....................3, 4

*Prolitec Inc. v. ScentAir Techs., LLC*,
No. 20-984-WCB, 2023 WL 8697973 (D. Del. Dec. 13, 2023) ........6, 26, 27, 31

*S. Ala. Med. Sci. Found. v. Gnosis S.P.A.*,
808 F.3d 823 (Fed. Cir. 2015) ....................21

*Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*,
778 F.3d 1311 (Fed. Cir. 2015) ....................5

*Sprint Communications Co. v. Time Warner Cable, Inc.*,
760 F. App'x 977 (Fed. Cir. 2019) (nonprecedential)....................22, 23

*Trivascular, Inc. v. Samuels*,
812 F.3d 1056 (Fed. Cir. 2016) ....................12, 13

*WBIP, LLC v. Kohler Co.*,
829 F.3d 1317 (Fed. Cir. 2016) ....................16, 17

*WhitServe, LLC v. Comput. Packages, Inc.*,
694 F.3d 10 (Fed. Cir. 2012) ....................22

*XY, LLC v. Trans Ova Genetics, L.C.*,
890 F.3d 1282 (Fed. Cir. 2018) ....................4

*Yita LLC v. MacNeil IP LLC*,
69 F.4th 1356 (Fed. Cir. 2023) ....................17

**Statutes**

35 U.S.C. § 282(a) ....................5

35 U.S.C. § 318(b) ....................5

**Rules**

Fed. R. Civ. P. 59....................23, 24

Fed. R. Evid. 702 ....................2, 24, 25, 27

Fed. R. Evid. 705 ....................27

## INTRODUCTION

Willis reimagines a world where claim 10 of the '186 patent was never invalidated and the jury was given a different claim construction. According to Willis, claim 15's "advance over the prior art" was using a coaxial trunk connector to make a mechanical and electrical connection "*at the same time regardless of the trunk sections' rotational orientation*." Willis-Br. 33-35. But Willis's alleged "key" to the invention, Willis-Br. 4, stems entirely from invalid claim 10—all that claim 15 adds is a coaxial trunk connector. Willis is estopped from arguing that the combination of elements in claim 10 is anything but unpatentable.

Beyond Willis's attempts to sidestep this Court's final judgment, Willis does not dispute that the Loomis GKI Tree combined with a common coaxial barrel connector and/or Otto satisfies *every* limitation of claim 15. Johnny Chen—the sole inventor listed on Willis's '186 patent—copied the Loomis GKI Tree, merely using an off-the-shelf coaxial barrel connector instead of the two-prong plug. Polygroup-Br. 10-12; Appx4718.

Skilled artisans would have made the same simple and predictable substitution as Mr. Chen. There was an undisputed market trend toward using LED lights in pre-lit artificial trees, Appx2654-2655(1654:5-1655:5), and coaxial barrel connectors were a "well-known" and "readily available" option for powering LED lights, Appx2654-2655(1654:25-1655:5). Skilled artisans would not have been

discouraged from making this substitution because extra steps would have been required to remove the notch-and-dimple feature or redesign the moldings. That argument erroneously requires bodily incorporation, which is not the law. And the Loomis GKI Tree legally does not teach away from using coaxial trunk connectors merely because it uses an alternative connector design. Willis's alleged secondary-considerations evidence also cannot save claim 15—it relates to One Plug trees' use of already known internal power and lacks a nexus to claim 15's coaxial trunk connectors.

As for damages, Willis advocates for an anything-goes approach to apportionment that is fundamentally inconsistent with *Garretson* and Rule 702. At every turn, Willis's damages expert, Michele Riley, failed to apportion the incremental value attributable solely to claim 15, excluding the value associated with unpatentable claim 10 or features of the Loomis GKI Tree. She did not show that any allegedly comparable agreement she considered featured built-in apportionment. Nor did she account for the impact of other premium features that drove cost differences.

## ARGUMENT

### I. Willis's Obviousness and Damages Arguments Depend on Features in Unpatentable Claim 10

Willis alleges that "the *one-step* rotationally-independent assembly" allegedly required by claim 10—and merely "implemented" through a coaxial trunk

connector embodiment recited in dependent claim 15—"was the *key* to the invention." Willis-Br. 3-4 (emphases added); *see also* Willis-Br. 33-35. Yet it is undisputed that this Court held that independent claim 10 is *unpatentable*. *Polygroup Ltd. MCO v. Willis Elec. Co.*, Nos. 2021-1401, -1402, 2022 WL 1183332, at *1, *5 (Fed. Cir. Apr. 20, 2022) (*Polygroup IV*). Nevertheless, Willis insists that this Court's final judgment holding claim 10 unpatentable does not matter here because it "turned on the broadest reasonable interpretation ('BRI')," which permitted mechanical and electrical connections to be made in separate steps, while the district court's *Phillips* construction allegedly requires mechanical and electrical connections to be made simultaneously. Willis-Br. 3, 29-30, 33-35.

Willis omits that the district court's claim construction order never uses "single step," "one step," or "simultaneously." Appx4150-4155; *see also* Willis-Br. 18, 20, 29-30, 33-34. Instead, Willis pulls "single step" from a portion of the court's *Daubert* decision addressing Willis's abandoned *lost profits* theory. Willis-Br. 20, 33-34 (quoting Appx63); Appx59-64. While that decision erroneously interpreted a statement in the claim construction order—not even the actual construction of the "independent of the rotational orientation" term—as requiring "an electrical connection and a mechanical connection to occur in a single step," Appx62-63, the district court never instructed the jury that claim 10 requires making a mechanical and electrical connection in a rotationally independent

"single step."[1] Appx192; Appx2841(1841:1-14); Appx15. And Willis never objected to the court's instructions on this basis. Accordingly, a "single step" requirement cannot provide the basis for the jury's validity verdict or justify the jury's unapportioned damages award.

But even if claim 10 did require a "single step" under a *Phillips* construction, this Court has already held that the entire combination of elements recited in claim 10 is unpatentable, full stop. *Polygroup IV*, 2022 WL 1183332, at *5. This Court's final decision of unpatentability necessarily "has a collateral estoppel effect on *all* pending or co-pending actions," regardless of whether the appeal giving rise to that final decision of unpatentability is "from a district court or the Board." *XY, LLC v. Trans Ova Genetics, L.C.*, 890 F.3d 1282, 1294-95 (Fed. Cir. 2018).

Willis cites no authority entitling it to resurrect claim 10's unpatentable combination of elements simply because this Court's final invalidity determination applied a BRI standard. Willis-Br. 33-34. And for good reason—such a rule would not only contradict *XY* and settled principles of collateral estoppel, but also

---

[1] While the *Polygroup IV* majority applied a BRI standard, it expressly found that "coupling" is "broad enough to mean mechanically connecting or electrically connecting or both," and that "neither the claim language nor the specification requires such 'coupling' occur in a single step." 2022 WL 1183332, at *4-5 (identifying multiple embodiments). Whether under BRI or *Phillips*, the district court's stray *Daubert* statement cannot be squared with this Court's findings. Notably, the district court determined that "coupling" required "no construction" and should instead be given its "plain and ordinary meaning." Appx4146-4150.

undermine the entire statutory scheme for post-grant proceedings. 35 U.S.C. § 318(b) (requiring Director to cancel "any claim . . . finally determined to be unpatentable" regardless of claim construction standard); Appx154(1:6-7) (noting claim 10 is cancelled). Thus, even if claim 10 requires a simultaneous mechanical and electrical connection that is rotationally independent under a *Phillips* construction, the combination is still unpatentable. And all that claim 15 adds is the use of a coaxial trunk connector.

Pointing to 35 U.S.C. § 282(a) and *Lemelson v. TRW, Inc.*, 760 F.2d 1254, 1267 (Fed. Cir. 1985), Willis accuses Polygroup of "wrongly attempt[ing] to confine claim 15's innovative advance by trying to keep claim 10's elements out of the Court's view." Willis-Br. 33. But neither *Lemelson* nor § 282(a) requires this Court to analyze claim 15's validity with blinders on to claim 10's invalidity. Rather, courts have expressly relied on prior determinations invalidating an independent claim when considering whether a dependent claim adds anything that materially alters validity or incremental value. *Ormco Corp. v. Align Tech., Inc.*, 498 F.3d 1307, 1319-20 (Fed. Cir. 2007) (validity of claims depending from previously invalidated independent claims "can only be sustained based upon the language of the dependent claims themselves"); *see also Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*, 778 F.3d 1311, 1319-20 (Fed. Cir. 2015) (applying collateral estoppel where independent claim had previously been

invalidated and "additional limitation . . . [did] not materially alter the question of the validity of" the dependent claim); *Prolitec Inc. v. ScentAir Techs., LLC*, No. 20-984-WCB, 2023 WL 8697973, at *12-13 (D. Del. Dec. 13, 2023) (Bryson, J., sitting by designation).

Willis acknowledges that its alleged "non-obviousness and value" of claim 15 are based not on the common coaxial barrel connector itself, but on the "inventive ability to make mechanical and electrical connections together in one step, regardless of the trunk sections' rotational orientation," Willis-Br. 29-30—all elements of unpatentable claim 10.

## II. The District Court Legally Erred in Denying JMOL that Claim 15 of the '186 Patent Would Have Been Obvious

In countering Polygroup's obviousness arguments, Willis falls back on the limitations of unpatentable claim 10. Willis-Br. 41. Willis, however, cannot shield claim 15's obviousness behind its "one step" construction and the limitations of unpatentable claim 10. Willis does not dispute that the Loomis GKI Tree combined with a common coaxial barrel connector and/or Otto satisfies every limitation of claim 15, *including those of now-canceled claim 10*. Nor does Willis dispute that a skilled artisan would have had a reasonable expectation of success in replacing the two-prong plug in the Loomis GKI Tree's poles with a coaxial connector. Willis also does not dispute that there was an industry trend toward using LED lights in pre-lit artificial trees, which require using DC plugs, such as coaxial connectors.

All that Willis disputes is whether a skilled artisan would have been motivated to modify the Loomis GKI Tree to add a common, off-the-shelf coaxial connector and whether the Loomis GKI Tree teaches away from this modification because it does not use a coaxial connector. Neither theory is legally supported and both should be rejected by this Court. Willis also attempts to revive its discredited evidence of secondary considerations. But this fails because Willis does not tie its evidence to the sole limitation yet to be found unpatentable—the use of coaxial trunk connectors—instead tying it to internal power, which is in the prior-art Loomis GKI Tree.

### A. Bodily Incorporation Cannot Override the Motivation Toward Using Coaxial Connectors in Pre-Lit Artificial Trees

Willis asserts that the jury had "ample basis" to find that it would not have been "obvious to try" coaxial trunk connectors with LED lighting, including because a "skilled artisan could use 'nearly an infinite number of' DC-type plugs for LED lighting." Willis-Br. 42 (quoting Appx2672(1672:7-12)). But there being several known types of DC plugs does not make using coaxial barrel connectors less obvious, particularly where a skilled artisan would have been led to use common coaxial barrel connectors with LED lights due to market trends. *See In re Copaxone Consol. Cases*, 906 F.3d 1013, 1026 (Fed. Cir. 2018).

Willis does not dispute that there was a market trend toward LED lights on artificial trees or that to power those LED lights, a skilled artisan would have used

a low-voltage connector. Appx2654-2655(1654:5-1655:5). Willis's expert, Dr. Dickens, agreed that coaxial barrel connectors were "standard," "well-known," and "readily available" low-voltage DC connectors. Appx2654-2655(1654:25-1655:5); Appx2668(1668:19-21); *see also* Appx2301-2302(1301:25-1302:19) (Polygroup's expert explaining that coaxial barrel connectors are "a very common way to make an electrical connection," especially "with low voltage and DC"); Appx1883-1884(883:25-884:3). And Mr. Chen testified that the coaxial (or "DC pin") connector he used to make the One Plug tree was the only low-voltage connector that he could source. Appx1586-1587(586:12-587:19). Additionally, Dr. Dickens admitted that skilled artisans already knew that coaxial connectors worked with low-voltage LED lighting. Appx2671-2672(1671:9-1672:12). Thus, there was nothing for skilled artisans to try; they would have modified the Loomis GKI Tree for use with LED lighting by simply swapping out the two-prong plug for an off-the-shelf coaxial barrel connector, just as Mr. Chen did.



Appx4772 and Appx4773 (Loomis GKI Tree's two-prong plug (top)); Appx12693 (Willis's One Plug's coaxial connectors (bottom)). This is a classic instance of a claim being obvious to try. *See KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 417, 421 (2007).

Willis further contends that neither the district court nor its expert invoked "bodily incorporation" and chalks up the court's adoption of this rationale to demonstrating that Polygroup's proposed modification of the Loomis GKI Tree "relied on impermissible hindsight," a finding that the court never made.[2]

---

[2] Willis faults Polygroup for not challenging Dr. Dickens's bodily-incorporation testimony in a *Daubert* motion or in its JMOL briefing and for not challenging the jury instructions regarding obviousness. Willis-Br. 43, 44-45.

Willis-Br. 43-44. That the district court and Dr. Dickens did not use the phrase "bodily incorporation" does not mean that their obviousness analyses did not require it. Willis's motivation-to-combine arguments rested on a skilled artisan being dissuaded from modifying the Loomis GKI Tree to add a coaxial trunk connector because of the "additional complexity and inefficiencies" associated with removing the "notch-and-dimple features and redesigning the moldings" in the Loomis GKI Tree when adding the coaxial connector. Willis-Br. 44 (citation omitted). These arguments go to the core of bodily incorporation: whether the references could be physically combined. *See, e.g.*, *In re Mouttet*, 686 F.3d 1322, 1332 (Fed. Cir. 2012).

While the Loomis GKI Tree's use of a two-prong NEMA plug required there to be a notch-and-dimple alignment feature, removing the two-prong plug to follow the growing market trend toward LED lights eliminates any need for the notch-and-dimple feature. *See infra* Section II.B; Appx1786(786:2-10); *see also* Appx1778-1779(778:13-779:13); Appx1779-1780(779:24-780:11). Indeed, Dr. Dickens agreed that modifying the Loomis GKI Tree to include a coaxial

---

Polygroup's JMOL briefing, however, did address Dr. Dickens's testimony regarding there being no motivation to modify the Loomis GKI Tree because it would have involved removing the notch-and-dimple alignment and redesigning the moldings. *See, e.g.*, Appx15452. Further, there were no errors in the jury's instruction on obviousness, yet the only rationale the district court could devise to support the jury's nonobviousness verdict was bodily incorporation. Appx8.

barrel connector *reduced* manufacturing steps by eliminating the *additional* steps needed to add the notch-and-dimple feature. Appx2666-2667(1666:15-1667:9). Similarly, the molding around the connector is not recited in claim 15 and should not bear on obviousness. Mr. Chen admitted that others made the One Plug trees' molds and that "opening the molds" was not part of his alleged invention. Appx1556-1557(556:25-557:20). Nonetheless, it was undisputed that the Loomis GKI Tree had molding to secure the plug in the trunk, Appx2670-2671(1670:22-1671:8), and Dr. Dickens agreed that "[m]olding processes were available to companies" in January 2010, Appx2655(1655:6-13).

The district court legally erred in denying Polygroup's JMOL for obviousness based on bodily incorporation. The obviousness inquiry "is not whether a relevant artisan would combine a first reference's feature with a second reference's feature to meet requirements of the first reference that are not requirements of the claims at issue." *Axonics, Inc. v. Medtronic, Inc.*, 73 F.4th 950, 957 (Fed. Cir. 2023). This "contrary view" advanced by both Willis and the court "run[s] counter to established principles, including that the claim defines the invention . . . and that a skilled artisan may be motivated to combine particular features of different references, *e.g.*, to secure some benefits at the expense of others, even when bodily incorporation would be impossible or inadvisable." *Id.* The simple substitution of a

coaxial connector in the Loomis GKI Tree renders claim 15 obvious as a matter of law.

Finally, Willis points to the jury being entitled to consider whether the asserted prior art "was 'not materially different' from what the Patent Office previously considered" and decide whether to weigh the prior art "more heavily." Willis-Br. 40-41 (quoting Appx181). This Court has made clear, however, that weighing the prior art more or less heavily "does not mean that something more than clear and convincing evidence is required" to prove invalidity. *Intercont'l Great Brands LLC v. Kellogg N. Am. Co.*, 869 F.3d 1336, 1350 (Fed. Cir. 2017). Regardless, the district court already rejected Willis's attempt to collaterally estop Polygroup from asserting the physical Loomis GKI Tree as prior art on summary judgment because Willis did not demonstrate that the Loomis patent and Loomis GKI Tree were materially identical or entirely cumulative. Appx88 n.5; *see also* Polygroup-Br. 49.

### B. The Loomis GKI Tree's Use of a Two-Prong Plug Is Not Teaching Away as a Matter of Law

Willis contends that modifying the Loomis GKI Tree to replace the two-prong plug with a coaxial barrel connector would have required removing the "inventive" notch-and-dimple feature and "destroy[ing] the basic objective" of the Loomis GKI Tree. Willis-Br. 39 (quoting *Trivascular, Inc. v. Samuels*, 812 F.3d 1056, 1068-69 (Fed. Cir. 2016)). This is factually and legally incorrect.

A prior-art product does not teach away simply because it does something other than what the claim recites. *In re Fulton*, 391 F.3d 1195, 1201 (Fed. Cir. 2004) ("[M]ere disclosure of alternative designs does not teach away."). Moreover, the mere absence of a claimed limitation in the prior art does not constitute teaching away. *Para-Ordnance Mfg., Inc. v. SGS Imps. Int'l, Inc.*, 73 F.3d 1085, 1090 (Fed. Cir. 1995) ("That the [prior-art reference] does not have [the claimed limitation] does not require a finding that it 'teaches away.'"). Instead, the prior art must "'criticize, discredit, or otherwise discourage investigation into' the claimed invention." *Meiresonne v. Google, Inc.*, 849 F.3d 1379, 1382 (Fed. Cir. 2017) (citation omitted).

The Loomis GKI Tree does not teach away from claim 15's use of coaxial connectors because it uses a two-prong plug, an alternative connector to the "well-known" and "readily available" coaxial barrel connector. Appx2654-2655(1654:25-1655:5). Further, the Loomis GKI Tree does nothing to "criticize, discredit, or otherwise discourage" a skilled artisan's investigation into using coaxial connectors. The industry trend towards LED lights at the time of the '186 patent's filing would have encouraged it. Appx2329-2331(1329:18-1331:8); Appx2672-2673(1672:25-1673:14).

Even so, replacing the two-prong plug with a coaxial connector would not have "destroy[ed] the basic objective" of the Loomis GKI Tree. *Trivascular*,

812 F.3d at 1068-69. The Loomis GKI Tree's "basic objective" was not its notch-and-dimple alignment, as Willis and Dr. Dickens contend. Willis-Br. 39. Instead, Jason Loomis, the Loomis GKI Tree's inventor, testified that the inventive feature was the internal power in the tree's poles. Appx1777-1778(777:11-778:19). The Loomis GKI Tree used incandescent lights and a corresponding connector (i.e., a two-prong plug) due to market demands at the time by companies favoring incandescent over LED lights. Appx1779-1780(779:24-780:11). The notch-and-dimple feature thus was required by the use of incandescent lights and the corresponding two-prong plug needed to power them. Appx1786(786:2-10) ("[I]n this iteration there's a notch in the pole that keep[s] the sockets from coming in contact with the plug.").

Polygroup has not forfeited its challenge to Willis's purported teaching-away argument either. *See* Willis-Br. 40. Willis never raised teaching away in its opposition to Polygroup's JMOL motion or in its opposition to Polygroup's summary-judgment motion on obviousness. Appx15393-15396; Appx15276-15280. The district court also did not address Willis's purported teaching-away argument in its order denying JMOL.[3] Regardless, Willis's teaching-away

[3] Willis suggests that the district court found that "Dr. Dickens 'cogently explained' why Polygroup's proposed modification would not have been obvious due to . . . the prior art's teaching away." Willis-Br. 36 (quoting Appx5-8). This is incorrect. *See generally* Appx5-8.

argument merely repackages Dr. Dickens's opinion that a skilled artisan would not have been motivated to replace the Loomis GKI Tree's two-prong plug with a coaxial connector, *see* Appx2635-2636(1635:25-1636:18) (Dr. Dickens discussing teaching away in response to a question about motivation to combine), which Polygroup squarely addressed in its JMOL briefing and in its opening brief here, Appx15341-15342; Appx15451-15452; Polygroup-Br. 37-44.

### C. Willis's Alleged Evidence of Secondary Considerations Is Not Entitled to a Presumption of Nexus

Willis asserts that its alleged evidence of secondary considerations is entitled to a presumption of nexus because Willis presented "undisputed evidence that its One Plug [t]ree embodies claim 15's patented invention." Willis-Br. 46. But for the presumption to apply, Willis must show that the alleged secondary considerations are "tied to a specific product and that product 'embodies the claimed features, and is *coextensive* with them.'" *Fox Factory, Inc. v. SRAM, LLC*, 944 F.3d 1366, 1373 (Fed. Cir. 2019) (emphasis added) (citation omitted). "When the [product] is not coextensive with the patented invention—for example, if the patented invention is only a component of a commercially successful machine or process"—there is no presumption of nexus. *Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*, 851 F.2d 1387, 1392 (Fed. Cir. 1988).

One Plug trees are not coextensive with claim 15. As Willis acknowledges, some One Plug trees do not have coaxial connectors—they use non-coaxial

connectors (e.g., two-prong plugs). Willis-Br. 62; *see also* Appx1538(538:5-18); Appx7; Appx22. And One Plug trees typically include other unclaimed, high-end features over "non-One Plug trees," such as shape, size, number of tips, and number of lights. Appx2201-2202(1201:12-1202:5); Appx2241(1241:9-21).

Without a presumption of nexus to fall back on, Willis must demonstrate that its "evidence of secondary considerations is the 'direct result of the unique characteristics of the claimed invention.'" *Fox Factory*, 944 F.3d at 1373-74 (citation omitted). But none of Willis's alleged evidence is specifically tied to claim 15's coaxial connectors or the combination of rotational independence with an unclaimed "one-step" electrical and mechanical connection. Willis instead attributes the purported ease of assembly associated with One Plug tree technology generally to claim 15's coaxial connectors. Willis-Br. 46-47. One Plug tree technology, however, does not necessarily include coaxial connectors and refers to "one-step" internal power more broadly. "One-step" internal power is not new or inventive; it had been earlier implemented in products like the Loomis GKI Tree. *See* Appx1813-1815(813:22-815:7).

Relying on the unpatentable limitations of claim 10, Willis attempts to resurrect its secondary-considerations evidence because "this Court has rejected the proposition that 'objective considerations are irrelevant' if 'they are tied to' features disclosed in the prior art." Willis-Br. 49-50 (quoting *WBIP, LLC v. Kohler*

*Co.*, 829 F.3d 1317, 1330-31 (Fed. Cir. 2016)). In *WBIP*, the Court determined only that "the fact that an isolated feature may be present in the prior art may not render irrelevant objective evidence of non-obviousness of that feature in the claimed combination." 829 F.3d at 1330-31. Here, all of claim 10, which covers every aspect of claim 15 except coaxial trunk connectors, has been held unpatentable over the prior art. *See supra* Section I. Additionally, *WBIP* does not apply where the secondary-considerations evidence relates to features in the prior art rather than the claimed combination. *See Yita LLC v. MacNeil IP LLC*, 69 F.4th 1356, 1364-65 (Fed. Cir. 2023). Willis's secondary-considerations evidence is tied to a prior-art feature—internal power—and should be assigned no weight.

***Commercial Success***

Willis contends that the "One Plug [t]ree's commercial success was due to its ease-of-use resulting from the coaxial trunk connectors." Willis-Br. 47. But Willis conflates purported ease of use associated with internal power and One Plug technology generally with claim 15's coaxial connectors.

Willis's profit-margin and price comparisons of trees with the "One Plug feature" to trees without it says little about whether there is a nexus between the alleged commercial success of One Plug trees and claim 15's coaxial connector. Willis-Br. 48. Some One Plug trees do not use coaxial connectors, Appx1538(538:5-18); Appx7; Appx22, and One Plug trees generally have several

high-end features that non-One Plug trees do not have, including internal power, Appx2201-2202(1201:12-1202:5); Appx2241(1241:9-21). Willis's cited testimony fails to account for claim 15's effect on sales and instead refers generally to One Plug technology, i.e., internal power. *See* Appx2260-2261(1260:25-1261:14) (referring generally to "One Plug versus non-One Plug"); Appx1681-1682(681:8-682:6) (Ms. Riley agreeing that comparison of One Plug trees to non-One Plug trees does not account for differences in other features); *see also* Appx1644-1645(644:5-645:4) (failing to address claim 15's effect); Appx12833 (same).

Willis's comparison of Polygroup's Quick Set trees outselling non-Quick Set trees also fails to demonstrate that Quick Set trees were more commercially popular because of the coaxial connector, as opposed to other differences. Appx1300(300:3-8) (Willis's expert explaining the "many differences" between Quick Set trees); Appx2140-2142(1140:12-1142:2) (no "significant drop-offs" in Quick Set sales after removing coaxial connectors in 2019); Appx2106-2113(1106:22-1113:23).

***Copying and Industry Adoption***

Willis's evidence of copying and industry adoption similarly was not tied to claim 15's coaxial connectors or the combination of rotational independence and "one-step" electrical and mechanical connection. Willis-Br. 48. "At most, this

evidence suggests that others sought to emulate the unpatented concept of an internally-powered tree, which cannot support non-obviousness." Appx7.

Nonetheless, Willis failed to demonstrate copying through Polygroup's or any other's "replication of a specific product." *Iron Grip Barbell Co. v. USA Sports, Inc.*, 392 F.3d 1317, 1325 (Fed. Cir. 2004). If anything, without direct evidence of copying, the near simultaneous appearance of other trees with coaxial connectors shortly after the Loomis GKI Tree's success demonstrates obviousness. *See Geo. M. Martin Co. v. All. Mach. Sys. Int'l LLC*, 618 F.3d 1294, 1305-06 (Fed. Cir. 2010).

Willis incorrectly suggests that Polygroup's decision to not appeal the jury's willfulness finding demonstrates that Polygroup "deliberately copied" Willis's One Plug trees. Willis-Br. 48. Unlike Mr. Chen, who, after examining a Loomis GKI Tree trunk section, Appx1558(558:4-16), simply substituted an off-the-shelf coaxial barrel connector for the two-prong plug of the Loomis GKI Tree, Appx1586-1587(586:12-587:5), Polygroup engineers designed their own parts to create a slip-ring connector, Appx1890-1891(890:4-891:23), and continued using their own design even after seeing Willis's, Appx1920(920:17-21). The district court recognized Polygroup's independent development efforts in denying enhanced damages, finding that, "[a]t most, [Willis's] evidence [of copying] indicates a company monitoring a competitor's anticipated patent and aggressively

developing a competing product . . . .” Appx15320. Polygroup therefore had no reason to appeal the jury’s willfulness finding because the court declined to find that Polygroup’s conduct warranted enhanced damages or attorneys’ fees. Appx15325; Appx35-39. Regardless, should this Court reverse the jury’s nonobviousness verdict, the willfulness finding would necessarily fall away.

***Industry Praise***

Willis’s evidence of industry praise at most demonstrates that there was praise for the ease of assembly associated with pre-lit artificial trees having one-step internal power, which was already disclosed by the Loomis GKI Tree. Willis-Br. 48; *see, e.g.*, Appx1496-1497(496:23-497:13) (Lowe’s representative praising One Plug trees’ internal power); Appx2238(1238:11-21) (retailer calling One Plug trees a “game changer” because internal power allowed for “less wiring and connecting”); Appx1493-1494(493:25-494:12); Appx7.

Willis cites testimony from Mr. Chen and Dr. Dickens, but neither ties any alleged praise to coaxial connectors or the combination of rotational independence and a “one-step” connection. Mr. Chen’s testimony discusses the ease of assembling One Plug trees due to there being no “tangl[ing]” or “dangling of the power cord”—known features of one-step internal-power trees like the Loomis GKI Tree. *See, e.g.*, Appx1524-1525(524:22-525:13). Dr. Dickens opined that there was a nexus between the “coaxial design of the trunk connector” and alleged

industry praise, Appx2642(1642:1-10), but admitted that none of the praise mentioned coaxial trunk connectors or rotational independence, Appx2702-2703(1702:22-1703:4).

***<u>Licensing</u>***

Willis fails to demonstrate that any of the four licenses that Willis cites were the direct result of, or limited to, claim 15's coaxial connectors. *See S. Ala. Med. Sci. Found. v. Gnosis S.P.A.*, 808 F.3d 823, 827-28 (Fed. Cir. 2015) (requiring nexus to demonstrate that "the licensing 'arose out of recognition and acceptance of the subject matter claimed' in the patent" (citation omitted)). Lowe's sought an exclusive license on "the One Plug technology generally," Appx1500(500:2-11); *see also* Appx1526(526:8-16), and Botanex and H.S. Craft licensed all 28 claims of the '186 patent, the independent claims of which have since been found unpatentable, Appx1534(534:12-17); Appx1600(600:3-10).

## III. The District Court Abused Its Discretion in Denying Polygroup's Motion for a New Trial

### A. *Georgia-Pacific* Does Not Excuse Ms. Riley's Failure to Apportion

Willis contends that Ms. Riley's *Georgia-Pacific* analysis "*alone* supported her damages opinions and provided a reliable basis for Ms. Riley to apportion damages to claim 15's incremental value." Willis-Br. 54-55. But Ms. Riley's invocation of *Georgia-Pacific* does not magically satisfy apportionment. *See Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1230 (Fed. Cir. 2014) ("[W]e

have never described the *Georgia-Pacific* factors as a talisman for royalty rate calculations . . . ."). "[I]n every case," a patentee is required to apportion "between the patented feature and the unpatented features." *Garretson v. Clark*, 111 U.S. 120, 121 (1884).

Nothing in Ms. Riley's discussion of *Georgia-Pacific* saves her income and market methodologies. She admitted that her *Georgia-Pacific* analysis was limited to "qualitative factors." Appx1655(655:15-22). And for the only five *Georgia-Pacific* factors that she actually discussed before the jury, Ms. Riley simply applied "arrows" indicating upward or downward pressure on her ultimate royalty rate. Appx1655-1656(655:23-656:8); Appx1658(658:12-20); Appx1664(664:14-17); Appx1668(668:4-11); Appx12996. She never "explain[ed] how much each factor affected" her unapportioned income and market approaches. *WhitServe, LLC v. Comput. Packages, Inc.*, 694 F.3d 10, 31 (Fed. Cir. 2012); Appx1668(668:12-16); Appx12996-12997. Ms. Riley's purely qualitative discussion of a few *Georgia-Pacific* factors cannot support any reasonable royalty award, much less the jury's unapportioned damages verdict.

Willis's reliance on *Sprint Communications Co. v. Time Warner Cable, Inc.*, 760 F. App'x 977, 983 (Fed. Cir. 2019), is misplaced. Willis-Br. 54-55. This Court did not affirm Sprint's damages award simply because *Georgia-Pacific* was invoked, but because Sprint's quantitative methodologies correctly reflected

apportionment principles. *Sprint*, 760 F. App'x at 983-84. Moreover, Willis wrongly asserts that Polygroup "does not dispute" that Ms. Riley's invocation of *Georgia-Pacific* necessarily satisfied apportionment principles. Willis-Br. 54-55. Polygroup's challenges to Ms. Riley's income and market approaches squarely address the very *Georgia-Pacific* factors that *Sprint* identified as relevant to satisfying apportionment. *Sprint*, 760 F. App'x at 983-84; Polygroup-Br. 52-67.

### B. Polygroup Did Not Forfeit Its Damages Arguments

Willis repeatedly alleges that Polygroup forfeited "many" of its challenges to Ms. Riley's methodology. Willis-Br. 55, 61-70. But each forfeiture argument lacks merit. Polygroup filed an extensive *Daubert* challenge to Ms. Riley's valuation methods, including her failure to apportion and her failure to account for key differences in allegedly comparable agreements. Appx4198-4218; Appx15187-15199; *Medtronic, Inc. v. Teleflex Innovations S.À.R.L.*, 68 F.4th 1298, 1305 (Fed. Cir. 2023) ("exact phrasing" not required to preserve argument).

Polygroup again argued in its Rule 59 motion that Ms. Riley's income and market approaches could not support the jury's excessive damages award because they were unreliable and failed to apportion down to claim 15's incremental value. Appx15361-15377; Appx15458-15461. But Willis never argued to the district court that Polygroup had forfeited these challenges. Instead, Willis acknowledged that Polygroup's damages arguments were "previously rejected by the Court in

denying Polygroup's *Daubert* motion," Appx15433-15435, and should be rejected "a second time and for the same reasons," Appx15389.

Willis cannot invoke forfeiture now after failing to object before the district court and deliberately arguing the *opposite*. *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1203 (Fed. Cir. 2010) ("Importantly, Finjan did not oppose Defendants' Rule 50(b) motion on waiver grounds, thereby itself waiving this objection."). Moreover, the court did not conclude that any of Polygroup's challenges to Ms. Riley's methodologies had been forfeited. Appx21-27. Even if Polygroup had made damages arguments for the first time in its Rule 59 motion, this Court and the Eighth Circuit have recognized that "[t]he text of Rule 59 does not require a preverdict motion." *Bank of Am., N.A. v. JB Hanna, LLC*, 766 F.3d 841, 851 (8th Cir. 2014); *Finjan*, 626 F.3d at 1203.

### C. The District Court Failed Its Gatekeeping Obligation Under Fed. R. Evid. 702

Willis never confronts the district court's finding that Ms. Riley "did little to address how the inclusion of additional patents in the H.S. Craft license"—"[t]he most significant license [she] relied on"—"affected its comparability to the hypothetical negotiation." Appx25. Nor does Willis tackle the court's erroneous conclusion that Ms. Riley was not required to "dissect profits," Appx23, down to claim 15's incremental value alone.

Instead, Willis spins the district court's "doubts about the comparability of the licenses that Ms. Riley considered," Appx23, and other "various potential flaws and weaknesses," Appx30-31, in its damages case as "factual questions" for the jury. Willis-Br. 56-57. But "the sufficiency of an expert's basis" and "the application of the expert's methodology" are questions of *admissibility*, not weight. Fed. R. Evid. 702 advisory committee's note to 2023 amendment; Polygroup-Br. 63-66. It is not enough to offer generic *ipse dixit* testimony that apportionment is "built-in" or otherwise accounted for and leave the rest to the jury. *Omega Pats., LLC v. CalAmp Corp.*, 13 F.4th 1361, 1379, 1381 (Fed. Cir. 2021). The court abandoned its gatekeeping obligation in allowing Ms. Riley to present her unapportioned damages methodologies at trial. *See Ericsson*, 773 F.3d at 1226, 1233.

### D. Ms. Riley Was Required to Apportion the Incremental Value Attributable to Claim 15 Only, Excluding the Value Attributable to Unpatentable Claim 10

Willis admits that Ms. Riley did not exclude "the value of a rotationally-independent, one-step mechanical and electrical connection." Willis-Br. 57-58. According to Willis, it would have been "illogical and contrary to law" for Ms. Riley to do so "because no court has ever found that to have been in the prior art." *Id.*

But even if a one-step connection were required, *see supra* Section I, a rotationally independent, one-step mechanical and electrical connection would be the invention of *unpatentable* claim 10. *See supra id.* Accordingly, the '186 patent does not grant Willis the right to exclude *all* lighted artificial trees featuring a rotationally independent, one-step mechanical and electrical connection. At most, Willis's alleged right to exclude is limited to a specific embodiment using a coaxial trunk connector as recited in dependent claim 15. Yet Ms. Riley admittedly made no attempt to apportion claim 15's incremental value over the value of unpatentable claim 10. Willis-Br. 57-58. Even setting aside unpatentable claim 10, she failed to isolate claim 15's value over the internal-power and one-step connection features already found in the Loomis GKI Tree.

These errors are fatal to her entire opinion. Willis's attempts to distinguish *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324 (Fed. Cir. 2015), and *Prolitec* only highlight Ms. Riley's failure to properly apportion. Willis-Br. 58-59. While Willis pays lip service to the undisputed principle that "damages stemming from infringement of the dependent claims are confined to the value added by those claims, excluding the value associated with the invalidated [independent] claims," Willis-Br. 58 (alteration in original) (quoting *Prolitec*, 2023 WL 8697973, at *12), Willis pretends that this Court left some part of claim 10 intact—an embodiment with "*simultaneous*[]" mechanical and electrical connection. Willis-Br. 58. But that

is not how invalidation works—claim 10 was *canceled* in its entirety. *See supra* Section I. Ms. Riley was necessarily required to "exclude[] the value associated with invalidated [claim 10]." *Prolitec*, 2023 WL 8697973, at *12.

Similarly, "account[ing] for the relative value of the patentee's invention in comparison to the value of the conventional elements recited in the claim, standing alone," requires accounting for this Court's invalidation of claim 10 over the prior art. *AstraZeneca*, 782 F.3d at 1338. Willis does *not* have the right to exclude others from practicing the combined elements of unpatentable claim 10 alone. Nothing in Ms. Riley's qualitative *Georgia-Pacific* analysis at trial—much less her expert report[4]—provides the jury with this missing apportionment. *See supra* Section III.A; Willis-Br. 59. Nor does the jury being instructed on apportionment absolve Ms. Riley of her obligation under Rule 702 to present the jury with a reliable apportionment methodology. *See* Willis-Br. 60.

Willis contends that even if its invention were limited to claim 15 alone, the coaxial trunk connector "'substantially create[d] the value' of the One Plug [t]ree by enabling mechanical and electrical connection at the same time regardless of the

[4] Ms. Riley's report was never admitted into evidence and the jury was not permitted to rely on it. Appx1085-1087(85:18-87:8). Willis's assertions notwithstanding, nothing in Fed. R. Evid. 705 or *Global Traffic Technologies LLC v. Morgan*, 620 F. App'x 895 (Fed. Cir. 2015), allows parties on appeal to rely on unadmitted expert reports for opinions that were never presented to the jury. *See* Willis-Br. 59-65, 67-69 (relying on Ms. Riley's unadmitted report).

rotational orientation." Willis-Br. 59 (first alteration in original) (quoting *AstraZeneca*, 782 F.3d at 1339). But none of the testimony cited by Willis shows that a coaxial trunk connector added value to customers beyond unpatentable claim 10. *See id.*

### E. Ms. Riley's Income Approach Failed to Apportion Claim 15's Incremental Value from Unpatented Features

#### 1. Ms. Riley Failed to Apportion One Plug Profits Attributable to Claim 15's Incremental Value

Nothing about Ms. Riley's skewed $20 profit premium for One Plug trees reflects the incremental value attributable to claim 15. Polygroup-Br. 52-54. It is not enough that Ms. Riley picked a "period right before the hypothetical negotiation" to make her unapportioned comparison. Willis-Br. 61. Ms. Riley never established that her alleged profit margin for Willis's relatively low sales of overpriced trees in 2012 and 2013 featuring "One Plug" internal power was entirely attributable to claim 15's alleged invention rather than other unpatentable features. Appx1646-1647(646:5-647:8); *see also* Appx2514(1514:9-18); Appx2513-2517(1513:16-1517:9); Appx1487(487:12-24); Appx2608(1608:2-19). Nor did she show that Polygroup's alleged infringement of claim 15 alone "eroded the Willis profit premium that it had achieved for that early time period." Willis-Br. 61 (quoting Appx1646-1647(646:1-647:10)); *see also* Appx1687-1689(687:19-689:10).

Willis admits that not all One Plug trees use coaxial trunk connectors. Willis-Br. 61-62. Relying on a footnote buried in her unadmitted report, Willis contends that Ms. Riley accounted for this fact because she "expressly *excluded* One Plug [t]rees lacking coaxial trunk connectors from her calculation." Willis-Br. 62 (citing Appx4486 n.9). But excluding them was not enough—Willis presented no evidence that customers would pay more for One Plug trees that practiced claim 15 than for otherwise identical One Plug trees that used non-coaxial connectors.

Unadmitted "exhibit 10.2" to Ms. Riley's report further underscores that she never made an apples-to-apples comparison. Willis-Br. 62-63. At most, Ms. Riley aggregated the profit from One Plug and non-One Plug trees and compared the difference. Appx1644-1645(644:5-645:13). She never accounted for the fact—which Willis has not disputed—that One Plug trees had other high-end features that non-One Plug trees lacked. Appx1681-1682(681:8-682:6); Appx2241(1241:9-21) (explaining that "[s]hape, size, number of tips, number of lights, et cetera," determine differences in cost between One Plug and non-One Plug trees). And she did not determine what portion of the alleged profit margin was attributable solely to claim 15's coaxial trunk connector rather than unpatentable claim 10 or features already found in the Loomis GKI Tree (e.g., a one-step connection and internal power). *See supra* Sections I, III.D; Polygroup-Br. 5-8, 52-54. The only survey

admitted at trial confirmed that connector type does not affect value. Appx2453-2471(1453:6-1471:25) (Polygroup's expert, Dr. Simonson).[5]

#### 2. Ms. Riley Failed to Apportion Quick Set Profits Attributable to Claim 15's Incremental Value

Willis blames Polygroup for Ms. Riley's reliance on *quotes* as a proxy for Quick Set profits. Willis-Br. 63-65. But none of Willis's excuses changes the fact that mere quotes were an unreliable measure of Willis's actual profit margin of adding the Quick Set features. *See* Polygroup-Br. 54-57; Appx1649-1651(649:14-651:10); Appx4780-4781; Appx2105(1105:6-17); Appx2131-2135(1131:19-1135:6); Appx4778-4779; Appx2134(1134:14-20); Appx2169-2170(1169:22-1170:23). Moreover, Ms. Riley failed to weigh sales volumes—including that Polygroup sold very few 15-foot trees, which had higher profit margins—in determining her "average" margin. Polygroup-Br. 55; Appx2131-2132(1131:14-1132:4); Appx2170(1170:5-13); Appx2171(1171:12-16); *see also* Appx1650-1651(650:18-651:10). The only reliable evidence at trial showed that Polygroup's incremental profit margins for adding the Quick Set features ranged from $0.25-$0.35 per tree. Appx2135(1135:11-24); Appx2512-2513(1512:9-1513:15).

---

[5] Ms. Riley's passing mention of the unreliable and unadmitted Hal Poret survey does nothing to show the amount of One Plug tree profit attributable to claim 15. Willis-Br. 63 (citing Appx1661-1662(661:16-662:5)); Appx2474-2476(1474:6-1476:10); Appx15376-15377.

Even more troubling, Willis admits that Ms. Riley made no effort to show that her entire profit margin for Quick Set features was specifically attributable to claim 15's coaxial trunk connector. Willis-Br. 57-58, 65. Instead, Willis points to features of invalid claim 10 that it has no right to exclude or features of the Loomis GKI Tree. Willis-Br. 65; *see supra* Sections I, III.D; *Prolitec*, 2023 WL 8697973, at *12. Ms. Riley also ignored the contribution of unique Quick Set features, including the clutch system and sleeving. Polygroup-Br. 14-15; Appx1890-1893(890:4-893:23); Appx1926(926:3-24). And she failed to account for other features—like shape, height, number of branch tips, memory wire, and an array of different lighting options—that impacted profit premiums for trees with Quick Set. Appx2106-2113(1106:22-1113:23); Appx1300(300:3-8).

### F. No Agreement Underlying Ms. Riley's Market Approach Provides "Built-In" Apportionment Down to Claim 15's Incremental Value

This Court requires parties to meaningfully "account for" differences between allegedly comparable licenses and the license resulting from the hypothetical negotiation. *Apple Inc. v. Wi-LAN Inc.*, 25 F.4th 960, 971-74 (Fed. Cir. 2022). "[F]or built-in-apportionment to apply," a party must prove that an agreement is "sufficiently comparable" such that apportionment is effectively "baked in[]." *Omega*, 13 F.4th at 1377 (citation omitted). Ms. Riley's market approach failed on both counts. Polygroup-Br. 57-63.

Willis does not dispute that Ms. Riley failed to address the H.S. Craft agreement's inclusion of two additional patents and five pending patent applications across three patent families. Willis-Br. 66-68; Appx25; Appx4775; Appx1597-1600(597:21-600:10). Instead, Willis argues that *Omega* is distinguishable because the license agreements there covered more patents. Willis-Br. 67. But nothing in *Omega* turned on the specific number of additional patents in a particular agreement; this Court vacated the damages award because Omega had failed to meet "its obligation to account for such distinguishing facts in invoking the licenses to value the [asserted] patent." 13 F.4th at 1380-81 (citation omitted). Like the expert in *Omega*, Ms. Riley failed to account for the impact of other patent rights in invoking the H.S. Craft agreement. Appx1653(653:7-20). Neither Ms. Riley's unreliable income approach nor her qualitative up-or-down application of a few *Georgia-Pacific* factors redeems her failure to apportion the H.S. Craft agreement's $2 rate down to claim 15's incremental value. Willis-Br. 68.

Ms. Riley further failed to provide the jury with any evidence apportioning the value of the GKI and Boston Warehouse agreements with Loominocity to claim 15's incremental value. Willis-Br. 68-69. These agreements did not involve Willis or Polygroup, let alone the '186 patent. Appx4782-4788; Appx4796-4813. Ms. Riley also failed to account for other dissimilar circumstances between these

agreements and the hypothetical negotiation. Polygroup-Br. 60-62. For example, the GKI agreement included a 5% royalty rate for developing entirely new products before Mr. Loomis had even invented the internal-power pole. Appx1853(853:5-24); Appx1854(854:12-21); Appx1855(855:2-16); Appx1116(116:2-5); Appx4788. And the Boston Warehouse agreement was not a new agreement, but a continuation of an existing business relationship with GKI on the same historical terms. Appx1843-1844(843:14-844:21); Appx1856-1857(856:1-857:8); Appx4796-4813. Even assuming that the Loomis patent is "technologically comparable" to the '186 patent, Willis-Br. 68-69, that is not sufficient to show that the GKI and Boston Warehouse agreements feature "'built-in' apportionment" down to claim 15's incremental value, *see* Appx23-24 (citation omitted).

## CONCLUSION

This Court should reverse the district court's denial of JMOL that claim 15 is invalid for obviousness. Alternatively, this Court should vacate the judgment and remand for a new trial on damages.

## COSTS

Willis alleges that Polygroup is "a multibillion-dollar conglomerate." Willis-Br. 2. And in opposing Polygroup's arguments before the district court that a bond was unnecessary and wasteful, Willis acknowledged that "Polygroup may seek to

recoup the bond premium costs after appeal." Appx4696. For the reasons previously stated, Polygroup-Br. 67-68, Willis should bear the costs of the bond.

Date: December 18, 2024

Respectfully submitted,

/s/ J. Michael Jakes

J. Michael Jakes
Jason L. Romrell
Ryan V. McDonnell
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001-4413
(202) 408-4000

Rachel Zimmerman Scobie
MERCHANT & GOULD P.C.
150 South Fifth Street
Suite 2200
Minneapolis, MN 55402
(612) 332-5300

*Counsel for Defendants-Appellants*

FORM 19. Certificate of Compliance with Type-Volume Limitations

Form 19
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2024-2118

**Short Case Caption:** Willis Electric Co., Ltd. v. Polygroup Ltd. (Macao Commercial Offshore)

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

- [x] the filing has been prepared using a proportionally-spaced typeface and includes 6,999 words.
- [ ] the filing has been prepared using a monospaced typeface and includes __________ lines of text.
- [ ] the filing contains __________ pages / __________ words / __________ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. __________).

Date: 12/18/2024

Signature: /s/ J. Michael Jakes

Name: J. Michael Jakes