WILMERHALE

February 25, 2025

**Mark C. Fleming**

+1 617 526 6909 (t)
+1 617 526 5000 (f)
mark.fleming@wilmerhale.com

**VIA CM/ECF**
Hon. Jarrett B. Perlow
Circuit Executive and Clerk of Court
U.S. Court of Appeals for the Federal Circuit
717 Madison Place, NW
Washington, DC 20439

Re: *Willis Electric Co., Ltd. v. Polygroup Ltd. (Macao Commercial Offshore)*, No. 2024-2118
Letter pursuant to Fed. R. App. P. 28(j)

Dear Mr. Perlow:

Appellee Willis Electric respectfully advises the Court of the precedential decisions in *DDR Holdings, LLC v. Priceline.com LLC*, 122 F.4th 911 (Fed. Cir. 2024), and *Kroy IP Holdings, LLC v. Groupon, Inc.*, ___ F.4th ___, No. 2023-1359 (Fed. Cir. Feb. 10, 2025).

In *DDR*, this Court affirmed the district court's construction of a claim term under the *Phillips* standard and found the appellee was not collaterally estopped by a different construction of the same term in a parallel inter partes review. The Court confirmed that "a party is not collaterally estopped in district court proceedings by the Board's constructions during IPR" because "the Board applies the broadest reasonable construction of the claims while the district courts apply a different standard of claim construction as explored in *Phillips*." 122 F.4th at 918-919.

In *Kroy*, this Court held that the affirmance of the Board's unpatentability decision does not collaterally estop a patentee from asserting different claims from the same patent, even if the different claims are materially identical for purposes of invalidity. Slip op. 5, 7-8. The Court relied on the different burdens of proof applied by the Board and the district court.

Together, *DDR* and *Kroy* support Willis Electric's position that this Court's decision holding claim 10 unpatentable in *Polygroup Ltd. MCO v. Willis Electric Co.*, 2022 WL 1183332 (Fed. Cir. Apr. 20, 2022)—which rested on a broadest reasonable construction that permitted "the mechanical and electrical connection [to] be made independently"—did not collaterally estop Willis Electric from arguing that the prior art did not teach claim 15's "independent of the rotational orientation" limitation under the district court's narrower *Phillips* construction. Accordingly, under *DDR* and *Kroy*, the collateral estoppel effect of this Court's decision holding claim 10 unpatentable is limited to the unpatentability of claim 10, which is unasserted here. The Court's ruling regarding claim 10 does not resolve the question whether the prior art taught claim 15's "independent of the rotational orientation" limitation under the district court's operative construction, which Polygroup has not challenged on appeal. *See* Appellee's Br. 33-35, 57-58.

Respectfully submitted,

/s/ *Mark C. Fleming*
Mark C. Fleming

Encls.

cc: Counsel of Record (via ECF)

Because the district court did not clearly err in finding Lupin's ANDA Product does not infringe the Asserted Patents, we affirm.

**AFFIRMED**

**DDR HOLDINGS, LLC, Plaintiff-Appellant**

**v.**

**PRICELINE.COM LLC, Booking.com B.V., Defendants-Appellees**

**2023-1176, 2023-1177**

United States Court of Appeals, Federal Circuit.

Decided: December 9, 2024

**Background:** Patentee sued operators of travel-related websites alleging infringement of four patents related to e-commerce. The suit was stayed during inter partes review (IPR) of all four patents, which concluded with the Patent Trial and Appeal Board's (PTAB) determination that all claims of three of the four patents were unpatentable. The stay was lifted as to the one surviving patent, which was directed to generating, in an e-commerce system, a composite web page that combines, by means of an outsource provider, certain visual elements of a host website with content from a third-party merchant. After the United States District Court for the District of Delaware, Colm F. Connolly, Chief Judge, construed certain disputed patent claim terms, the parties stipulated to non-infringement in light of the claim construction, and the court entered final judgment on the stipulation. Patentee appealed.

**Holdings:** The Court of Appeals, Chen, Circuit Judge, held that:

(1) claim term "merchants" was properly construed to mean producers, distributors, or resellers of the goods to be sold, not of services;

(2) collateral estoppel arising from IPR did not bar district court from treating as definitional patent specification's description of merchants as purveyors of goods, not services;

(3) patentee forfeited its collateral-estoppel argument both in the district court and on appeal; and

(4) claim term "commerce object" was properly construed to mean a product, a product category, a catalog, or an indication that a product, product category, or catalog should be chosen dynamically.

Affirmed.

**1. Patents ⚷1970(13)**

The Federal Circuit reviews claim construction based on intrinsic evidence de novo and reviews any findings of fact regarding extrinsic evidence for clear error.

**2. Patents ⚷1317, 1341**

Patent claim terms are generally given their plain and ordinary meanings to one of skill in the art when read in the context of the specification and prosecution history.

**3. Patents ⚷1331, 1338(4), 1343**

There are only two exceptions to the general rule that patent claim terms are given their plain and ordinary meanings to one of skill in the art when read in the context of the specification and prosecution history: (1) when a patentee sets out a definition and acts as his own lexicographer, or (2) when the patentee disavows

the full scope of a claim term either in the specification or during prosecution.

**4. Patents ⚷1395**

Claim term "merchants" in patent directed to generating, in an e-commerce system, a composite web page that combines certain visual elements of a host website with content from a third-party merchant was properly construed to mean producers, distributors, or resellers of the goods to be sold, not of services, where the provisional application had discussed merchants as both purveyors of "goods" and purveyors of "products or services," but in the patent specification, the reference to "products or services" had been deleted and the patent instead discussed merchants as purveyors of "goods" alone.

**5. Patents ⚷1313, 1341**

When construing patent claims, a court looks to how a skilled artisan would read the claim term in the context of the entire patent, including the specification and prosecution history.

**6. Patents ⚷1101**

Collateral estoppel arising from Patent Trial and Appeal Board's (PTAB) claim construction during inter partes review (IPR) did not bar district court—in patentee's suit against website operator alleging infringement of patent directed to generating, in an e-commerce system, a composite web page that combines certain visual elements of a host website with content from a third-party merchant—from treating as definitional patent specification's description of merchants as purveyors of goods, not services, even though PTAB had determined that the description was not definitional, where PTAB had applied the broadest-reasonable-interpretation standard, and district court applied the claim-construction standard of *Phillips v. AWH Corporation*, 415 F.3d 1303.

**7. Patents ⚷1843, 1964**

Patentee forfeited—both on appeal and in the underlying district-court suit alleging that website operator infringed patentee's patent directed to generating, in an e-commerce system, a composite web page that combines certain visual elements of a host website with content from a third-party merchant—its argument that website operator was collaterally estopped from arguing that patent's specification contained a definition, where patentee had not mentioned estoppel or preclusion in its briefs in the district court, and patentee had not raised its collateral-estoppel argument in its opening appellate brief.

**8. Federal Courts ⚷3733**

Arguments not raised in an opening appellate brief are forfeited on appeal.

**9. Patents ⚷1101**

Neither the Federal Circuit nor a district court is bound by claim constructions made by the Patent Trial and Appeal Board (PTAB) under the broadest-reasonable-interpretation standard.

**10. Patents ⚷1101**

Because the Patent Trial and Appeal Board (PTAB), in proceedings predating its adoption of the claim-construction standard in *Phillips v. AWH Corporation*, 415 F.3d 1303, applies the broadest reasonable construction of the claims while district courts apply the *Phillips* standard, a party is not collaterally estopped in district-court proceedings by the PTAB's constructions made during inter partes review (IPR) before its adoption of the *Phillips* standard.

**11. Patents ⚷1395**

Claim term "commerce object" in patent directed to generating, in an e-commerce system, a composite web page that combines certain visual elements of a host website with content from a third-party

merchant was properly construed to mean a product, a product category, a catalog, or an indication that a product, product category, or catalog should be chosen dynamically.

**Patents ⟹2091**

7,818,399. Construed and Not Infringed.

---

Appeals from the United States District Court for the District of Delaware in Nos. 1:17-cv-00498-CFC-JLH, 1:17-cv-00499-CFC, Chief Judge Colm F. Connolly.

Ian B. Crosby, Susman Godfrey LLP, Seattle, WA, argued for plaintiff-appellant. Also represented by Shawn Daniel Blackburn, Meng Xi, Houston, TX; Louis James Hoffman, Hoffman Patent Firm, Scottsdale, AZ.

Lauren J. Dreyer, Baker Botts LLP, Washington, DC, argued for defendants-appellees. Also represented by Margaret McInerney Welsh, New York, NY; Jeremy Taylor, San Francisco, CA; Francis DiGiovanni, Faegre Drinker Biddle & Reath LLP, Wilmington, DE.

Before Chen, Mayer, and Cunningham, Circuit Judges.

Chen, Circuit Judge.

DDR Holdings, LLC (DDR) appeals a final judgment of the United States District Court for the District of Delaware of non-infringement of U.S. Patent No. 7,818,399 ('399 patent) for Priceline.com LLC and Booking.com B.V. (collectively, Priceline.com or Appellees). DDR alleges that the district court erred in construing the claim term "merchants" to be limited to purveyors of goods alone, rather than purveyors of goods and services. DDR also alleges that the district court erred in construing the related claim term "commerce object" to include goods, but not services. For the reasons below, we *affirm.*

## Background

### A. The '399 Patent

As this court has previously summarized, the '399 patent relates to generating a composite web page that combines certain visual elements of a "host" website with content from a third-party "merchant." *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1248 (Fed. Cir. 2014). The e-commerce system disclosed in the '399 patent involves "three main parties" aside from the end consumer: merchants, hosts, and outsource providers. '399 patent col. 22 ll. 9–12. "Merchants are the producers, distributors, or resellers of the goods to be sold through the outsource provider." *Id.* col. 22 ll. 17–19. "A Host is the operator of a website that engages in Internet commerce by incorporating one or more link[s] to the e-commerce outsource provider into its web content." *Id.* col. 22 ll. 45–47. Finally, the outsource provider is an intermediary between the host and merchant that "[c]reate[s], maintain[s], and update[s] the 'look & feel capture' process through which consumers are able to shop in a Merchant-controlled storefront within the design and navigational context of the Host website, preserving the ownership of the visit experience by the Host." *Id.* col. 22 l. 60 – col. 23 l. 7. Through the outsource provider, the disclosed system enables host websites to retain visitor traffic and control the customer experience while displaying information on products from third-party merchants. *See id.* col. 2 ll. 57–67.

Claim 1 is representative and recites:

1. A method of an outsource provider serving web pages offering commercial opportunities, the method comprising:

(a) automatically at a server of the outsource provider, in response to activa-

tion, by a web browser of a computer user, of a link displayed by one of a plurality of first web pages, recognizing as the source page the one of the first web pages on which the link has been activated;

(i) wherein each of the first web pages belongs to one of a plurality of web page owners;

(ii) wherein each of the first web pages displays at least one active link associated with a *commerce object* associated with a buying opportunity of a selected one of a plurality of *merchants*; and

(iii) wherein the selected merchant, the outsource provider, and the owner of the first web page are each third parties with respect to one other;

(b) automatically retrieving from a storage coupled to the server pre-stored data associated with the source page; and then

(c) automatically with the server computer-generating and transmitting to the web browser a second web page that includes:

(i) information associated with the commerce object associated with the link that has been activated, and

(ii) a plurality of visually perceptible elements derived from the retrieved pre-stored data and visually corresponding to the source page.

*Id.* at claim 1 (emphases added).

B. Procedural History

DDR sued Priceline.com in 2017 for infringement of four patents, including the '399 patent. Priceline.com petitioned the Patent Trial and Appeal Board (Board) for *inter partes* review (IPR) of all four asserted patents. The parties stipulated to stay the district court proceedings pending resolution of the IPRs. The Board found all challenged claims of three of the asserted patents to be unpatentable. However, the Board found that the challenged claims of the '399 patent were not shown to be unpatentable. Although its patentability analysis did not turn on the meaning of "merchants," the Board applied the "broadest reasonable interpretation" standard to construe "merchants" as "producers, distributors, or resellers of the *goods or services* to be sold." J.A. 707–08, 736; J.A. 748–49 (emphasis added).

Following the IPR decisions, the district court lifted the stay and proceeded with claim construction for the '399 patent. As relevant to this appeal, the parties disputed the constructions of the claim terms "merchants" and "commerce object." DDR proposed that "merchants" be construed as "producers, distributors, or resellers of the *goods or services* to be sold." J.A. 1288 (emphasis added). Priceline.com proposed that "merchants" be construed as "producers, distributors, or resellers of the *goods* to be sold through the outsource provider." *Id.* (emphasis added). The district court construed "merchants" as "producers, distributors, or resellers of the *goods* to be sold." J.A. 9 (emphasis added).

Additionally, DDR proposed that "commerce object" be construed as "a product (goods or services), a product category, a catalog, or an indication that [a] product (goods or services), product category, or catalog should be chosen dynamically." J.A. 1290. Priceline.com proposed that "commerce object" be construed as "a product, a product category, a catalog, or an indication that a product, product category, or catalog should be chosen dynamically." *Id.* Noting that the word "products" is not a claim term, the district court found "as a matter of fact that the ['399 patent's] written description treats 'goods' and 'product' interchangeably, and it distinguishe[s] them [from] 'services.' " J.A. 1357 l. 21 – 1358 l. 11. The district court then

adopted Priceline.com's proposed construction, effectively construing "commerce object" to exclude "services." J.A. 9.

Following the court's claim construction order, the parties stipulated to non-infringement, "agree[ing] that the Accused Instrumentalities do not infringe the asserted claims of the '399 Patent under the Court's claim constructions and that the Court's construction of either the term 'merchants' or the term 'commerce object' is case-dispositive in Defendants' favor on the issue of infringement." J.A. 5. The court entered final judgment, from which DDR appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## Discussion

### I.

**[1–3]** "We review claim construction based on intrinsic evidence de novo and review any findings of fact regarding extrinsic evidence for clear error." *SpeedTrack, Inc. v. Amazon.com*, 998 F.3d 1373, 1378 (Fed. Cir. 2021). "Claim terms are generally given their plain and ordinary meanings to one of skill in the art when read in the context of the specification and prosecution history." *Golden Bridge Tech., Inc. v. Apple Inc.*, 758 F.3d 1362, 1365 (Fed. Cir. 2014) (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc)). "There are only two exceptions to this general rule: 1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." *Id.* (quoting *Thorner v. Sony Comput. Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012)).

### II.

We turn first to the construction of "merchants." The parties' dispute over this term hinges on the variance in disclosures made between the '399 patent's written description and the provisional application [1] to which the patent claims priority.

The provisional application, which appears to be a marketing document for a company called Nexchange, describes "an alternative approach" to e-commerce that "lets merchants take advantage of the Internet marketing competency of third-party website operators." J.A. 868. The provisional application includes a section entitled "Products and Services," under which it states: "There are three main parties in every Nexchange relationship, excluding the end consumer. These parties include Nexchange Merchants, Nexchange Hosts, and Nexchange." *Id.* at 870. The provisional application continues, "Nexchange Merchants are the producers of the *goods* to be sold through Nexchange." *Id.* (emphasis added). Under a separate section entitled "Value Propositions," the provisional application provides: "Merchants, defined as producers, manufacturers, and select distributors of *products or services*, are strongly attracted to the sales potential of the Internet." *Id.* at 875–76 (emphasis added). The provisional application thus discusses merchants as producers of "goods" in one instance, and "products or services" in another.

The specification of the '399 patent provides certain parallel disclosures. The '399 patent discloses: "There are three main parties in the outsourced e-commerce relationship, excluding the end consumer. These parties include Merchants, Hosts, and the e-commerce outsource provider." '399 patent col. 22 ll. 9–12. The patent,

1. U.S. Provisional Patent App. No. 60/100,-697.

under the heading "Merchants," further provides: "Merchants are the producers, distributors, or resellers of the *goods* to be sold through the outsource provider." *Id.* col. 22 ll. 15–18 (emphasis added). Notably missing from the patent's specification, however, is any mention of *services* in relation to merchants. There is no disclosure in the specification analogous to the provisional application's disclosure that "[m]erchants [are] defined as producers, manufacturers, and select distributors of *products or services*."

[4] During the claim construction hearing, the district court began by looking at the claim language and noting there is "no reference to services." J.A. 1418 ll. 24–25. The district court next looked at the written description and determined it contains "no references to a merchant providing a service"; "[i]nstead, merchants are always discussed with respect to products or goods." *Id.* at 1418 l. 25 – 1419 l. 3. In discussing the sentence in the provisional application that "merchants" are "defined as producers, manufacturers, and select distributors of products or services," J.A. 876, the district court noted that the "deletion from the written description [of the '399 patent] of a term that was in the provisional application .... contributes to an understanding of what the scope and meaning of the final application, the final written description reflects." J.A. 1420 l. 17 – 1421 l. 15. The district court subsequently construed "merchants" as "producers, distributors, or resellers of the goods to be sold." J.A. 9.

DDR argues on appeal that it acted as its own lexicographer by providing, in the provisional application, an "explicit definition" of "merchants" to include "both goods and services," as well as making this definition an "explicit part" of the '399 patent specification by incorporating the provisional application by reference. Appellant's Br. 11–12 (internal quotation marks omitted). According to DDR, the '399 patent specification never disclaimed or redefined the provisional application's definition because the relevant sentence in the specification—"Merchants are the producers, distributors, or resellers of the goods to be sold through the outsource provider"—is not definitional, as it does not use the phrase "defined as" or set off the term "merchants" by quotation marks. *Id.* at 13–16. DDR does not offer an explanation as to why, compared to the provisional application, the '399 patent omitted the term "services" from its specification.

[5] Like the district court, we find DDR's arguments unpersuasive. When construing claims, this court looks to how a skilled artisan would read the claim term "in the context of the entire patent," including the specification and prosecution history. *Phillips*, 415 F.3d at 1313. Here, the deletion made by the patent drafter between the provisional application and the patent specification is highly significant. Although DDR's provisional application discussed merchants as both purveyors of "goods" and purveyors of "products or services," DDR elected in its patent specification to delete the reference to "products or services" and instead discuss merchants as purveyors of "goods" alone. A skilled artisan would understand this progression between the provisional application and the patent specification to indicate an evolution of the applicant's intended meaning of the claim term, which is further reinforced by the specification's clear statement that "[m]erchants are the producers, distributors, or resellers of the *goods* to be sold through the outsource provider," '399 patent col. 22 ll. 17–18. In light of the patentee's deletion of any reference to merchants providing "services" in the final specification, we agree with the

district court's construction that "merchants" are purveyors of goods, not services.

This court performed a similar analysis in *MPHJ Technology Invs., LLC v. Ricoh Americas Corp.*, 847 F.3d 1363 (Fed. Cir. 2017). In *MPHJ*, an appeal from an IPR proceeding before the Board, the patent owner argued that the claim term "seamless" required "a one-step operation without human intervention." *Id.* at 1366. For support, the patent owner relied on the provisional application (to which the patent-at-issue claimed priority), which included two statements on " 'one step' operation using a single button." *Id.* at 1368. The petitioner countered that those statements in the provisional application were omitted from the final application, which instead described single-step operation as "optional." *Id.* at 1368–69. In response, the patent owner argued that "these omitted sections were not explicitly disclaimed, and therefore . . . they are part of the prosecution history and are properly relied on to explain and limit the claims, even if the passages do not appear in the issued patent." *Id.* at 1368.

The *MPHJ* court determined that, in light of the "deletion from the . . . [p]rovisional application," a skilled artisan "would deem the removal of these limiting clauses to be significant." *Id.* at 1369. Considering both "the change from the . . . [p]rovisional to the final patent," and the statements in the final patent that single-step operation was "optional," the court concluded that a "person skilled in this field would reasonably conclude that the inventor intended that single-step operation would be optional, not obligatory." *Id.*

Here, too, we determine that a skilled artisan would deem significant the '399 patent specification's deletion of the provisional application's reference to merchants as purveyors of services. Reading the claim term "in the context of the entire patent," *Phillips*, 415 F.3d at 1313, including the deletion, a skilled artisan would have understood "merchants" to exclude services. Accordingly, we affirm the district court's construction of "merchants" as "producers, distributors, or resellers of the goods to be sold."

Our conclusion is not undermined by the fact that the '399 patent specification incorporates by reference the provisional application. *See* '399 patent col. 1 ll. 13–15. DDR argues that no "deletion" took place because the '399 patent's incorporation of the provisional application results in "one document," in which neither the written description on the face of the patent nor the incorporated provisional application "supersedes or amends its counterpart." Appellant's Br. 9, 16–17.

This court has explained, however, that when a host patent incorporates another patent by reference, "the disclosure of the host patent provides context to determine what impact, if any, a patent incorporated by reference will have on construction of the host patent claims." *Finjan LLC v. ESET, LLC*, 51 F.4th 1377, 1382 (Fed. Cir. 2022). In *Finjan*, this court explained that "[t]he use of a restrictive term in an earlier application does not reinstate that term in a later patent that purposely deletes the term, even if the earlier patent is incorporated by reference." *Id.* at 1383 (citing *Modine Mfg. Co. v. U.S. Int'l Trade Comm'n*, 75 F.3d 1545, 1553 (Fed. Cir. 1996)). The same principle holds here. A skilled artisan reading the incorporated provisional application in the context of the '399 patent specification would consider that "merchants" providing "services" was included in the provisional application, yet deleted by the patent drafter from the final specification. That deletion, which "was conspicuous and unambiguous," *Modine*, 75 F.3d at 1552, would in turn indicate

to a skilled artisan that the patentee intended "merchants" to exclude services.

**[6]** We next address DDR's argument, made in its reply brief, that Priceline.com is "collaterally estopped from even suggesting that the nonprovisional contains a definition" because "Appellees already litigated—and lost—that precise issue before the [Board]." Appellant's Reply Br. 24. DDR refers to the Board's determination that the specification's statement—that "[m]erchants are the producers, distributors, or resellers of the goods to be sold through the outsource provider"—is not definitional "because the statement does not sufficiently evidence an intention by the patent [a]pplicant to depart from the ordinary meaning of the term." J.A. 748. After making that determination, the Board adopted the patent owner's (i.e., DDR's) definition of merchants as "producers, distributors, or resellers of the goods or services to be sold," reasoning that such definition was "broader and not unreasonable." J.A. 749 (citation omitted).

**[7, 8]** As an initial matter, DDR forfeited this argument both on appeal and in the underlying district court proceedings. DDR did not raise its collateral estoppel argument in its opening brief, and "[o]ur law is well established that arguments not raised in the opening brief are [forfeited]." *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2006).[2] And in the underlying claim construction proceeding, the district court concluded that DDR had forfeited its collateral estoppel arguments by failing to mention estoppel or preclusion in its briefs. J.A. 1392 ll. 13–16, 1394 ll. 12–18.

**[9, 10]** Even ignoring DDR's forfeiture, we note that neither this court nor the district court—both of which employ a *Phillips* standard for claim construction—is bound by the Board's constructions under the broadest reasonable interpretation standard.[3] *Compare Phillips*, 415 F.3d at 1312–13, *with Cuozzo Speed Techs. v. Com. for Intell. Prop.*, 579 U.S. 261, 276, 136 S.Ct. 2131, 195 L.Ed.2d 423 (2016). This court has held that "the issue preclusion doctrine can apply in this court to the Patent Trial and Appeal Board's decision in an IPR once it becomes final." *Papst Licensing GMBH & Co. KG v. Samsung Elecs. Am., Inc.*, 924 F.3d 1243, 1250–51 (Fed. Cir. 2019). But that principle is inapplicable here, where we employ a different claim construction standard than that used by the Board. *See ParkerVision, Inc. v. Qualcomm Inc.*, 116 F.4th 1345, 1361 (Fed. Cir. 2024) ("The application of collateral estoppel is 'subject to certain well-known exceptions' . . . [including] where 'the second action involves application of a different legal standard, even though the factual setting of both suits may be the same.' " (quoting *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 148, 154, 135 S.Ct. 1293, 191 L.Ed.2d 222 (2015))). "Because the Board applies the broadest reasonable construction of the claims while the district courts apply a different standard of claim construction as explored in

2. The *SmithKline* court used the term "waiver," but for consistency we use "forfeiture" here. *See In re Google Tech. Holdings LLC*, 980 F.3d 858, 862 (Fed. Cir. 2020) ("By and large, in reviewing this court's precedent, it is evident that the court mainly uses the term 'waiver' when applying the doctrine of 'forfeiture.' ").

3. In late 2018, the Board announced a final rule adopting the *Phillips* claim construction standard in IPR petitions filed on or after November 13, 2018. *See, e.g., Personalized Media Commc'ns, LLC v. Apple Inc.*, 952 F.3d 1336, 1340 n.2 (Fed. Cir. 2020). Because the IPR at issue here was filed before that date, the Board's claim construction inquiry was governed by the broadest reasonable interpretation standard.

*Phillips*," a party is not collaterally estopped in district court proceedings by the Board's constructions during IPR. *SkyHawke Techs., LLC v. Deca Int'l Corp.*, 828 F.3d 1373, 1376 (Fed. Cir. 2016).

In the related IPR proceedings, the Board determined, under the broadest reasonable interpretation standard, that the '399 patent specification's statement that "[m]erchants are the producers, distributors, or resellers of the goods to be sold through the outsource provider" is not definitional. J.A. 748. However, the Board had leeway before determining that a narrowing statement in the specification provides a definition for a claim term. That is because the Board's standard asks for the *broadest* construction that is still reasonable, which weighs against adopting any narrower statement as definitional. A district court, on the other hand, could conclude under *Phillips* that a narrower statement, read in the context of the specification and prosecution history, would best be understood by a skilled artisan as definitional. The Board itself recognized the distinctive nature of the broadest reasonable interpretation standard when it observed that its chosen interpretation for "merchants" "is broader and not unreasonable." J.A. 749.[4]

Accordingly, although the Board found the statement at issue in the specification to not be definitional, we conclude under *Phillips* that it is, in light of the intrinsic evidence. We thus affirm the district court's construction of "merchants" as purveyors of goods, not services.

## III.

**[11]** Finally, we turn to the construction of "commerce object." The district court "effectively construed" the claim term "commerce object" based on the same reasoning used to construe "merchants." J.A. 1423 l. 25 – 1424 l. 18. On appeal, the parties agree that the construction of "commerce object" should adhere to the construction of "merchants." Appellant's Br. 25; Appellees' Br. 32–34. Accordingly, we affirm the district court's construction of "commerce object" as "a product, a product category, a catalog, or an indication that a product, product category, or catalog should be chosen dynamically."

## Conclusion

We have considered DDR's remaining arguments and find them unpersuasive. For the foregoing reasons, we affirm.

**AFFIRMED**

**CROWN PACKAGING TECHNOLOGY, INC., CarnaudMetalbox Engineering Ltd., Plaintiffs-Appellants**

**v.**

**BELVAC PRODUCTION MACHINERY, INC., Defendant-Cross-Appellant**

**2022-2299, 2022-2300**

United States Court of Appeals, Federal Circuit.

Decided: December 10, 2024

**Background:** Owner of three patents on machines for necking metal cans sued competitor for infringement. After the United States District Court for the Western Dis-

4. We note that the Board's analysis did not consider the difference in disclosures between the provisional application and the final specification of the '399 patent.

# United States Court of Appeals for the Federal Circuit

---

**KROY IP HOLDINGS, LLC,**
*Plaintiff-Appellant*

**v.**

**GROUPON, INC.,**
*Defendant-Appellee*

---

2023-1359

---

Appeal from the United States District Court for the District of Delaware in No. 1:17-cv-01405-MN, Judge Maryellen Noreika.

---

Decided: February 10, 2025

---

PAUL RICHTER, JR., Devlin Law Firm LLC, Wilmington, DE, argued for plaintiff-appellant. Also represented by TIMOTHY DEVLIN.

THOMAS LEE DUSTON, Marshall, Gerstein & Borun LLP, Chicago, IL, argued for defendant-appellee. Also represented by CHELSEA MURRAY, RAYMOND R. RICORDATI, III.

---

Before PROST, REYNA, and TARANTO, *Circuit Judges*.

REYNA, *Circuit Judge*.

Kroy IP Holdings, LLC sued Groupon, Inc. in the United States District Court for the District of Delaware alleging patent infringement. Groupon moved to dismiss Kroy's operative complaint, arguing that Kroy was collaterally estopped from alleging infringement of the asserted claims based on two prior inter partes review decisions of the Patent Trial and Appeal Board. Both of the Board's prior decisions involved the same patent, but claims other than the asserted claims. The district court granted Groupon's motion to dismiss. Kroy timely appeals. For the following reasons, we reverse and remand.

## BACKGROUND

Kroy IP Holdings, LLC ("Kroy") owns U.S. Patent No. 6,061,660 ("'660 patent"), which relates to providing incentive programs over a computer network. '660 patent, Abstract. In October 2017, Kroy sued Groupon, Inc. ("Groupon") in the United States District Court for the District of Delaware, alleging that Groupon infringed 13 exemplary claims of the '660 patent. J.A. 1014. In October 2018, Groupon filed two inter partes review ("IPR") petitions challenging 21 claims of the '660 patent. *Groupon, Inc. v. Kroy IP Holds., LLC*, No. IPR2019-00044, 2020 WL 1900398 (P.T.A.B. Apr. 16, 2020) ("*'044 IPR*"); *Groupon, Inc. v. Kroy IP Holds., LLC*, No. IPR2019-00061, 2020 WL 1900402 (P.T.A.B. Apr. 16, 2020) ("*'061 IPR*"). After Groupon's IPR filing deadline had passed, Kroy amended its complaint to allege infringement of additional claims, many of which were not included in Groupon's IPR petitions. J.A. 1925–26. In April 2020, the Patent Trial and Appeal Board ("Board") found all 21 of the challenged claims unpatentable (the "Unpatentable Claims"). *'044 IPR*, 2020 WL 1900398, at *1; *'061 IPR*, 2020 WL 1900402, at *1. Kroy appealed the Board's final written decisions, and in June 2021, this court affirmed via Federal Circuit Rule 36 ("Rule 36"). *Kroy IP Holds., LLC, v. Groupon, Inc.*, 849 F. App'x 930 (Fed. Cir. 2021).

In March 2022, Kroy filed a second amended complaint alleging infringement of 14 claims of the '660 patent (the "Newly Asserted Claims"), none of which were at issue in the IPR proceedings. J.A. 2457; J.A. 2472. In response, Groupon filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that the Board's prior IPR rulings on the Unpatentable Claims collaterally estopped Kroy from asserting the Newly Asserted Claims.

The district court agreed with Groupon and granted its motion to dismiss with prejudice in December 2022. *Kroy IP Holds., LLC v. Groupon, Inc.*, No. 17-1405-MN-CJB, 2022 WL 17403538 (D. Del. Dec. 2, 2022). In so ruling, the district court first determined that the Board's final judgments on the unpatentability of a patent claim have preclusive effect on any pending or co-pending district court actions involving the same claim. *Id.* at *4 (citing *XY, LLC v. Trans Ova Genetics, L.C.*, 890 F.3d 1282, 1294 (Fed. Cir. 2018)). The district court next determined that collateral estoppel may apply to patent claims that were not previously adjudicated if the differences between the unadjudicated claims and the adjudicated claims "do not materially alter the question of invalidity." *Id.* (emphasis removed) (quoting *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013)). Taking these two principles together, the district court concluded that if the Board issues a final judgment ruling that a patent claim is unpatentable, and that claim is immaterially different for purposes of invalidity from another claim, collateral estoppel precludes the patentee from asserting the immaterially different claim. *Id.* With this legal principle in mind, the district court turned to the merits of Groupon's estoppel arguments.

The district court started its collateral estoppel analysis by observing that four requirements must be met for collateral estoppel to apply in the Third Circuit: "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was

necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action." *Id.* (quoting *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 249 (3d Cir. 2006)). The district court focused its analysis on the first requirement: prior adjudication of the identical issue. In doing so, the district court compared specific Unpatentable Claims to their corresponding Newly Asserted Claims and determined that each Newly Asserted Claim was immaterially different from one or more Unpatentable Claims for purposes of invalidity. *Id.* at *6–14. Next, the district court noted that the parties did not dispute that the second and fourth collateral estoppel requirements were met. *Id.* at *5 n.7. Finally, the district court rejected Kroy's argument that the third collateral estoppel requirement was not met because this court's Rule 36 affirmance was "silent" as to which theories underlying the Board's decision it approved of. *Id.* Having ruled that all four collateral estoppel requirements were met, the district court granted Groupon's motion to dismiss with prejudice. *Id.* at *15.

Kroy appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## STANDARD OF REVIEW

We review a district court's dismissal for failure to state a claim under the law of the regional circuit. *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1346 (Fed. Cir. 2014). The Third Circuit reviews de novo a district court's grant of a motion to dismiss for failure to state a claim. *Id.* A district court should grant a motion to dismiss for failure to state a claim if the complaint does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).

We also review a district court's application of general collateral estoppel principles de novo under the law of the

regional circuit. *Aspex Eyewear, Inc. v. Zenni Optical Inc.*, 713 F.3d 1377, 1380 (Fed. Cir. 2013); *Shell Petroleum, Inc. v. United States*, 319 F.3d 1334, 1338 (Fed. Cir. 2003). Federal Circuit law applies to collateral estoppel issues that implicate substantive patent law issues. *Soverain Software LLC v. Victoria's Secret Direct Brand Mgmt., LLC*, 778 F.3d 1311, 1314 (Fed. Cir. 2015).

## DISCUSSION

This case presents a distinct question of Federal Circuit collateral estoppel law: whether a prior final written decision of the Board that certain patent claims are unpatentable precludes a patentee from asserting other claims from the same patent, even assuming the asserted claims are immaterially different from the unpatentable claims for purposes of invalidity. Kroy argues that collateral estoppel should not apply because an IPR proceeding requires a lower burden of proof to prove unpatentability than the burden of proof in district court for invalidity. Appellant Br. 19–20. Groupon responds that under this court's decisions in *XY* and *Ohio Willow Wood*, collateral estoppel applies. Appellee Br. 16–17 (citing *XY*, 890 F.3d at 1294, and quoting *Ohio Willow Wood*, 735 F.3d at 1342). We agree with Kroy and hold that collateral estoppel does not apply.

Collateral estoppel applies when "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action." *Jean Alexander Cosmetics*, 458 F.3d at 249 (internal quotation marks and citations omitted); *see also Soverain Software*, 778 F.3d at 1315. That said, collateral estoppel is "subject to certain well-known exceptions." *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 148 (2015). One such exception is when "the second action involves application of a different legal standard," such as a different

burden of proof. *Id.* at 154; *Grogan v. Garner*, 498 U.S. 279, 284–85 (1991) (explaining that a prior judgment rendered under a preponderance of the evidence standard cannot be given collateral estoppel effect in a subsequent matter litigated under a clear and convincing evidence standard); 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 4422 (3d ed. 2016) ("[A] party who has carried the burden of establishing an issue by a preponderance of the evidence is not entitled to assert preclusion in a later action that requires proof of the same issue by a higher standard.").

This court recently examined the doctrine of collateral estoppel and assessed the effect that prior final written decisions of the Board may have on subsequent district court litigation. In *ParkerVision, Inc. v. Qualcomm Inc.*, we reviewed a district court decision that collateral estoppel barred ParkerVision's expert from offering testimony to support the validity of certain method claims of a patent. 116 F.4th 1345, 1360–61 (Fed. Cir. 2024). The Board determined that apparatus claims of the same patent were unpatentable as obvious. *Id.* The district court ruled that collateral estoppel barred ParkerVision from asking it or a jury to reach factual conclusions regarding the validity of the method claims that would conflict with the Board's fact findings for the apparatus claims. *Id.* at 1353–54, 1361. We reversed. We recognized that in an IPR proceeding, the petitioner has a burden to prove unpatentability by a preponderance of the evidence, whereas the district court requires the higher burden of clear and convincing evidence for invalidity. *Id.* at 1362. Thus we held that, under the Supreme Court's guidance in *B & B Hardware* and *Grogan*, collateral estoppel did not apply due to the differing burdens of proof. *Id.* at 1361–62.

Our reasoning in *ParkerVision* holds true in this appeal. Collateral estoppel generally does not apply when the second action involves application of a different legal standard, such as a different burden of proof. *B & B*

Case: 24-1359 Document: 29 Page: 17 Filed: 02/05/2025



*Hardware*, 575 U.S. at 148, 154; *Grogan*, 498 U.S. at 284–85; 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 4422 (3d ed. 2016). Before the Board, Groupon proved the unpatentability of the Unpatentable Claims by a preponderance of the evidence. Before the district court, however, Groupon's burden to prove that the Newly Asserted Claims are invalid is clear and convincing evidence. As such, collateral estoppel should not apply. To hold otherwise would deprive patent owners of their property right without first requiring proof of patent invalidity that satisfies the statutorily-prescribed clear and convincing evidence standard. *See Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 102 (2011).

Groupon argues that our decision in *XY* provides that, notwithstanding differing burdens of proof, a final written decision by the Board may give rise to collateral estoppel in district court. We addressed and rejected a similar argument in *ParkerVision*. In *XY*, we established a limited exception to the general principle that collateral estoppel does not apply when there are different burdens of proof. *ParkerVision*, 116 F.4th at 1362. Specifically, we explained that *XY* stands for the more limited proposition that once this court affirms the Board's decision that a patent claim is unpatentable, the same claim cannot be asserted in district court. *Id.* We explained that once the claim is ruled unpatentable, it no longer exists, whereas when a claim has "*not* been found unpatentable[,] . . . those claims remain presumptively valid." *Id.* This is so because once a claim is already and finally held unpatentable as a result of an IPR, the claim is subject to a wholly ministerial, inevitable, unreversible cancellation. The premise invoked for collateral estoppel in *XY* does not rely on the Board's fact findings, but rather the retroactive cancellation of certain claims as a matter of law. Yet when a district court would necessarily rely on the Board's fact findings, and those facts have only been proven in a prior proceeding

under a lower burden of proof than what is required in district court, collateral estoppel does not apply. *Id.* The reasoning of *ParkerVision* applies equally here. The Newly Asserted Claims have not been found unpatentable and thus continue to exist until this court affirms a Board or district court decision that determines otherwise.

Contrary to Groupon's assertion, *Ohio Willow Wood* does not compel a different result. Groupon is correct that, under *Ohio Willow Wood*, collateral estoppel may apply to patent claims that were not previously adjudicated if the differences between the unadjudicated claims and the adjudicated claims "do not materially alter the question of invalidity." *Ohio Willow Wood*, 735 F.3d at 1342. What Groupon omits, however, is that *Ohio Willow Wood* addresses whether a prior *district court* invalidity ruling estopped the patentee from asserting claims in district court that are immaterially different for purposes of invalidity. *Id.* at 1341–43. Put another way, the district-court-to-district-court scenario presented in *Ohio Willow Wood* does not present the same burden of proof concern as the Board-to-district-court case before us. The district court's reliance on *Ohio Willow Wood* to establish that a prior Board unpatentability ruling estopped Kroy from asserting the unadjudicated, Newly Asserted Claims in district court ignores *B & B Hardware* and *Grogan* and thus was legal error.

We hold that a prior final written decision of the Board of unpatentability on separate patent claims reached under a preponderance of the evidence standard cannot collaterally estop a patentee from asserting other, unadjudicated patent claims in district court litigation. As such, dismissal was inappropriate.

## CONCLUSION

We have considered the parties' remaining arguments and find them unpersuasive. For the reasons stated, we

reverse the district court's grant of Groupon's motion to dismiss and remand for further proceedings.

**REVERSED AND REMANDED**

COSTS

Costs against Groupon.